**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STATE OF NEW JERSEY and STATE OF NEW YORK, <br><br>                  Plaintiffs, <br><br>                  v. <br><br> UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN DUFFY, in his official capacity as Secretary of Transportation; FEDERAL RAILROAD ADMINISTRATION; DAVID FINK, in his official capacity as Administrator of the Federal Railroad Administration; FEDERAL TRANSIT ADMINISTRATION; MARCUS J. MOLINARO, in his official capacity as Administrator of the Federal Transit Administration; BUILD AMERICA BUREAU; and DR. MORTEZA FARAJIAN, in his official capacity as Executive Director of the Build America Bureau, <br><br>                  Defendants. | No. 26 Civ. 939 (JAV) |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.:    (212) 637-2695
*Attorney for Defendants*

TARA SCHWARTZ
C. NNEKA NZEKWU
Assistant United States Attorneys
        - Of Counsel -

## **Table of Contents**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ................................................................................................................... 2

    I.    The HTP Grant and Loan Agreements ................................................................. 2

    II.   The Court of Federal Claims Action .................................................................... 4

    III.  The Instant Action ................................................................................................ 5

LEGAL STANDARD ............................................................................................................ 6

    I.    Legal Standard Governing Motion to Dismiss .................................................... 6

    II.   Legal Standard Governing Temporary Restraining Orders ................................. 7

ARGUMENT ....................................................................................................................... 7

    I.    The Tucker Act Precludes This Court from Exercising Jurisdiction Over Plaintiff's Claims ................................................................................................................. 7

        A.    The Court of Federal Claims Has Exclusive Jurisdiction Over Breach of Contract Claims Against the Government ................................................ 7

        B.    That Plaintiffs Are Not Signatories to the HTF Grant and Loan Agreements is of No Moment. ......................................................... 20

    II.   Plaintiffs Cannot Show Irreparable Harm ......................................................... 22

CONCLUSION ................................................................................................................... 23

CERTIFICATE OF COMPLIANCE ........................................................................................ 24

# TABLE OF AUTHORITIES

Page(s)

Cases

*Am. Pub. Health Ass'n v. Nat'l Insts. of Health*,
791 F. Supp. 3d 119 (D. Mass. 2025) ........................................................................... 11

*Am. Pub. Health Ass'n v. NIH*,
145 F.4th 39 (1st Cir. 2025) ......................................................................................... 11

*American Association of Physics Teachers, Inc. v. National Science Foundation*,
804 F. Supp. 3d 45 (D.D.C. 2025) .......................................................................... 11, 16

*Atterbury v. U.S. Marshals Serv.*,
805 F.3d 398 (2d Cir. 2015) ........................................................................................... 9

B.*K. Instrument, Inc. v. U.S.*,
715 F.2d 713 (2d Cir. 1983) ......................................................................................... 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................................... 2

*California v. U.S. Dep't of Educ.*,
769 F. Supp. 3d 72 (D. Mass. 2025) ......................................................................... 9, 10

*Climate United Fund v. Citibank, N.A.*,
154 F.4th 809 (D.C. Cir. 2025) .......................................................................... 14, 15, 18

*Dep't of Educ. v. California*,
604 U.S. 650 (2025) ............................................................................................... passim

*Dep't of the Army v. Blue Fox, Inc.*,
525 U.S. 255 (1999) ......................................................................................................... 7

*Fairfax Cnty. Sch. Bd. v. McMahon*,
798 F. Supp. 3d 563 (E.D. Va. 2025) ........................................................................... 19

*Free Country Ltd v. Drennen*,
235 F. Supp. 3d 559 (S.D.N.Y. 2016) ............................................................................. 7

*Giammatteo v. Newton*,
452 F. App'x. 24 (2d Cir. 2011) ...................................................................................... 6

*Great-West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002) ....................................................................................................... 10

*Henke v. United States Dep't of Commerce,*
    83 F.3d 1445 (D.C. Cir. 1996) ................................................................. 10

*Ingersoll-Rand Co. v. United States,*
    780 F.2d 74 (D.C. Cir. 1985) ................................................. 8, 15, 17, 18

*Kamen v. American Tel. & Tel. Co.,*
    791 F.2d 1006 (2d Cir. 1986) ..................................................................... 6

*Lane v. Pena,*
    518 U.S. 187 (1996) ................................................................................... 7

*Makarova v. United States,*
    201 F.3d 110 (2d Cir. 2000) ................................................................... 6, 7

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,*
    567 U.S. 209 (2012) ................................................................................... 8

*Megapulse, Inc. v. Lewis,*
    672 F.2d 959 (D.C. Cir. 1982) ......................................................... 8, 9, 10

*Moore v. Consol. Edison Co. of New York,*
    409 F.3d 506 (2d Cir. 2005) ....................................................................... 7

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n,*
    606 U.S. ---, 145 S. Ct. 2658 (2025) ......................................................... 8

*New York v. Nat'l Sci. Found.,*
    793 F. Supp. 3d 562 (S.D.N.Y. 2025) ..................................................... 15

*New York v. U.S. Dep't of Educ.,*
    477 F. Supp. 3d 279 (S.D.N.Y. 2020) ....................................................... 7

*Nken v. Holder,*
    556 U.S. 418, (2009) ................................................................................. 7

*Pac. Gas & Elec. Co. v. United States,*
    838 F.3d 1341 (Fed. Cir. 2016) ............................................................... 20

*Perry Capital LLC v. Mnuchin,*
    864 F.3d 591 (D.C. Cir. 2017) ................................................................... 8

*Phillip Morris USA Inc. v. Scott,*
    56 U.S. 1301 (2010) ................................................................................. 22

*Presidential Gardens Assocs. v. U.S. ex rel. Secretary of Housing and Urban Dev.*,
   175 F.3d 132 (2d Cir. 1999) ......................................................................... 18

*Spectrum Leasing Corp. v. United States*,
   764 F.2d 891 (D.C. Cir. 1985) ................................................................. 13, 17

*Sustainability Institute v. Trump*,
   --- F.4th ---, No. 25-1575, 2026 WL 157120, at *6 (4th Cir. Jan. 21, 2026) ............... 13, 16, 20

*Thakur v. Trump*,
   No. 25-4249, --- F.4th ----, 2025 WL 3760650 (9th Cir. Dec. 23, 2025) ........................... 11, 21

