```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
STATE OF NEW JERSEY et al.,                                       :
                                                                  :
                              Plaintiffs,                         :    26-CV-00939 (JAV)
                                                                  :
              -v-                                                 :    OPINION AND ORDER
                                                                  :
UNITED STATES DEPARTMENT OF                                       :
TRANSPORTATION et al.,                                            :
                                                                  :
                              Defendants.                         :
------------------------------------------------------------------X
```

JEANNETTE A. VARGAS, United States District Judge:

Plaintiffs the State of New Jersey and the State of New York (collectively, "Plaintiffs" or "the States") seek emergency relief under the Administrative Procedure Act ("APA") to enjoin the U.S. Department of Transportation ("DOT") from continuing to implement its suspension of funding for the Hudson Tunnel Project ("Hudson Tunnel Project"), which Plaintiffs represent must pause today if federal funding does not immediately resume. ECF No. 1 ("Complaint" or "Compl."), ¶ 11.

The North River Tunnel ("NRT"), a single, two-tube rail tunnel that carries 200,000 rail passengers under the Hudson River every day, is in critical need of repair. *Id.*, ¶ 1. According to the Complaint, the NRT is a critical component of the nation's infrastructure, supporting approximately twenty percent of the nation's overall economic output. *Id.*, ¶ 2. The $16 billion Hudson Tunnel Project was designed to address this issue. *Id.* The Project would create a new Hudson River

rail tunnel with two new tracks under the Hudson River connecting to Penn Station and rehabilitate the existing NRT.  *Id.*

Early in 2023, New Jersey, New York, Amtrak, and Gateway Development Commission ("GDC"), an entity created by statute, entered into a Project Development Agreement that tasked GDC with the development, design, and construction of the Hudson Tunnel Project.  *Id.*, ¶ 2.  The States and Amtrak committed to contributing one-third of the funding needed to support GDC's operating budget.  *Id.*, ¶ 6.  Subsequently, the Department of Transportation entered into a series of grant and loan agreements with GDC, though which the federal Government committed billions of dollars in additional funding to the Hudson Tunnel Project.  *Id.*, ¶¶ 42-58.

Yet on September 30, 2025, the DOT issued a letter to GDC, informing it that it had issued an interim final rule, removing race- and sex-based presumptions of social and economic disadvantage from its Disadvantaged Business Enterprise program.  *Id.*, Ex. 1 (the "September 30 Suspension Decision").  The letter stated that DOT would be conducting a review to ensure that the Hudson Tunnel Project was in compliance with this rule, and that no further disbursements for the Project would be made until that review was complete.  *Id.*

Since that time, GDC has used its operating budget and the remainder of its capital account, as well as available credit, to continue funding construction and procurement activity.  *Id.*, ¶ 10.  But on January 26, 2026, GDC was forced to notify

2

its contractors that all work on the Project must pause on February 6, 2026, unless federal funding resumes. *Id.,* ¶ 11.

The States now bring this action for declaratory and injunctive relief against Defendants the DOT; Secretary of Transportation Sean Duffy, in his official capacity; the Federal Railroad Administration; Administrator of the Federal Railroad Administration David Fink, in his official capacity; the Federal Transit Administration ("FTA"); FTA Administrator Marcus J. Molinaro, in his official capacity; the Build America Bureau; and Build America Bureau Executive Director Morteza Farajian (collectively, "Defendants" or "the Government"). For the reasons that follow, the Plaintiffs' application for a temporary restraining order is GRANTED.

## PROCEDURAL HISTORY

On February 3, 2026, Plaintiffs filed the Complaint and a proposed Order to Show Cause with Emergency Relief, seeking a temporary restraining order ("TRO") enjoining . ECF Nos. 11-13. New York and New Jersey contend that the Government's September 30 Suspension Decision violates the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*, by (i) acting contrary to federal regulations establishing precisely whether, when, and how agencies can suspend disbursements of obliged grants, and (ii) arbitrarily and capriciously deciding to upend the Hudson Tunnel Project. The states contend that the Court should immediately enjoin implementation of DOT's September 30 Suspension Decision in

order to prevent irreparable harm caused by a work stoppage on the Hudson Tunnel Project.