*Transohio Sav. Bank v. Director, Office of Thrift Supervision*,
   967 F.2d 598 (D.C. Cir. 1992) ......................................................................... 8

*Trump v. Boyle*,
   660 U.S. ---, 145 S. Ct. 2653 (2025) .................................................................. 9

*Tucson Airport Authority v. General Dynamics Corp.*,
   136 F.3d 641 (9th Cir. 1998) ......................................................................... 13

*U.S. Conf. of Catholic Bishops v. U.S. Dep't of State*,
   770 F. Supp. 3d 155 (D.D.C. Mar. 11, 2025) ......................................................... 19

*Up State Fed. Credit Union v. Walker*,
   198 F.3d 372 (2d Cir. 1999) ........................................................................... 9


Statutes

5 U.S.C. § 702 ..................................................................................... 7, 8

28 U.S.C. § 1491 ..................................................................................... 8

28 U.S.C. 1491(a)(1) ............................................................................... 10

2 C.F.R. § 200.339 ............................................................................... 6, 14

2 C.F.R. § 200.342 ................................................................................... 6

Fed. R. Civ. P. 12(b)(1) .......................................................................... 1, 6

Fed. R. Civ. P. 65(c) ............................................................................... 22

Defendants the United States Department of Transportation, Sean P. Duffy in his official capacity as Secretary of Transportation, the Federal Railroad Administration, David A. Fink, in his official capacity as Administrator of the Federal Railroad Administration, the Federal Transit Administration, Marcus J. Molinaro, in his official capacity as Administrator of the Federal Transit Administration, the Build America Bureau, and Dr. Morteza Farajian in his official capacity as Executive Director of the Build America Bureau (collectively, the "Government" or "Defendants") submit this memorandum of law in support of their motion to dismiss the Complaint (ECF No. 1 ("Complaint" or "Compl.")) filed by plaintiffs the State of New Jersey and State of New York ("Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(1) and in opposition to Plaintiff's motion for a temporary restraining order (ECF No. 12 ("TRO Motion")).

## PRELIMINARY STATEMENT

Plaintiffs New York and New Jersey ask this court to impose the drastic and extraordinary remedy of a temporary restraining order in a case that does not belong in this Court to begin with. Plaintiffs challenge the Government's September 30, 2025 decision to suspend funding to the Gateway Development Commission ("GDC"), a public (bi-state) authority created by Plaintiffs through the Gateway Development Commission Act (GDC Act) for the purpose of developing, designing, and constructing the Hudson Tunnel Project. Plaintiffs ask the Court to direct the Government to turn the funding spigot back on. Despite Plaintiffs styling their action as a challenge to the September 30, 2025 decision to suspend funding under the Administrative Procedure Act ("APA"), at bottom, their action is one for breach of contract—specifically alleged breaches of the series of grant and loan agreements between the Government and GDC that obligate the Government to provide funding to GDC—and the remedy they seek is to compel the Government to comply with its contractual obligations, i.e., specific performance.

Under the Tucker Act, a breach of contract action against the federal government must be brought in the Court of Federal Claims. Indeed, at the same time that Plaintiffs filed this action, seeking an order that the Government must continue paying its obligations to GDC, GDC filed a breach of contract action in the Court of Federal Claims against the United States and sought expedited briefing on its summary judgment motion. *Gateway Development Commission v. United States*, No. 26 Civ. 176 (PAH), ECF No. 1 (Ct. Fed. Cl. Feb. 2, 2026) ("GDC Complaint"). GDC itself alleges in the very first sentence of its complaint that "[t]his is a straightforward breach of contract case." *Id.* at ¶ 1. Plaintiffs' claims in this case are indistinguishable from the claims brought by GDC, despite Plaintiffs' attempt to dress them up as APA claims. For the reasons explained below, the Court lacks jurisdiction over those contract claims under the Tucker Act.

Accordingly, the motion for temporary restraining order should be denied and the complaint should be dismissed pursuant to Rule 12(b)(1).

## BACKGROUND

### I.     The HTP Grant and Loan Agreements

GDC is a corporation that was created by New Jersey and New York through identical statutes for the benefit of those states.[1] *See* Compl. ¶ 6, Ex. 24.[2] Early in 2023, New Jersey, New York, Amtrak, and GDC entered into a Project Development Agreement that tasked GDC with the development, design, and construction of the Hudson Tunnel Project. *Id.* at ¶ 6. The States and Amtrak committed to contributing one-third of the funding needed to support GDC's operating budget. *Id.*

---

[1]      For purposes of responding to the Plaintiffs' emergency request, the Government accepts Plaintiffs' factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

[2]      *See also* Official Site of the State of New Jersey, *ICYMI: Gateway Development Commission Files Breach of Contract Claim Against the Federal Government*, Feb. 3, 2026, https://www.nj.gov/governor/news/2026/20260203a.shtml.

In 2024 the Government entered into several separate grant and loan agreements with GDC that provided additional funding to support the Hudson Tunnel Project:

>    (1)    $3.79 billion under Grant Agreement No. 69A36524420700FSPNY with the Federal Railroad Administration ("FRA") under the Federal-State Partnership for Intercity Passenger Rail Program (the "FRA FSP Grant");
>
>    (2)    $6.88 billion under Full Funding Grant Agreement No. NY-2024-015-00 with the Federal Transit Administration ("FTA") under the Capital Investment Grants Program (the "FTA CIG Grant");
>
>    (3)    $25 million under Grant Agreement No. NY-2024-014-00 with FTA under the Rebuilding American Infrastructure with Sustainability and Equity Program (the "FTA RAISE Grant"); and
>
>    (4)    a total of approximately $4.06 billion under three separate loan agreements with DOT under the Railroad Rehabilitation and Improvement Financing Program (collectively, the "RRIF Loans", and together with the FRA FSP Grant, the FTA CIG Grant, and the FTA RAISE Grant, the "HTP Grant and Loan Agreements").