In support of the States' motion for a temporary restraining order, the States' have submitted their memorandum of law; the Complaint and attached exhibit (the September 30 Suspension Decision); and the Affirmation of Special Counsel of the New York State Attorney General Stephen C. Thompson, appended to which are 23 exhibits. These 23 exhibits comprise:

- The affidavit of Senior Vice President and General Manager of Rail at New Jersey Transit Authority James Sincaglia, executed on February 3, 2026;
- The affidavit of Deputy Secretary for Transportation at the New York State Executive Chamber David Ullman, executed on February 3, 2026;
- The May 28, 2021, Federal Railroad Administration and Federal Transit Administration's Combined Final Environmental Impact Statement and Record of Decision Chapter 1;
- A New York Times article authored by Patrick McGeehan on Feb. 7, 2011, titled "With One Plan for a Hudson Tunnel Dead, Senators Offer Another Option";
- DOT website article, titled "Hudson River Tunnel Project between New York and New Jersey";
- A news release issued by the Regional Plan Association on October 16, 2025, titled "Statement of the Importance of the Gateway Program'";
- A press release issued by the Federal Transit Administration on January 20, 2022, titled "Federal Transit Administration Updates Project Ratings for Six Projects in the Capital Investment Grants Program";
- The February 3, 2023, Project Development Agreement for Hudson Tunnel Project among Gateway Development Commission ("GDC"), the State of New Jersey, the State of New York, and National Railroad Passenger Corporation;
- An excerpt of the 2022 RAISE Award Fact Sheets for Tonnelle Avenue Bridge and Utility Relocation Project;
- An excerpt of the National Infrastructure Project Assistance (Mega) Program FY2022 Fact Sheets for the Hudson Yards Concrete Casing – Section 3 (HYCC-3) Project;
- A September 30, 2025, letter from Marcus J. Molinaro at the United States Department of Transportation Federal Transit Administration to Thomas F. Prendergast at GDC;

- A CNBC article written by Dan Mangan and dated October 1, 2025, titled "Trump administration freezes $18 billion in New York City infrastructure projects, Vought says";
- A press release issued by DOT on October 1, 2025, titled "Statement on Review of New York's Discriminatory, Unconstitutional Contracting Processes";
- A Fox Business article written by Greg Norman dated October 17, 2025, titled "Trump tells Maria Bartiromo Democrats made one mistake with government shutdown";
- A NJ Biz article written by Matthew Fazelpoor and dated October 27, 2025, titled "Gateway Project faces new uncertainty amid government shutdown";
- An October 2, 2025, letter from Thomas F. Prendergast at GDC to Marcus J. Molinaro at the DOT FTA;
- An October 7, 2025, letter from Angela Williams at the Departmental Office of Civil Rights at the DOT FTA to Thomas F. Prendergast at GDC
- New Jersey Transit's 2024 Annual Report;
- A CBS News article written by Alex Herrera & Marcia Kramer dated January 27, 2026, titled "Gateway Tunnel Project construction will stop if President Trump continues to withhold funds, officials say"; and
- An April 2025 Regional Planning Association report, titled "The Economic Promise of the Gateway Program."

The Court ordered that Defendants file its opposition papers by February 6, 2026. In opposition to the TRO application and in support of the Government's cross-motion to dismiss,[1] the Government filed the declaration of DOT Director of the Departmental Office of Grants and Financial Assistance ("GFA") Matthew Hawkins, ECF No. 43 ("Hawkins Decl."), to which it appends seven exhibits comprising copies of the grants, loan agreements, and terms and conditions pertinent to its agreement with the States regarding the Hudson Tunnel Project:

- The Full Funding Grant Agreement No. NY-2024-015-00 with the Federal Transit Administration ("FTA") under the Capital Investment Grants

---

[1] While the Government has filed papers in support of a motion to dismiss, it has yet to file a notice of motion.

- Program in the amount of $6.88 billion, Hawkins Decl., Ex. A ("FTA CIG Grant");

- Grant Agreement No. NY-2024-014-00 with FTA under the Rebuilding American Infrastructure with Sustainability and Equity ("RAISE") Program in the amount of $25 million, Hawkins Decl., Ex. B ("FTA RAISE Grant");

- The FTA RAISE Program incorporates by reference the "General Terms and Conditions Under the Fiscal Year 2023 RAISE Program: FTA Projects," dated June 23, 2023, Hawkins Decl., Ex. C ("RAISE General Terms");

- Grant Agreement No. 69A36524420700FSPNY with the Federal Railroad Administration ("FRA") under the Federal-State Partnership for Intercity Passenger Rail Program in the amount of $3.79 billion, Hawkins Decl., Ex. D ("FRA FSP Grant"); and

- Three separate loan agreements with DOT under the Railroad Rehabilitation and Improvement Financing Program ("RRIF") in the amount of approximately $4.06 billion, Hawkins Decl. E-G ("RRIF Loans").

The Court held a hearing with respect to Plaintiffs' TRO application on February 6, 2026.

## LEGAL STANDARD

Injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (per curiam) (cleaned up). The standard[s] for granting a temporary restraining order and a

preliminary injunction pursuant to Rule 65 of the Federal Rules of Procedure are identical." *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l, Ltd.*, 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002).  Plaintiffs seeking a TRO must show that "(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest." *New York v. U.S. Dep't of Educ.*, 477 F. Supp. 3d 279, 293 (S.D.N.Y. 2020).  If the federal government is the opposing party, then the latter factors merge.  *Id.* at 294 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

## DISCUSSION

The Court, having considered the evidentiary record and the arguments made by the parties, now grants the application for a TRO for the reasons that follow.