*See* Declaration of Matthew Hawkins ¶¶ 2(a)-(d).  Each of the HTP Grant and Loan Agreements is executed between DOT, or a component thereof, and GDC and each contains its own terms and provisions.  *See id*. at Exs. A-G.  Notably, the terms of each of the HTP Grant and Loan Agreements govern: (1) what constitutes a breach or event of default; (2) the circumstances in which DOT may withhold funding from GDC or suspend GDC's drawdown of funds; and (3) the procedural requirements attendant to the Government's withholding or suspension of funding.  *See* Hawkins Decl. ¶ 4.

On September 30, 2025, DOT notified GDC by letter that DOT was reviewing the projects it funds to ensure nondiscrimination in its financial assistance programs, and that this review applied to Hudson Tunnel Project.  *See* Compl., Ex. 1.  DOT further informed GDC that it would temporarily pause reimbursements for the project during this administrative review.  *See id*.  The pause on reimbursements for the Hudson Tunnel Project affected all of the HTP Grant and Loan

Agreements.  *See* Hawkins Decl. ¶ 2; *see also* Compl. ¶¶ 42, 75, 96 ("GDC has not received disbursements of any of its federal funding streams since October 1, 2025.").

Since September 30, 2025, DOT and GDC have engaged in correspondence about the suspension of funds under the HTP Grant and Loan Agreements.  *See* Compl. ¶¶ 89-94.  To date, funding has not resumed.

## II.    The Court of Federal Claims Action

On February 2, 2026, one day before this action was filed, GDC filed a breach of contract action in the Court of Federal Claims.  *See* GDC Complaint.  In its complaint, GDC alleges that the HTP Grant and Loan Agreements (i) require payment of a request for reimbursement of eligible costs within 30 days; (ii) allow for withholding of payments from GDC only in the narrow circumstances where DOT has determined that GDC has breached or defaulted on the Agreements, has failed to make reasonable progress on the project, or has failed to comply with any law or the terms of the Agreements; and (iii) allow for withholding of payments from GDC only after providing GDC notice and an opportunity to cure the alleged breach or noncompliance.  *Id*. at ¶ 12.

According to GDC, DOT's suspension of payments is a breach of the express terms of the HTP Grant and Loan Agreements, and, as of filing, DOT is improperly withholding $205,275,358 in reimbursement payments owed to GDC.  *Id*. at ¶ 16.  GDC claims that DOT did not state in the September 30, 2025 letter that it had made a determination that GDC was in breach or had failed to comply with any law or the terms of the HTP Grant and Loan Agreements, nor did DOT afford GDC the contractually required notice and opportunity to cure before suspending payment.  *Id*. at ¶ 150.  GDC thus claims that DOT's withholdings lack any contractual basis because GDC is not in breach, default, or noncompliance with the HTP Grant and Loan Agreements; DOT has not notified GDC that it has made a determination that GDC breached, defaulted, or failed to comply

with the HTP Grant and Loan Agreements; and DOT has not provided GDC with an opportunity to cure any alleged breach, default, or noncompliance.  *Id*. at ¶ 173.

The GDC Complaint asserts eight counts: the first seven assert breaches of the respective HTP Grant and Loan Agreements, *see id*. at ¶¶ 184-348 and the eighth asserts that the Government breached the implied duty of good faith and fair dealing in the contracts, *see id*. at ¶¶ 349-358.  In their prayer for relief, GDC requests, among other things:

> (1) money damages in the amount of $205,275,358 for DOT's failure to make required payments and disbursements under the HTP Grant and Loan Agreements due on or before February 6, 2026;
>
> (2) additional money damages to GDC for DOT's improper suspension of funding under the HTP Grant and Loan Agreements for the costs of the resulting work suspension in an amount to be determined at trial.

*Id*. at Prayer for Relief.

At the same time it filed its complaint, GDC also filed a motion to expedite.  No. 26 Civ. 176 (PAH), ECF No. 2 (Ct. Fed. Cl. Feb. 2, 2026).  The court ordered the Government to respond to the motion to expedite by February 6, 2026, and for GDC to file its reply by February 9, 2026.  *Id*. at ECF No. 9.  The court further scheduled a status conference for February 10, 2026.  *Id*. at ECF No. 11.

## III.    The Instant Action

Plaintiffs filed their complaint in this matter on February 3, 2026.  *See* Compl.  Their complaint asserts two claims under the APA, which stem from the Government's suspension of disbursements under the HTP Grant and Loan Agreements.  *Id*. at ¶ 7.  Count I asserts that the Government violated the APA by suspending funding under the HTP Grant and Loan Agreements without observing procedures required by certain OMB and DOT regulations.  Compl. ¶¶ 120-29.  Specifically, Plaintiffs contend that the suspension of funding violated: (1) 2 C.F.R. § 200.339,

which establishes the terms by which granting agencies may interrupt funding to grant recipients; (2) 2 C.F.R. § 200.342, which requires that agencies give grant recipients an opportunity to appeal a remedy for noncompliance; and (3) 49 C.F.R. part 26, which they say requires FTA to have taken certain procedural steps that it did not take before suspending funding. *Id.* at ¶¶ 125-27.  Count II alleges that the suspension of funding under the HTP Grant and Loan Agreements was arbitrary and capricious because: (1) the Government did not offer a reasoned or reasonable explanation for its decision to suspend funding disbursements pending a compliance review; (2) the Government had an improper motive for suspending funding disbursements; and (3) the Government has provided no evidence of a considered basis for terminating or suspending funding. *Id.* at ¶¶ 130-41.  Plaintiffs seek a declaration that the September 30 Suspension and its implementation are unlawful and an order vacating it and setting it aside. *Id.* at Prayer for Relief.

On February 4, 2026, the same day that Plaintiffs filed their complaint, they also filed an order to show cause for a temporary restraining order.  ECF No. 11.  Plaintiffs seek to restrain the Government from implementing the September 30, 2025 suspension of federal disbursements to GDC for the Hudson Tunnel Project.  *See* ECF No. 11.

## LEGAL STANDARD

### I.    Legal Standard Governing Motion to Dismiss

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  On a Rule 12(b)(1) motion, a district court "may refer to evidence outside the pleadings." *Id.* (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).  The plaintiff "has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011).