The APA provides a limited waiver of sovereign immunity for claims against the United States by persons "adversely affected . . . by agency action" if they "seek[] relief other than money damages."  5 U.S.C. § 702.  However, the APA's waiver of sovereign immunity does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  *Id.*

Defendants primarily argue that Plaintiffs cannot show likelihood of success on the merits because the Tucker Act vests the Court of Federal Claims with exclusive jurisdiction over Plaintiffs' claims in this case.  ECF No. 41 at 7-21.  The Tucker Act applies to all claims based "upon any express or implied contract with

the United States." 28 U.S.C. § 1491.  To determine whether a claim sounds in contract and thus falls within the Tucker Act's exclusive grant of jurisdiction, courts must look to "the source of the rights upon which the plaintiff bases its claims and the type of relief sought."  *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 403 (2d Cir. 2017) (cleaned up).

The APA establishes a "basic presumption of judicial review for one suffering legal wrong because of agency action."  *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 16-17 (2020) (cleaned up).  Yet the Government concedes that Plaintiffs could not themselves bring claims in the Court of Federal Claims, as they are not signatories to the underlying contracts.  As the D.C. Circuit held, "the Court of Federal Claims can have exclusive jurisdiction *only* with respect to matters that Congress has proclaimed are within its jurisdictional compass. . . . There cannot be exclusive jurisdiction under the Tucker Act if there is no jurisdiction under the Tucker Act."  *Tootle v. Sec'y of Navy*, 446 F.3d 167, 176-77 (D.C. Cir. 2006); *see also Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*, 137 F.4th 932, 939 (9th Cir. 2025) (holding that subcontractors could maintain suit under the APA, as they did not have the right to sue under the Tucker Act).[2]

---

[2] Defendants point to a subsequent Ninth Circuit case, *Thakur v. Trump*, No. 25-4249, 2025 WL 3760650, at *3 (9th Cir. Dec. 23, 2025).  Opp. at 21.  In that case, however, the Ninth Circuit did not expressly address the question of whether the plaintiffs would be able to pursue a contract claim in the Court of Federal Claims.

The Supreme Court's decisions in *Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025), and *Dep't of Educ. v. California*, 604 U.S. 650, 651, 145 S. Ct. 966, 968 (2025), are not to the contrary, as those cases concerned grant recipients who were able to pursue their claims in the Court of Federal Claims.

Defendants do not raise any other challenges to the merits of the claims set forth in the Complaint. The APA authorizes courts to set aside agency actions that are contrary to law, in excess of statutory authority, or arbitrary and capricious. *Id.* § 706(2). Plaintiffs argue that the September 30 Suspension Decision is contrary to federal regulation, as well as arbitrary and capricious. Having reviewed the evidence in the record, the Court concludes that Plaintiffs are likely to succeed on the merits of their APA claim for largely the reasons set forth in Plaintiffs' moving brief.

The Court is also persuaded that Plaintiffs would suffer irreparable harm in the absence of an injunction. Monetary loss can constitute irreparable harm when a party would have no means to recoup such losses through a subsequent action for monetary damages, *see, e.g.*, *United States v. New York*, 708 F.2d 92, 93 (2d Cir. 1983), and Plaintiffs have adequately demonstrated that they would imminently suffer such loss if GDC is forced to shut down its operations. Additionally, the balance of the equities weighs in favor of injunctive relief, as Plaintiffs have adequately shown that the public interest would be harmed by a delay in a critical infrastructure project.

Sufficient reason having been shown, the Court accordingly ORDERS that, pending the hearing of Plaintiffs' application for a preliminary injunction, the Defendants are enjoined from implementing the September 30, 2025 suspension of federal disbursements for the Hudson Tunnel Project pursuant to Rule 65(b) of the Federal Rules of Civil Procedure.

Additionally, the parties are ORDERED to meet and confer, and by February 11, 2026, to submit a joint letter to the Court that addresses the following:

1) Whether, in connection with the motion for a preliminary injunction, the Court's consideration of the likelihood of success on Plaintiffs' APA claims is confined to an administrative record compiled by the United States Department of Transportation ("DOT");

2) The timing of the submission of a certified administrative record by the DOT for the Court's review;

3) Whether any party will be seeking expedited discovery in connection with the motion for a preliminary injunction, and if so, the nature of such discovery;

4) Whether any party requests an evidentiary hearing in connection with the motion for a preliminary injunction, and if so, the timing and anticipated length of such a hearing;

5) Whether the Court should consolidate a hearing on the preliminary injunction motion with a trial on the merits, pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure;

6) A briefing schedule for Defendants' motion to dismiss for lack of jurisdiction; and

7) Whether, in light of Defendants' motion to dismiss, Plaintiffs anticipate amending their complaint as of right, pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure.

SO ORDERED.

Dated: February 6, 2026
      New York, New York

_____
JEANNETTE A. VARGAS
United States District Judge