## II.    Legal Standard Governing Temporary Restraining Orders

Issuance of a temporary restraining order is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. *See Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510 (2d Cir. 2005); *see Free Country Ltd v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016).  Plaintiffs seeking a temporary restraining order must show that "(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest." *New York v. U.S. Dep't of Educ.*, 477 F. Supp. 3d 279, 293 (S.D.N.Y. 2020).  If the federal government is the opposing party, then the latter factors merge. *Id.* at 294 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

## ARGUMENT

## I.    The Tucker Act Precludes This Court from Exercising Jurisdiction Over Plaintiff's Claims

### A.    The Court of Federal Claims Has Exclusive Jurisdiction Over Breach of Contract Claims Against the Government

The federal government enjoys sovereign immunity and may be subject to suit only when it has explicitly waived that immunity. *See Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999).  Waivers of sovereign immunity must be strictly construed to protect the prerogatives of the government and to ensure the courts stay within the jurisdiction provided by Congress. *See Lane v. Pena*, 518 U.S. 187, 192 (1996).

In the APA, Congress provided a limited waiver of sovereign immunity for claims against the United States by persons "adversely affected ... by agency action" if they "seek[ ] relief other than money damages." 5 U.S.C. § 702. However, the APA's waiver of sovereign immunity does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.*

For contract claims against the government, the Tucker Act establishes review in the Court of Federal Claims. 28 U.S.C. § 1491. When it applies, Tucker Act jurisdiction is exclusive and precludes jurisdiction in district court under the APA's waiver of sovereign immunity. The Court of Federal Claims is the "single, uniquely qualified forum for the resolution of contractual disputes." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985).

Because Congress has limited the forum and the remedies for contract claims against the government, a litigant whose claim is essentially contractual cannot "avoid the jurisdictional (and hence remedial) restrictions of the Tucker Act" by simply asking for injunctive relief in district court. *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982); *see also Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (explaining that Section 702 of the APA "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes"); *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017) (regardless of how a claim is styled, a district court lacks jurisdiction if the claim "is in 'its essence' contractual."); *Transohio Sav. Bank v. Director, Office of Thrift Supervision*, 967 F.2d 598, 613 (D.C. Cir. 1992) ("[T]he APA does not waive sovereign immunity for contract claims seeking specific relief."). In other words, the Tucker Act impliedly forbids an APA action seeking injunctive and declaratory relief if that action is a disguised breach-of-contract claim. *See Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 606 U.S. ---, 145 S. Ct. 2658 (2025) ("*NIH*"); *Dep't of Educ. v. California*, 604 U.S. 650 (2025) (per curiam) ("*California*").

"Whether a claim is in essence a contract claim over which the Court of Federal Claims has exclusive jurisdiction depends on a two-pronged analysis: a court must examine both 'the source of the rights upon which the plaintiff bases [his] claims, and . . . the type of relief sought.'" *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 406 (2d Cir. 2015) (quoting *Up State Fed. Credit*

*Union v. Walker*, 198 F.3d 372, 375 (2d Cir. 1999) and *Megapulse*, 672 F.2d at 968). Thus, this jurisdictional inquiry, known as the *Megapulse* framework, does not turn on a plaintiff's preferred characterization of its claim.

i. *California* and *NIH* Control

The Supreme Court's recent orders in *California* and *NIH* foreclose Plaintiffs' attempt to bring APA challenges, seeking the restoration of government funding pursuant to grant contracts, in district court. *See NIH,* 145 S. Ct. at 2664 (Gorsuch, J., concurring part and dissenting in part) (emphasizing that the "reasoning" of Supreme Court decisions regarding interim relief "binds lower courts as a matter of vertical *stare decisis*"); *see also Trump v. Boyle*, 660 U.S. ---, 145 S. Ct. 2653, 2654 (2025) (explaining that the Supreme Court's "interim orders ... inform how a court should exercise its equitable discretion in like cases").

In *California*, the plaintiffs challenged, under the APA, the Department of Education's termination of various education related grants under certain federal grant programs. 604 U.S. at 650. They alleged that the grant terminations were arbitrary and capricious in violation of the APA and sought a temporary restraining order from a district court "enjoining the Government from terminating various education-related grants" and "requir[ing] the Government to pay out past-due grant obligations and continue paying obligations as they accrue." *Id*. The district court had found that plaintiffs were likely to succeed on the merits of their claim that the grant terminations were arbitrary and capricious under the APA since the agency failed to conduct individualized analyses of the grants or offer a reasoned explanation for its *en masse* grant terminations. *California v. U.S. Dep't of Educ.*, 769 F. Supp. 3d 72, 76-78 (D. Mass. 2025). As a remedy, the district court ordered the government to pay out past due grant obligations and continue to pay its grant obligations,

holding that the Tucker Act did not preclude jurisdiction because the plaintiffs invoked federal statutes and regulations and did not style their action as one for money damages. *Id*. at 76, 80.

The Supreme Court subsequently stayed the district court's order. *See California*, 604 U.S. 650. As the Court explained, the district court had "enjoin[ed] the Government from terminating various education-related grants" and "require[d] the Government to pay out past-due grant obligations and to continue paying grant obligations as they accrue." *Id*. But the district court likely lacked jurisdiction because the APA's waiver of sovereign immunity "does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered." *Id.* at 651 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). Instead, such suits must be brought in the Court of Federal Claims, in which Congress vested "jurisdiction over suits based on 'any express or implied contract with the United States.'" *Id.* (quoting 28 U.S.C. 1491(a)(1)).

Rooted in *California* is the principle that a plaintiff's putative APA claim, disguised as a breach-of-contract claim, belongs in the Court of Federal Claims. The Department of Education's grant agreements had "the essential elements of a contract"—offer, acceptance, and consideration. *See Henke v. United States Dep't of Commerce*, 83 F.3d 1445, 1450-1451 (D.C. Cir. 1996). And those grant agreements were "the source of the rights upon which" the plaintiffs based their claims. *Megapulse*, 672 F.2d at 968. Without a grant agreement, the plaintiffs would have had no right to payment in the first place.

The Supreme Court reiterated its holding in *NIH*. There, the government changed its funding to align with changed policy priorities mandated by several executive orders. *NIH*, 145 S. Ct. at 2660 (Barrett, J., concurring in part). In doing so, the government issued internal guidance documents describing those priorities and terminating numerous grants. *Id*. at 2661 (Barrett, J.,

concurring in part).  The district court concluded that the government's grant termination decision was arbitrary and capricious under the APA.  *Am. Pub. Health Ass'n v. Nat'l Insts. of Health*, 791 F. Supp. 3d 119, 179 (D. Mass. 2025).  In upholding the district court's finding that it had subject-matter jurisdiction over the grant terminations, the First Circuit reasoned the case could proceed because the district court provided "declaratory relief that is unavailable in the Court of Federal Claims" and the case does not "depend on the terms or conditions of any contract."  *Am. Pub. Health Ass'n v. NIH*, 145 F.4th 39, 43–44, 47, 50 (1st Cir. 2025).  The First Circuit distinguished *California* on the grounds that *California* was limited to an order "to pay out past-due grant obligations."  *Id.* at 50–51 (quoting *California*, 604 U.S. at 650).

The Supreme Court disagreed and stayed the district court's judgment vacating the Government's termination of the individual grants.  *NIH*, 145 S. Ct. at 2660.  The Supreme Court held that the APA's "limited waiver of sovereign immunity does not provide the District Court with jurisdiction to adjudicate claims based on the research-related grants or to order relief designed to enforce any obligation to pay money pursuant to those grants."  *Id.* at 2660 (cleaned up).

In light of the Supreme Court's orders in *California* and *NIH*, various courts have found that APA claims, brought by grantees or beneficiaries of government grants, are barred by the Tucker Act.  *See Thakur v. Trump*, No. 25-4249, --- F.4th ----, 2025 WL 3760650, at *3 (9th Cir. Dec. 23, 2025) (court likely lacked jurisdiction over APA claim that the government's termination of research grants was arbitrary and capricious because it was designed to enforce an obligation to pay money pursuant to the grants); *American Association of Physics Teachers, Inc. v. National Science Foundation*, 804 F. Supp. 3d 45 (D.D.C. 2025) (court likely lacked jurisdiction over claims brought by grantees who sought declaratory and injunctive relief on the grounds that the termination of their grants and the change in priorities violated the APA).

Applying the *Megapulse* framework to the claims at issue here makes clear that Plaintiffs' claims are in essence contractual claims for payment of the suspended funding over which this court lacks jurisdiction.

ii.   The Source of Plaintiffs' Rights

First, though Plaintiffs, like the plaintiffs in *California* and *NIH*, style their claims as stemming from the APA, the essence of Plaintiffs' complaint is that the Government should not have suspended funding to GDC and must continue performing pursuant to the HTP Grant and Loan Agreements. *See, e.g.*, Compl. ¶¶ 7 ("the Federal Government pledged billions of dollars to the Project through a series of grant and loan agreements. But on September 30, 2025, without warning, the [DOT] announced a decision to indefinitely suspend payment of all Project funds"); 43-58 (citing the various HTP Grant and Loan Agreements and the amounts which have already been paid to GDC pursuant to each agreement).

Plaintiffs' complaint is that the federal government is unlawfully suspending performance required by the HTP Grant and Loan Agreements. That is contract enforcement, full stop. Critically, there is no freestanding statutory obligation requiring continued funding. Plaintiffs cite no legal duty independent of the HTP Grant and Loan Agreements as authority requiring funding from the Government. Indeed, in the absence of the HTP Grant and Loan Agreements, Plaintiffs would not have any cause of action at all. Therefore, regardless of the labels Plaintiffs attach to their claims, they are in essence contractual. *See, e.g.*, *NIH*, 145 S. Ct. at 2658 (APA claims relating to grant terminations belong in Federal Court of Claims); *Sustainability Institute v. Trump*, --- F.4th ---, No. 25-1575, 2026 WL 157120, at *6 (4th Cir. Jan. 21, 2026) ("the alleged statutory and constitutional violations do not alter the essentially contractual nature of Plaintiffs' APA claims before us on appeal"); *Tucson Airport Authority v. General Dynamics Corp.*, 136 F.3d 641, 647 (9th Cir. 1998) (where one claim was a due process claim, explaining that "[b]ecause the United

12

States's obligation is in the first instance dependent on the contract, these claims are contractually-based" and "the district court lacks jurisdiction under the Tucker Act"); *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985) (concluding that district court lacked jurisdiction pursuant to the Tucker Act because the right to payment "is created in the first instance by the contract, not by the Debt Collection Act," the statutory vehicle through which plaintiff asserted its claim).

Indeed, it is the HTP Grant and Loan Agreements that impose procedural requirements for funding suspensions and the agreements that set out the substantive standards pursuant to which funding under the grants or loans can be suspended. *See* Williams Decl. ¶ 4. The suspension of funding that Plaintiffs challenge is actionable only by reference to the HTP Grant and Loan Agreements' terms, conditions, and performance requirements. Because no cause of action would exist without the HTP Grant and Loan Agreements, Plaintiffs' APA claims are necessarily "based on' the [] grants," *NIH*, 145 S. Ct. at 2658 (quoting *California*, 604 U.S. at 651), and this Court lacks jurisdiction. To conclude otherwise, and determine that Plaintiffs have some independent extra-contractual basis to bring an APA claim, would swallow the rule. It would mean that any state or beneficiary affected by a federal contract could bypass the Court of Federal Claims, obtain equitable relief in district court, and force continued performance of federal contracts through the APA. That would gut the Tucker Act's exclusivity and undo Congress's deliberate channeling of contract disputes with the United States.

Plaintiffs' brief argument to the contrary, in footnote 3 of their TRO Motion, is unavailing. TRO Motion at 12 n.3. Plaintiffs assert that their claims are not precluded by Tucker Act jurisdiction because they do "not contend that DOT violated the terms of a particular agreement . . . [t]hey only ask that, if the federal agencies believe a suspension of Project funding is merited,

13

they adhere to 2 C.F.R. § 200.339 and make any such decision (other than the one announced on September 30) based on reasoned decisionmaking." *Id*. This is just a reframing of their APA claims, which allege *first*, that Government's suspension of funding was in violation of law because it did not follow the procedures governing how it may interrupt funding to grant recipients contained in OMG regulations at 2 C.F.R. part 200; and *second* that the Government's suspension of funding was arbitrary and capricious because it was not based on reasoned decision-making. But courts have repeatedly rejected the argument that APA claims challenging the government's decision to terminate or suspend funding under a grant as contrary to law or arbitrary and capricious claims are something other than contract claims.

In *California*, the plaintiffs brought APA claims alleging that across-the-board cuts to DEI-related grants were arbitrary and capricious and that the grant terminations were "contrary to the Department's regulations and arbitrary and capricious when viewed in light of the statutes authorizing those grants." *See* Opposition to Application at 22, *Dep't of Educ. v. California*, 604 U.S. 650 (2025) (No. 24A910), 2025 WL 963588. They claimed, thus, that "[t]he controversy thus centers around federal statutes and regulations" rather than contract rights. *Id*. Yet the Supreme Court still found that the Government was likely to succeed in showing that the claims belonged in the Court of Federal Claims under the Tucker Act. *California*, 640 U.S. at 651.

Similarly, in *Climate United Fund v. Citibank, N.A.*, 154 F.4th 809 (D.C. Cir. 2025) ("*Climate United*"), *reh'g en banc granted, opinion vacated*, No. 25-5122, 2025 WL 3663661 (D.C. Cir. Dec. 17, 2025), a grantee alleged that EPA's termination of its grant agreements violated OMB guidance, which the grantees interpreted to prohibit termination. The court reasoned that any violation of law "expressly refers to and incorporates the grant agreements," and that "the fact that the government's termination of a contract 'also arguably violates certain other regulations

does not transform the action into one based solely on those regulations.'" *Id.* at 821 (quoting *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985)).  The court stated that the plaintiffs' argument that EPA failed to properly notice termination was akin to a claim that "the government stopped performing on [a] contract without sufficient warning," and that the substance of the grantees' claim "can be analyzed solely on contract principles." *Id.* (cleaned up).  The court also held that plaintiffs' arbitrary and capricious claim could be evaluated only by reference to and incorporation of the relevant contracts—the grantee's argument that the termination is arbitrary and capricious is simply a claim that the government breached the grant agreements by terminating them with impunity.  *Id.* at 823.  The source of the plaintiffs' rights was, therefore, not independent of the contracts.  *Id.*  Indeed, the court noted that to hold otherwise would "effectively circumvent[]" Congressional intent "to limit contract remedies against the government to damages in the Court of Federal Claims." *Id.* at 822 (cleaned up).

Further, in *New York v. Nat'l Sci. Found.*, 793 F. Supp. 3d 562 (S.D.N.Y. 2025), sixteen states brought an action against the government challenging a directive by the National Science Foundation ("NSF") and the NSF's termination of grant awards.  Specifically, plaintiffs argued that termination of the grant awards pursuant to the directive was arbitrary and capricious and contrary to law, in violation of the APA.  *Id.* at 573.  The Court held that "[w]hile the complaint pleads classic APA violations [], the application for a preliminary injunction is predominantly focused on breach-of-contract remedies in the form of reversing the grant terminations and reinstating the awards."  *Id.* at 583. The court concluded that this was a request for specific performance of the grant agreements and that Tucker Act exclusivity precluded district court jurisdiction.  *Id.* at 586.

In *American Association of Physics Teachers, Inc. v. National Science Foundation*, 804 F. Supp. 3d 45 (D.D.C. 2025), plaintiff-grantees sought to challenge the NSF's abrupt termination of approximately 1,600 grants worth over $1 billion pursuant to a change in agency priorities. The grantees brought suit under the APA alleging that the termination of their grants was arbitrary and capricious, and they sought declaratory and injunctive relief. *Id*. at 62. Like in *Climate United*, the court held that the source of Plaintiff's rights arose in contract. *Id*. The court explained "[t]ellingly, the thrust of Plaintiffs' claim that NSF's action was arbitrary and capricious under the APA is that NSF previously promised grant funding and then withdrew that funding without explanation, which sounds like a complaint about breach." *Id*.

Further, in *Sustainability Institute*, 2026 WL 157120, nonprofit organizations and local governments that were awarded or were subrecipients of federal grants brought APA challenges concerning the government's termination or suspension of environmental and agricultural grants pursuant to executive orders. The plaintiff argued that their APA claims arose from the Constitution and federal statutes rather than contract because they sought "forward-looking injunctive and declaratory relief." *Id*. at *7. The Fourth Circuit rejected that argument, explaining that the alleged statutory and constitutional violations did not alter the essentially contractual nature of plaintiffs' claims. *Id*. The *Sustainability Institute* plaintiffs "identif[ied] no source of law, besides their grant agreements, guaranteeing them the relief they seek: continued payments on those grants." *Id*. at *6. Thus, "Plaintiffs' injury and alleged right to payment stem from the government's refusal to pay promised grants according to the terms and conditions that accompany

them." *Id*. (quoting *NIH*, 145 S. Ct at 2664). Accordingly, the Fourth Circuit held that the plaintiffs' claims were foreclosed by *California* and *NIH*.[3]

The same principles apply here. Plaintiff's allegations that the Government violated law or failed to follow its own regulations in suspending the HTP Grant and Loan Agreements cannot transform this action into one based solely on those laws and regulations. Nor can its claim that the Government acted without reason in suspending funding. Those are claims that must be analyzed solely based on contract principles in the Court of Federal Claims.

       iii.   Plaintiffs' Requested Remedies

---

[3]     Case law from the D.C. Circuit, from even before *California* and *NIH*, applying the *Megapulse* framework dictate the same conclusion.

    In *Spectrum Leasing Corp. v. United States*, a government contractor encountered difficulties performing the contract; the government invoked a liquidated damages provision and, as a result, withheld payments under the contract. 764 F.2d 891, 892 (D.C. Cir. 1985). The contractor sued, claiming that government violated statutory procedures in withholding the payments. *Id*. The court held that the action belonged in the Court of Federal Claims under the Tucker Act, explaining that the asserted "substantive right" to monetary payments was "created in the first instance by the contract," not by the relevant statute, which "confer[red] no such right in the absence of the contract itself." *Id*. at 894. The contractor's demand for payments presented a "contract dispute" because the contractor sought to enforce a right that "arose only upon creation and satisfaction of its contract with the government; in no sense did it exist independently of that contract." *Id*.

    And in *Ingersoll-Rand Co. v. United States*, the government terminated a contract for convenience pursuant to a regulation incorporated into the contract. 780 F.2d 74, 75 (D.C. Cir. 1985). The plaintiff challenged that termination as arbitrary and capricious and as contrary to multiple regulations. *See id*. The court determined that, notwithstanding those statutory and regulatory allegations, "the essential rights at stake . . . are contractual." *Id*. at 77. The fact that "the termination also arguably violate[d] certain other regulations" and that plaintiff "allege[d] only a violation of the regulations [does not] change the essential character of the action." *Id*. at 78. The court explained that "it [was] possible to conceive of [the] dispute as entirely contained within the terms of the contract." *Id*. And the plaintiff's request for "an order reinstating the original award of the contract" similarly sounded in contract. *Id*. at 79-80.

    *Spectrum* and *Ingersoll-Rand* teach that Plaintiffs' claims are essentially contractual, even if dressed up in statutory or constitutional garb. As in *Spectrum*, the only possible source of plaintiffs' purported right to payments from the government are the grant agreements themselves. As in *Ingersoll-Rand*, the "essential rights at stake here are contractual" despite plaintiffs' "efforts to cast its complaint otherwise." 780 F.2d at 77.

The relief that Plaintiffs seek is likewise contractual in nature.  Plaintiffs seek a temporary restraining order restraining the Government from implementing the September 30, 2025 suspension of federal disbursements to GDC for the Hudson Tunnel Project.  In other words, Plaintiffs ask the Court to rescind the funding suspension, reinstate past due grant and loan payments, and compel continued federal performance under the grant and loan terms.  That relief is functionally indistinguishable from specific performance.

These classic contractual remedies are generally unavailable against the government. *Ingersoll-Rand Co.*, 780 F.2d at 79–80 (order "reinstating the original award of [a] contract . . . amount[ed] to a request for specific performance"); *Climate United*, 154 F.4th at 823 (seeking an injunction barring termination and ordering disbursement of grant funds was identical to requesting "specific performance" of a grant agreement).  As courts have repeatedly held, a plaintiff may not use the APA to compel the United States to perform contractual obligations, regardless of whether the relief is characterized as equitable or non-monetary.  *Presidential Gardens Assocs. v. U.S. ex rel. Secretary of Housing and Urban Dev.*, 175 F.3d 132, 143 (2d Cir. 1999) ("Actions seeking specific performance of a contract, brought in order to avoid the Tucker Act's limitation on money judgments, are not allowed to be brought against the United States." (citing *B.K. Instrument, Inc. v. U.S.*, 715 F.2d 713, 728 (2d Cir. 1983)).

Like the *California* and *NIH* plaintiffs, Plaintiffs seek relief in the form of declaratory and injunctive relief that requires the Government to pay money on a contract.  Like the *California* and *NIH* plaintiffs, Plaintiffs challenge the termination or suspension decision under the APA, on the grounds that it is arbitrary and capricious and contrary to law.  And like the district courts in *California* and *NIH*, this Court too "lack[s] jurisdiction . . . under the APA" to compel the Government "to pay money" under the grant agreements, *California*, 604 U.S. at 651, or "to order

18

relief designed to enforce any obligation to pay money pursuant to those grants," *NIH*, 145 S. Ct. at 2658 (internal quotation marks omitted).

It is of no moment that Plaintiffs seek only declaratory and injunctive relief to "set aside" the September 30 Suspension.  Compl., Prayer for Relief (b).  The *NIH* plaintiff similarly "invoked the APA only to vacate the government's decision to terminate" grants rather than seeking past-due sums, and the Supreme Court's stay order affirms that such cases must be heard in the Court of Federal Claims.  *NIH*, 145 S. Ct. at 2664 (2025) (Gorsuch, J. concurring in part and dissenting in part); *see also id.* ("[A]n order vacating the government's decision to terminate grants under the APA is in every meaningful sense an order requiring the government to pay those grants."); *see also Fairfax Cnty. Sch. Bd. v. McMahon*, 798 F. Supp. 3d 563, 569 (E.D. Va. 2025) (fact that plaintiffs did not explicitly request money damages, but rather declaratory and injunctive relief, did not help them plead around Tucker Act jurisdiction), appeal docketed, Nos. 25-2087 and 25-2107 (4th Cir. Aug. 29, 2025).  And with good reason: if plaintiffs could evade the Tucker Act just by requesting declaratory relief, virtually any contract suit could be transmuted into an APA claim. *See U.S. Conf. of Catholic Bishops v. U.S. Dep't of State*, 770 F. Supp. 3d 155, 165 (D.D.C. Mar. 11, 2025) ("Sure, the [plaintiff] seeks to set aside agency action. But the agency action that it asks the Court to reverse is the Government's decision to cease a financial relationship with the [plaintiff]. This is not standard injunctive fare.").

When Plaintiff's claim is "[s]tripped of its equitable flair," the "requested relief seeks one thing: [T]he Court to order the Government to stop withholding the money due" under its grant agreements. *Catholic Bishops*, 770 F. Supp. 3d at 163. "In even plainer English: [they] want[] the Government to keep paying up." *Id.* Such a claim for "the classic contractual remedy of specific

19

performance," and one that GDC is already seeking in its parallel action, "must be resolved by the Claims Court." *Id.* (citations omitted).

B.     That Plaintiffs Are Not Signatories to the HTF Grant and Loan Agreements is of No Moment.

Plaintiffs argue that the Tucker Act does not bar this Court's jurisdiction over their APA claims because they—New Jersey and New York—are not signatories to the funding agreements between DOT and GDC. *See* TRO Motion at 12 n.3. Even putting aside the fact that GDC was created by Plaintiffs and remains closely related to them, this argument is unavailing. In support, Plaintiffs cite a single case from the Federal Circuit, *Pac. Gas & Elec. Co. v. United States*, 838 F.3d 1341, 1346 (Fed. Cir. 2016). In that case, the Federal Circuit held simply that standing to sue the government on a contract claim is limited to those in privity of contract with the government. *Id.* at 1351-1353. While privity may be the relevant test when determining whether a plaintiff can bring a contract case against the government in the Court of Federal Claims, it is not the relevant jurisdictional test here and Plaintiffs cannot use the APA to obtain relief they could not obtain directly under contract law.

The relevant framework for the Court to apply is the one from *Megapulse*: whether Plaintiffs seek to enforce rights that are contractual in origin and whether the relief sought would compel contractual performance by the Government. That the action is brought by a non-signatory—such as third-party beneficiaries, upstream funders, or affiliated entities—does not invoke the APA to enforce federal contracts indirectly, even if that means Plaintiffs cannot get the relief that they seek. *See Sustainability Institute*, 2026 WL 157120, at *7 n.7 ("[T]he fact that the Tucker Act does not allow the specific relief Plaintiffs seek does not mean that their claims must proceed under the APA; rather, it shows that Congress made the dispositive choice for contract claims against the United States to be limited to certain money damages.")

In *Am. Ass'n of Physics Tchrs., Inc. v. Nat'l Sci. Found.*, No. 25 Civ. 1923 (JMC), 2025 WL 2615054, at *10 (D.D.C. Sept. 10, 2025) ("*AAPT*"), plaintiffs argued that there must be jurisdiction over their claims in district court because some of them, staff members who worked on NSF-funded projects but not the direct recipients of the grants, could not sue in the Court of Federal Claims. The court recognized that those individuals lacked privity with the federal government and therefore, could not bring a contract suit in the Court of Federal Claims. *Id*. However, as the court held, that fact does *not* create jurisdiction in the district court over their contract claims. *Id*. The court explained that it could not exercise jurisdiction where it does not otherwise have it just because there are aggrieved parties who lack other options to seek relief. *Id*. Here, like in *AAPT*, "[w]hile it may be true that some Plaintiffs or their members cannot bring their own contractual suits in the Court of Federal Claims, th[is] Court cannot expand the bounds of its jurisdiction to fill that gap." *Id*.

Further, in *Thakur*, 2025 WL 3760650, at *3, the plaintiffs were six researchers who relied on grants afforded by the government to the University of California. That the grantees were the schools, not the individual researchers, and that the researchers may therefore not be able to bring their own contract claims in the Court of Federal Claims, was of no moment to the Court in considering whether it had jurisdiction over the APA claims at issue. *See id*. at *3. The Ninth Circuit held that the district court lacked jurisdiction over an APA arbitrary and capricious claim brought by a putative class of individuals whose research grants were terminated without any grant-specific explanation, because its requested relief was designed to enforce an obligation to pay money pursuant to the grants. *Id*.

Further, it would lead to an absurd result if Plaintiffs, as non-parties to the grants and contracts here could use the APA as a workaround to seek the same relief in district court that

GDC, as a party to the contracts, could only seek, and is in fact seeking, in the Court of Federal Claims because of the Tucker Act. Accordingly, that Plaintiffs are not actually signatories to the HTP Grant and Loan Agreements does not allow them to circumvent the Tucker Act's exclusive jurisdiction to enforce contract claims against the Government.

## II.    Plaintiffs Cannot Show Irreparable Harm

Even were the Court to conclude it has jurisdiction over Plaintiffs claims, they are not entitled to a temporary restraining order because they have not shown irreparable harm. As to irreparable harm, the Supreme Court recently held that the government is irreparably harmed where grant funds are released to a plaintiff which "'cannot be recouped' and are thus 'irrevocably expended.'" *NIH*, 145 S. Ct. at 2658 (quoting *Phillip Morris USA Inc. v. Scott*, 56 U.S. 1301, 1304 (2010)). In *NIH*, the Court found irreparable harm to the government from the release of grant funds to plaintiffs, who did "not state they will repay grant money if the Government ultimately prevails," and who contended that they lacked the resources to continue to fund their project without the funds as this was "inconsistent with the proposition that they have the resources to make the Government whole for money already spent." *Id*. The same is true here. Plaintiffs have not stated that they will repay the Government for the expended funds should the Government prevail. In fact, Plaintiffs ask the Court, through their proposed order to show cause, to order that they "are not required to post security" in the event the Court grants their temporary restraining order.[4] ECF No. 11. And, as in *NIH*, Plaintiffs claim that GDC cannot continue the Hudson Tunnel

---

[4]    In accordance with Fed. R. Civ. P. 65(c) and the President's March 11, 2025, memorandum titled "Ensuring the Enforcement of Federal Rule of Civil Procedure 65(c)," if the Court enters a temporary restraining order, the Government respectfully requests that the Court require Plaintiffs to post a bond of $205,275,358, the amount of past due payments GDC has alleged it is owed under the HTP Grant and Loan Agreements. *See* Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.");

Project without the funding, which is inconsistent with the notion that the Plaintiffs will repay the Government for any expended funds.  As such, should the Government prevail, any funds released to Plaintiff would be "irrevocably expended." *NIH*, 145 S. Ct. at 2658.

Plaintiffs argue that their financial injuries are irreparable because they cannot pursue any damages claim against the Federal Government.  *See* TRO Motion at 23-24.  But any money damages that the Plaintiffs will suffer can be remedied by GDC's parallel action in the Court of Federal Claims, should GDC prevail.  In that case, GDC is seeking not only an award of money damages for past due disbursements but additional money damages for the "DOT's improper suspension of funding under the HTP Grant and Loan Agreements and for the costs of the resulting work suspension."  GDC Complaint at 74.  Should GDC prevail in its breach of contract litigation, the Plaintiffs too could be made whole for monies they provide to GDC for expenditures on work site maintenance.  Thus, Plaintiffs will not suffer irreparable harm.  *See JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) ("[I]t is settled law that when an injury is compensable through money damages there is no irreparable harm.").

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for a temporary restraining order and dismiss Plaintiffs' complaint for lack of jurisdiction.

---

www.whitehouse.gov/presidentialactions/2025/03/  ensuring-the-enforcement-of-federal-rule-of-civil-procedure-65c/.  The government further requests that, if a temporary restraining order is entered, the Court enter a stay of this action pending the disposition of any appeal authorized by the Solicitor General.

Dated:  New York, New York
       February 6, 2026

                              Respectfully,

                              JAY CLAYTON
                              United States Attorney

                    By:   */s/ Tara Schwartz*_____
                              TARA SCHWARTZ
                              C. NNEKA NZEKWU
                              Assistant United States Attorney
                              86 Chambers Street, Third Floor
                              New York, New York 10007
                              Telephone: (212) 637-2633/2737
                              Email: tara.schwartz@usdoj.gov
                                     chibogu.nzekwu@usdoj.gov

                              *Counsel for Defendants*


## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 7,644 words.

                    */s/ Tara Schwartz*_____
                    Assistant United States Attorney