# Exhibit C

**U.S. DEPARTMENT OF TRANSPORTATION**

**GENERAL TERMS AND CONDITIONS UNDER THE
FISCAL YEAR 2023 RAISE PROGRAM:
FTA PROJECTS**

Revision date: June 23, 2023

**Table of Contents**

Article 1 Purpose.................................................................................................................. 6
    1.1    Purpose. ........................................................................................................... 6
Article 2 USDOT Role.......................................................................................................... 7
    2.1    Division of USDOT Responsibilities. ............................................................. 7
    2.2    USDOT Program Contacts. ............................................................................. 7
Article 3 Recipient Role........................................................................................................ 7
    3.1    Statements on the Project. ............................................................................... 7
    3.2    Statements on Authority and Capacity. ........................................................... 8
    3.3    USDOT Reliance. ............................................................................................ 8
    3.4    Project Delivery. ............................................................................................. 8
    3.5    Rights and Powers Affecting the Project. ....................................................... 8
    3.6    Notification of Changes to Key Personnel. ..................................................... 9
Article 4 Award Amount and Federal Obligation................................................................. 9
    4.1    Federal Award Amount. .................................................................................. 9
    4.2    Federal Funding Source. ................................................................................. 9
    4.3    Federal Obligations. ....................................................................................... 9
Article 5 Statement of Work, Schedule, and Budget Changes ............................................. 9
    5.1    Change Notification Requirement.................................................................... 9
    5.2    Scope and Statement of Work Changes. ......................................................... 10
    5.3    Schedule Changes. .......................................................................................... 10
    5.4    Budget Changes............................................................................................... 10
    5.5    USDOT Acceptance of Changes...................................................................... 11
Article 6 General Reporting Terms....................................................................................... 11
    6.1    Report Submission. ......................................................................................... 11
    6.2    Alternative Reporting Methods........................................................................ 11
    6.3    Paperwork Reduction Act Information. ........................................................... 12
Article 7 Progress and Financial Reporting ......................................................................... 12
    7.1    Quarterly Project Progress Reports and Recertifications................................. 12
    7.2    Final Progress Reports and Financial Information........................................... 12
Article 8 Performance Reporting .......................................................................................... 12
    8.1    Baseline Performance Measurement. .............................................................. 12
    8.2    Post-construction Performance Measurement.................................................. 13
    8.3    Project Outcomes Report. ............................................................................... 13
    8.4    Performance Reporting Survival. .................................................................... 13
Article 9 Climate Change and Environmental Justice ......................................................... 14
    9.1    Climate Change and Environmental Justice.................................................... 14
Article 10 Racial Equity and Barriers to Opportunity ......................................................... 14
    10.1    Racial Equity and Barriers to Opportunity...................................................... 14
Article 11 Labor and Work ................................................................................................... 14
    11.1    Labor and Work. ............................................................................................. 14
    11.2    OFCCP Mega Construction Project Program. ................................................ 14
Article 12 Civil Rights and Title VI ..................................................................................... 14
    12.1    Civil Rights and Title VI................................................................................. 14
    12.2    Legacy Infrastructure and Facilities................................................................ 15

Article 13 Critical Infrastructure Security and Resilience........................................................... 15
   13.1   Critical Infrastructure Security and Resilience. ........................................................ 15
Article 14 RAISE Program Designations ..................................................................................... 16
   14.1   Effect of Urban or Rural Designation. ...................................................................... 16
   14.2   Effect of Historically Disadvantaged Community or Area of Persistent Poverty
           Designation. ............................................................................................................... 16
Article 15 Contracting and Subawards ........................................................................................ 17
   15.1   Minimum Wage Rates................................................................................................ 17
   15.2   Buy America. ............................................................................................................. 17
   15.3   Small and Disadvantaged Business Requirements..................................................... 17
   15.4   Engineering and Design Services............................................................................... 18
   15.5   Prohibition on Certain Telecommunications and Video Surveillance Services or
           Equipment. ................................................................................................................. 18
   15.6   Pass-through Entity Responsibilities.......................................................................... 18
   15.7   Subaward and Contract Authorization. ...................................................................... 18
Article 16 Noncompliance and Remedies..................................................................................... 18
   16.1   Noncompliance Determinations. ................................................................................ 18
   16.2   Remedies. .................................................................................................................. 19
   16.3   Other Oversight Entities............................................................................................. 19
Article 17 Agreement Termination............................................................................................... 20
   17.1   USDOT Termination.................................................................................................. 20
   17.2   Closeout Termination. ................................................................................................ 20
   17.3   Post-Termination Adjustments................................................................................... 20
   17.4   Non-Terminating Events. ........................................................................................... 21
   17.5   Other Remedies. ........................................................................................................ 21
Article 18 Costs, Payments, and Unexpended Funds ................................................................... 21
   18.1   Limitation of Federal Award Amount........................................................................ 21
   18.2   Projects Costs. ........................................................................................................... 21
   18.3   Timing of Project Costs.............................................................................................. 21
   18.4   Recipient Recovery of Federal Funds. ....................................................................... 21
   18.5   Unexpended Federal Funds........................................................................................ 22
   18.6   Timing of Payments to the Recipient......................................................................... 22
   18.7   Payment Method. ....................................................................................................... 22
   18.8   Information Supporting Expenditures......................................................................... 22
   18.9   Reimbursement Request Timing Frequency. ............................................................. 22
Article 19 Liquidation, Adjustments, and Funds Availability....................................................... 23
   19.1   Liquidation of Recipient Obligations.......................................................................... 23
   19.2   Funds Cancellation. .................................................................................................... 23
Article 20 Agreement Modifications ............................................................................................ 23
   20.1   Bilateral Modifications............................................................................................... 23
   20.2   Unilateral Contact Modifications............................................................................... 23
   20.3   USDOT Unilateral Modifications. ............................................................................. 23
   20.4   Other Modifications. .................................................................................................. 24
Article 21 Federal Financial Assistance, Administrative, and National Policy Requirements .... 24
   21.1   Uniform Administrative Requirements for Federal Awards........................................ 24
   21.2   Federal Law and Public Policy Requirements. ........................................................... 24

21.3    Federal Freedom of Information Act. .......................................................................... 24
21.4    History of Performance. ............................................................................................. 24
21.5    Whistleblower Protection. .......................................................................................... 24
21.6    External Award Terms and Obligations. .................................................................... 25
21.7    Incorporated Certifications. ....................................................................................... 25
Article 22 Monitoring, Financial Management, Controls, and Records ..................................... 25
22.1    Recipient Monitoring and Record Retention. ............................................................ 25
22.2    Financial Records and Audits. ................................................................................... 26
22.3    Internal Controls. ....................................................................................................... 26
22.4    USDOT Record Access. ............................................................................................ 26
Article 23 Notices ..................................................................................................................... 26
23.1    Form of Notice. .......................................................................................................... 26
23.2    Method of Notice to USDOT. .................................................................................... 27
23.3    Method of Notice to Recipient. .................................................................................. 27
23.4    Recipient Contacts for Notice. ................................................................................... 27
23.5    Additional Mandatory Notices to USDOT. ............................................................... 28
23.6    Scope of Notice Requirements. .................................................................................. 28
Article 24 Information Requests ................................................................................................ 28
24.1    USDOT Information Requests. ................................................................................... 28
Article 25 Assignment .............................................................................................................. 28
25.1    Assignment Prohibited. .............................................................................................. 28
Article 26 Waiver ...................................................................................................................... 29
26.1    Waivers. ...................................................................................................................... 29
Article 27 Additional Terms and Conditions ............................................................................ 29
27.1    Disclaimer of Federal Liability. ................................................................................ 29
27.2    Relocation and Real Property Acquisition. ............................................................... 29
27.3    Equipment Disposition. .............................................................................................. 29
27.4    Environmental Review. .............................................................................................. 30
27.5    Federal Transit Program Requirements. ..................................................................... 31
Article 28 Mandatory Award Information .................................................................................. 32
28.1    Information Contained in a Federal Award. ............................................................... 32
28.2    Federal Award Identification Number. ...................................................................... 32
28.3    Recipient's Unique Entity Identifier. ........................................................................ 32
28.4    Budget Period. ............................................................................................................ 32
28.5    Period of Performance. ............................................................................................... 32
Article 29 Construction and Definitions .................................................................................... 32
29.1    Schedules. ................................................................................................................... 32
29.2    Exhibits. ...................................................................................................................... 33
29.3    Construction. .............................................................................................................. 33
29.4    Integration. ................................................................................................................. 33
29.5    Definitions. ................................................................................................................. 33
29.6    References to Times of Day. ....................................................................................... 34
Article 30 Agreement Execution and Effective Date ................................................................ 34
30.1    Counterparts. .............................................................................................................. 34
30.2    Effective Date. ............................................................................................................ 34

## Index of Definitions

Administering Operating Administration ........................................................................................ 7
Environmental Review Entity ...................................................................................................... 30
Federal Share ............................................................................................................................... 11
FTA ................................................................................................................................................ 7
General Terms and Conditions .................................................................................................... 33
NOFO ............................................................................................................................................. 6
OFCCP ......................................................................................................................................... 14
OMB ............................................................................................................................................. 12
Program Statute ............................................................................................................................ 34
Project .......................................................................................................................................... 34
Project Closeout ........................................................................................................................... 20
Project Cost Savings .................................................................................................................... 11
RAISE Grant ................................................................................................................................ 34
RAISE Program ............................................................................................................................. 6
Recipient .......................................................................................Project-Specific Recitals
Technical Application ................................................................................................................... 34
Title VI ......................................................................................................................................... 15
USDOT ........................................................................................................................................... 6

**GENERAL TERMS AND CONDITIONS**

The Infrastructure Investment and Jobs Act, Pub. L. No. 117-58 (Nov. 15, 2021), and the Consolidated Appropriations Act, 2023, Pub. L. No. 117-328 (Dec. 29, 2022) appropriated funds to the United States Department of Transportation (the "**USDOT**") for fiscal year 2023 under the heading "National Infrastructure Investments." The funds are available to carry out 49 U.S.C. 6702 by providing Federal financial assistance for surface transportation infrastructure projects that will have a significant local or regional impact. The USDOT program administering those funds is the Rebuilding American Infrastructure with Sustainability and Equity Program (the "**RAISE Program**").

On December 14, 2022, the USDOT posted a funding opportunity at Grants.gov with funding opportunity title "FY 2023 National Infrastructure Investments" and funding opportunity number DTOS59-23-RA-RAISE. The notice of funding opportunity posted at Grants.gov, as amended on January 5, 2023, and February 3, 2023, (the "**NOFO**") solicited applications for Federal financial assistance under the fiscal year 2023 RAISE Program. On June 28, 2023, the USDOT announced application selections under the NOFO.

These general terms and conditions are incorporated by reference in a project-specific agreement under the fiscal year 2023 RAISE Program. The term "Recipient" is defined in the project-specific portion of the agreement. The project-specific portion of the agreement includes schedules A through K. The project-specific portion of the agreement may include special terms and conditions in project-specific articles.

## ARTICLE 1
## PURPOSE

**1.1**    **Purpose.** The purpose of this award is to fund an eligible project that will have a significant local or regional impact and improve transportation infrastructure. The parties will accomplish that purpose by achieving the following objectives:

(1)    timely completing the Project; and

(2)    ensuring that this award does not substitute for non-Federal investment in the Project, except as proposed in the Technical Application, as modified by schedule D.

## ARTICLE 2
## USDOT ROLE

**2.1    Division of USDOT Responsibilities.**

(a) The Office of the Secretary of Transportation is responsible for the USDOT's overall administration of the RAISE Program, the approval of this agreement, and any modifications to this agreement under section 20.1.

(b) The Federal Transit Administration (the "**FTA**") will administer this agreement on behalf of the USDOT. In this agreement, the "**Administering Operating Administration**" means the FTA.

**2.2    USDOT Program Contacts.**

Victor Waldron
RAISE Program Manager
Federal Transit Administration
1200 New Jersey Avenue SE
Room E44-431
Washington, DC 20590
(202) 366-5183
Victor.Waldron@dot.gov

and

OST RAISE Grants Coordinator
United States Department of Transportation
Office of the Secretary
1200 New Jersey Avenue SE
Room W84-227
Washington, DC 20590
(202) 366-8914
RAISEGrants@dot.gov

## ARTICLE 3
## RECIPIENT ROLE

**3.1    Statements on the Project.** The Recipient states that:

(1)     all material statements of fact in the Technical Application were accurate when that application was submitted; and

(2)     schedule E documents all material changes in the information contained in that application.

**3.2**    **Statements on Authority and Capacity.** The Recipient states that:

(1)    it has the authority to receive Federal financial assistance under this agreement;

(2)    it has the legal authority to complete the Project;

(3)    it has the capacity, including institutional, managerial, and financial capacity, to comply with its obligations under this agreement;

(4)    not less than the difference between the total eligible project costs listed in section 3 of schedule D and the RAISE Grant Amount listed in section 1 of schedule D is committed to fund the Project;

(5)    it has sufficient funds available to ensure that infrastructure completed or improved under this agreement will be operated and maintained in compliance with this agreement and applicable Federal law; and

(6)    the individual executing this agreement on behalf of the Recipient has authority to enter this agreement and make the statements in this article 3 and in section 21.7 on behalf of the Recipient.

**3.3**    **USDOT Reliance.** The Recipient acknowledges that:

(1)    the USDOT relied on statements of fact in the Technical Application to select the Project to receive this award;

(2)    the USDOT relied on statements of fact in both the Technical Application and this agreement to determine that the Recipient and the Project are eligible under the terms of the NOFO;

(3)    the USDOT relied on statements of fact in both the Technical Application and this agreement to establish the terms of this agreement; and

(4)    the USDOT's selection of the Project to receive this award prevented awards under the NOFO to other eligible applicants.

**3.4**    **Project Delivery.**

(a) The Recipient shall complete the Project under the terms of this agreement.

(b) The Recipient shall ensure that the Project is financed, constructed, operated, and maintained in accordance with all Federal laws, regulations, and policies that are applicable to projects of the Administering Operating Administration.

**3.5**    **Rights and Powers Affecting the Project.**

(a) The Recipient shall not take or permit any action that deprive it of any rights or powers necessary to the Recipient's performance under this agreement without written approval of the USDOT.

(b) The Recipient shall act promptly, in a manner acceptable to the USDOT, to acquire, extinguish, or modify any outstanding rights or claims of right of others that would interfere with the Recipient's performance under this agreement.

**3.6     Notification of Changes to Key Personnel.** The Recipient shall notify USDOT within 30 calendar days of any change in key personnel who are identified in section 4 of schedule A.

## ARTICLE 4
## AWARD AMOUNT AND FEDERAL OBLIGATION

**4.1     Federal Award Amount.** The USDOT hereby awards a RAISE Grant to the Recipient in the amount listed in section 1 of schedule D as the RAISE Grant Amount.

**4.2     Federal Funding Source.**

(a) If section 4 of schedule F identifies the Funding Act as "IIJA," then the RAISE Grant is from RAISE Program funding that was appropriated in division J of the Infrastructure Investment and Jobs Act, Pub. L. No. 117-58 (Nov. 15, 2021).

(b) If section 4 of schedule F identifies the Funding Act as "FY2023," then the RAISE Grant is from RAISE Program funding that was appropriated in the Consolidated Appropriations Act, 2023, Pub. L. No. 117-328 (Dec. 29, 2022).

(c) If section 4 of schedule F contains a table that lists separate amounts for "IIJA" and "FY2023," then the amount listed for "IIJA" is from RAISE Program funding that was appropriated in division J of the Infrastructure Investment and Jobs Act, Pub. L. No. 117-58 (Nov. 15, 2021) and the amount listed for "FY2023" is from RAISE Program funding that was appropriated in the Consolidated Appropriations Act, 2023, Pub. L. No. 117-328 (Dec. 29, 2022).

**4.3     Federal Obligations.** This agreement obligates for the budget period the amount listed in section 1 of schedule D as the RAISE Grant Amount.

## ARTICLE 5
## STATEMENT OF WORK, SCHEDULE, AND BUDGET CHANGES

**5.1     Change Notification Requirement.** The Recipient shall notify USDOT within 30 calendar days of any change in circumstances or commitments that adversely affect the Recipient's capacity or intent to complete the Project in compliance with this agreement. In that notice, the Recipient shall describe the change and what actions the Recipient has taken or plans to take to ensure completion of the Project. The notification requirement under this section 5.1 is separate from any requirements under this article 5 that the Recipient request modification of this agreement.

**5.2** **Scope and Statement of Work Changes.** If the Project's activities differ from the activities described in schedule B, then the Recipient shall request a modification of this agreement to update schedule B.

**5.3** **Schedule Changes.** If one or more of the following conditions are satisfied, then the Recipient shall request a modification of this agreement to update schedule C:

(1) a completion date for the Project or a component of the Project is listed in section 2 of schedule C and the Recipient's estimate for that milestone changes to a date that is more than six months after the date listed in section 2 of schedule C;

(2) a schedule change would require the budget period to continue after the budget period end date listed in section 1 of schedule C; or

(3) a schedule change would require the period of performance to continue after the period of performance end date listed in section 1 of schedule C.

For other schedule changes, the Recipient shall follow the applicable procedures of the Administering Operating Administration and document the changes in writing.

**5.4** **Budget Changes.**

(a) The Recipient acknowledges that if the cost of completing the Project increases:

(1) that increase does not affect the Recipient's obligation under this agreement to complete the Project; and

(2) the USDOT will not increase the amount of this award to address any funding shortfall.

(b) The Recipient shall request a modification of this agreement to update schedule D if, in comparing the Project's budget to the amounts listed in section 3 of schedule D:

(1) the total "Non-Federal Funds" amount decreases; or

(2) the total eligible project costs amount decreases.

(c) For budget changes that are not identified in section 5.4(b), the Recipient shall follow the applicable procedures of the Administering Operating Administration and document the changes in writing.

(d) If there are Project Cost Savings, then the Recipient may propose to the USDOT, in writing consistent with the Administering Operating Administration's requirements, to include in the Project specific additional activities that are within the scope of this award, as defined in section 1.1 and schedule B, and that the Recipient could complete with the Project Cost Savings.

In this agreement, "**Project Cost Savings**" means the difference between the actual eligible project costs and the total eligible project costs that are listed in section 3 of schedule D, but only if the actual eligible project costs are less than the total eligible project costs that are listed in section 3 of schedule D. There are no Project Cost Savings if the actual eligible project costs are equal to or greater than the total eligible project costs that are listed in section 3 of schedule D.

(e) If there are Project Cost Savings and either the Recipient does not make a proposal under section 5.4(d) or the USDOT does not accept the Recipient's proposal under section 5.4(d), then:

    (1)    in a request under section 5.4(b), the Recipient shall reduce the Federal Share by the Project Cost Savings; and

    (2)    if that modification reduces this award and the USDOT had reimbursed costs exceeding the revised award, the Recipient shall refund to the USDOT the difference between the reimbursed costs and the revised award.

In this agreement, "**Federal Share**" means the sum of the total "RAISE Funds" and "Other Federal Funds" amounts that are listed in section 3 of schedule D.

(f) The Recipient acknowledges that amounts that are required to be refunded under section 5.4(e)(2) constitute a debt to the Federal Government that the USDOT may collect under 2 C.F.R. 200.346 and the Federal Claims Collection Standards (31 C.F.R. parts 900–999).

**5.5**    **USDOT Acceptance of Changes.** The USDOT may accept or reject modifications requested under this article 5, and in doing so may elect to consider only the interests of the RAISE Program and the USDOT. The Recipient acknowledges that requesting a modification under this article 5 does not amend, modify, or supplement this agreement unless the USDOT accepts that modification request and the parties modify this agreement under section 20.1.

**ARTICLE 6**
**GENERAL REPORTING TERMS**

**6.1**    **Report Submission.** The Recipient shall send all reports required by this agreement to all USDOT contacts who are listed in section 5 of schedule A and all USDOT contacts who are listed in section 2.2.

**6.2**    **Alternative Reporting Methods.** The Administering Operating Administration may establish processes for the Recipient to submit reports required by this agreement, including electronic submission processes. If the Administering Operating Administration informs the Recipient of those processes in writing, the Recipient shall use the processes identified by the Administering Operating Administration.

**6.3**     **Paperwork Reduction Act Information.** Under 5 C.F.R. 1320.6, the Recipient is not required to respond to a collection of information that does not display a currently valid control number issued by the Office of Management and Budget (the "**OMB**"). Collections of information conducted under this agreement are approved under OMB Control No. 2105-0563.

**ARTICLE 7**
**PROGRESS AND FINANCIAL REPORTING**

**7.1**     **Quarterly Project Progress Reports and Recertifications.** On or before the 20th day of the first month of each calendar year quarter and until the end of the budget period, the Recipient shall submit to the USDOT a Quarterly Project Progress Report and Recertification in the format and with the content described in exhibit C. If the date of this agreement is in the final month of a calendar year quarter, then the Recipient shall submit the first Quarterly Project Progress Report and Recertification in the second calendar year quarter that begins after the date of this agreement.

**7.2**     **Final Progress Reports and Financial Information.** No later than 120 days after the end of the budget period, the Recipient shall submit

(1)     a Final Project Progress Report and Recertification in the format and with the content described in exhibit C for each Quarterly Project Progress Report and Recertification, including a final Federal Financial Report (SF-425); and

(2)     any other information required under the Administering Operating Administration's award closeout procedures.

**ARTICLE 8**
**PERFORMANCE REPORTING**

**8.1**     **Baseline Performance Measurement.** If the Capital-Planning Designation in section 2 of schedule F is "Capital," then:

(1)     the Recipient shall collect data for each performance measure that is identified in the Performance Measure Table in schedule G, accurate as of the Baseline Measurement Date that is identified in schedule G; and

(2)     on or before the Baseline Report Date that is stated in schedule G, the Recipient shall submit a Baseline Performance Measurement Report that contains the data collected under this section 8.1 and a detailed description of the data sources, assumptions, variability, and estimated levels of precision for each performance measure that is identified in the Performance Measure Table in schedule G.

**8.2**   **Post-construction Performance Measurement.** If the Capital-Planning Designation in section 2 of schedule F is "Capital," then

(1)      for each performance measure that is identified in the Performance Measure Table in schedule G with quarterly measurement frequency, for each of 12 consecutive calendar quarters, beginning with the first calendar quarter that begins after the Project revenue service date, at least once during the quarter, the Recipient shall collect data for that performance measure;

(2)      for each performance measure that is identified in the Performance Measure Table in schedule G with annual measurement frequency, the Recipient shall collect data for that performance measure on at least three separate occasions: (i) once during the four consecutive calendar quarters that begin after the Project revenue service date; (ii) once during the fourth calendar quarter after the first collection; and (iii) once during the eighth calendar quarter after the first collection; and

(3)      not later than January 31 of each year that follows a calendar year during which data was collected under this section 8.2, the Recipient shall submit to the USDOT a Post-construction Performance Measurement Report containing the data collected under this section 8.2 in the previous calendar year and stating the dates when the data was collected.

If an external factor significantly affects the value of a performance measure collected under this section 8.2, then the Recipient shall identify that external factor in the Post-construction Performance Measurement Report and discuss its influence on the performance measure.

**8.3**   **Project Outcomes Report.** If the Capital-Planning Designation in section 2 of schedule F is "Capital," then the Recipient shall submit to the USDOT, not later than January 31 of the year that follows the final calendar year during which data was collected under section 8.2, a Project Outcomes Report that contains:

(1)      a narrative discussion detailing project successes and the influence of external factors on project expectations;

(2)      all baseline and post-construction performance measurement data that the Recipient reported in the Baseline Performance Measurement Report and the Post-construction Performance Measurement Reports; and

(3)      an *ex post* examination of project effectiveness relative to the baseline data that the Recipient reported in the Baseline Performance Measurement Report.

**8.4**   **Performance Reporting Survival.** The data collection and reporting requirements in this article 8 survive the termination of this agreement.

## ARTICLE 9
## CLIMATE CHANGE AND ENVIRONMENTAL JUSTICE

9.1     **Climate Change and Environmental Justice.** Consistent with Executive Order 14008, "Tackling the Climate Crisis at Home and Abroad" (Jan. 27, 2021), schedule H documents the consideration of climate change and environmental justice impacts of the Project.

## ARTICLE 10
## RACIAL EQUITY AND BARRIERS TO OPPORTUNITY

10.1    **Racial Equity and Barriers to Opportunity.** Consistent with Executive Order 13985, "Advancing Racial Equity and Support for Underserved Communities Through the Federal Government" (Jan. 20, 2021), schedule I documents activities related to the Project to improve racial equity and reduce barriers to opportunity.

## ARTICLE 11
## LABOR AND WORK

11.1    **Labor and Work.** Consistent with Executive Order 14025, "Worker Organizing and Empowerment" (Apr. 26, 2021), and Executive Order 14052, "Implementation of the Infrastructure Investment and Jobs Act" (Nov. 15, 2021), schedule J documents the consideration of job quality and labor rights, standards, and protections related to the Project.

11.2    **OFCCP Mega Construction Project Program.** If the total eligible project costs that are listed in section 3 of schedule D are greater than $35,000,000 and the Department of Labor's Office of Federal Contract Compliance Programs (the "**OFCCP**") selects this award for participation in the Mega Construction Project Program, then the Recipient shall partner with OFCCP, as requested by OFCCP.

## ARTICLE 12
## CIVIL RIGHTS AND TITLE VI

12.1    **Civil Rights and Title VI.**

   (a) Consistent with Executive Order 13985, "Advancing Racial Equity and Support for Underserved Communities Through the Federal Government" (Jan. 20, 2021), Executive Order 14091, "Further Advancing Racial Equity and Support for Underserved Communities Through the Federal Government" (Feb. 16, 2023), and DOT Order 1000.12C, "The U.S. Department of Transportation Title VI Program" (June 11, 2021), the purpose of sections 12.1(b)–12.1(c) is to ensure that the Recipient has a plan to

comply with civil rights obligations and nondiscrimination laws, including Title VI and 49 C.F.R. part 21.

(b) If the Recipient Type Designation in section 1 of schedule K is "Existing," then the Recipient shall submit to the USDOT either:

(1)     not later than one month after the date of this agreement, documentation showing that the Recipient has complied with all reporting requirements under the Administering Operating Administration's implementation of Title VI; or

(2)     not later than six months after the date of this agreement, both a Title VI Plan and a Community Participation Plan, as those plans are described in chapter II, sections 3–4 of DOT Order 1000.12C.

(c) If the Recipient Type Designation in section 1 of schedule K is "New," then the Administering Operating Administration completed a Title VI Assessment of the Recipient, as described in chapter II, section 2 of DOT Order 1000.12C, before entering this agreement, as documented in section 2 of schedule K.

(d) In this section 12.1, "**Title VI**" means Title VI of the Civil Rights Act of 1964, Pub. L. No. 88-352 (codified at 42 U.S.C. 2000d to 2000d-4a).

**12.2    Legacy Infrastructure and Facilities.** In furtherance of the Americans with Disabilities Act of 1990 (ADA), Pub. L. No. 101-336 (codified at 42 U.S.C. 12101–12213), and Section 504 of the Rehabilitation Act of 1973, Pub. L. No. 93-112 (codified at 29 U.S.C. 794), not later than one year after the date of this agreement, the Recipient shall develop a plan to address any legacy infrastructure or facilities that are not compliant with ADA standards and are involved in, or closely associated with, the Project. Consistent with 49 C.F.R. part 27, even in the absence of prior discriminatory practice or usage, a Recipient administering a program or activity receiving Federal financial assistance is expected to take action to ensure that no person is excluded from participation in or denied the benefits of the program or activity on the basis of disability.

**ARTICLE 13**
**CRITICAL INFRASTRUCTURE SECURITY AND RESILIENCE**

**13.1    Critical Infrastructure Security and Resilience.**

(a) Consistent with Presidential Policy Directive 21, "Critical Infrastructure Security and Resilience" (Feb. 12, 2013), and the National Security Presidential Memorandum on Improving Cybersecurity for Critical Infrastructure Control Systems (July 28, 2021), the Recipient shall consider physical and cyber security and resilience in planning, design, and oversight of the Project.

(b) If the Security Risk Designation in section 5 of schedule F is "Elevated," then the Recipient shall:

(1)     in the first Quarterly Project Progress Report and Recertification that the Recipient submits under section 7.1, identify a cybersecurity Point of Contact for the transportation infrastructure being improved in the Project; and

(2)     in the second Quarterly Project Progress Report and Recertification that the Recipient submits under section 7.1, provide a plan for completing the requirements in section 13.1(c).

(c)  If the Security Risk Designation in section 5 of schedule F is "Elevated," then not later than the eighth Quarterly Project Progress Report and Recertification that the Recipient submits under section **Error! Reference source not found.**, the Recipient shall include each of the following in a Quarterly Project Progress Report and Recertification that the Recipient submits under section 7.1:

(1)     a cybersecurity incident reporting plan for the transportation infrastructure being improved in the Project or a summary of that plan;

(2)     a cybersecurity incident response plan for the transportation infrastructure being improved in the Project or a summary of that plan;

(3)     the results of a self-assessment of the Recipient's cybersecurity posture and capabilities or a summary of those results; and

(4)     a description of any additional actions that the Recipient has taken to consider or address cybersecurity risk of the transportation infrastructure being improved in the Project.

## ARTICLE 14
## RAISE PROGRAM DESIGNATIONS

**14.1**   **Effect of Urban or Rural Designation.** Based on information that the Recipient provided to the USDOT, including the Technical Application, section 1 of schedule F designates this award as an urban award or a rural award, as defined in the NOFO. The Recipient shall comply with the requirements that accompany that designation on minimum award size, geographic location, and cost sharing.

**14.2**   **Effect of Historically Disadvantaged Community or Area of Persistent Poverty Designation.** If section 3 of schedule F lists "Yes" for the "HDC or APP Designation," then based on information that the Recipient provided to the USDOT, including the Technical Application, the USDOT determined that the Project will be carried out in a historically disadvantaged community or an area of persistent poverty, as defined in the NOFO. The Recipient shall incur a majority of the costs under this award in historically disadvantaged communities or areas of persistent poverty.

**ARTICLE 15**
**CONTRACTING AND SUBAWARDS**

15.1 **Minimum Wage Rates.** The Recipient shall include, in all contracts in excess of $2,000 for work on the Project that involves labor, provisions establishing minimum rates of wages, to be predetermined by the United States Secretary of Labor, in accordance with the Davis-Bacon Act, 40 U.S.C. 3141–3148, or 23 U.S.C. 113, as applicable, that contractors shall pay to skilled and unskilled labor, and such minimum rates shall be stated in the invitation for bids and shall be included in proposals or bids for the work.

15.2 **Buy America.**

(a) Steel, iron, and manufactured goods used in the Project are subject to 49 U.S.C. 5323(j), as implemented by the Federal Transit Administration at 49 C.F.R. part 661. The Recipient acknowledges that this agreement is neither a waiver of 49 U.S.C. 5323(j)(1) nor a finding under 49 U.S.C. 5323(j)(2).

(b) Construction materials used in the Project are subject to the domestic preference requirement at § 70914 of the Build America, Buy America Act, Pub. L. No. 117-58, div. G, tit. IX, subtit. A, 135 Stat. 429, 1298 (2021), as implemented by OMB, USDOT, and FTA. The Recipient acknowledges that this agreement is neither a waiver of § 70914(a) nor a finding under § 70914(b).

(c) Under 2 C.F.R. 200.322, as appropriate and to the extent consistent with law, the Recipient should, to the greatest extent practicable under this award, provide a preference for the purchase, acquisition, or use of goods, products, or materials produced in the United States. The Recipient shall include the requirements of 2 C.F.R. 200.322 in all subawards including all contracts and purchase orders for work or products under this award.

15.3 **Small and Disadvantaged Business Requirements.**

(a) If any funds under this award are administered by or through a non-Federal entity that is also a recipient of Federal transit assistance under chapter 53 of title 49, United States Code, the Recipient shall expend those funds in compliance with the requirements at 49 C.F.R. part 26 ("Participation by disadvantaged business enterprises in Department of Transportation financial assistance programs").

(b) If any funds under this award are not administered by or through a non-Federal entity that is also a recipient of Federal transit assistance under chapter 53 of title 49, United States Code, the Recipient shall expend those funds in compliance with the requirements at 2 C.F.R. 200.321 ("Contracting with small and minority businesses, women's business enterprises, and labor surplus area firms").

(c) In this section 15.3, "non-Federal entity" is used as defined at 2 C.F.R. 200.1.

**15.4    Engineering and Design Services.** The Recipient shall award each contract or sub-contract for program management, construction management, planning studies, feasibility studies, architectural services, preliminary engineering, design, engineering, surveying, mapping, or related services with respect to the project in the same manner that a contract for architectural and engineering services is negotiated under the Brooks Act, 40 U.S.C. 1101–1104, or an equivalent qualifications-based requirement prescribed for or by the Recipient and approved in writing by the USDOT.

**15.5    Prohibition on Certain Telecommunications and Video Surveillance Services or Equipment.** The Recipient acknowledges that Section 889 of Pub. L. No. 115-232 and 2 C.F.R. 200.216 prohibit the Recipient and all subrecipients from procuring or obtaining certain telecommunications and video surveillance services or equipment under this award.

**15.6    Pass-through Entity Responsibilities.** If the Recipient makes a subaward under this award, the Recipient shall comply with the requirements on pass-through entities under 2 C.F.R. parts 200 and 1201, including 2 C.F.R. 200.331–200.333.

**15.7    Subaward and Contract Authorization.** [Reserved]

**ARTICLE 16**
**NONCOMPLIANCE AND REMEDIES**

**16.1    Noncompliance Determinations.**

(a) If the USDOT determines that the Recipient may have failed to comply with the United States Constitution, Federal law, or the terms and conditions of this agreement, the USDOT may notify the Recipient of a proposed determination of noncompliance. For that notice to be effective, USDOT must include an explanation of the nature of the noncompliance, describe a remedy, state whether that remedy is proposed or effective at an already determined date, and describe the process through and form in which the Recipient may respond to the notice.

(b) If the USDOT notifies the Recipient of a proposed determination of noncompliance under section 16.1(a), the Recipient may, not later than 7 calendar days after the notice, respond to that notice in the form and through the process described in that notice. In its response, the Recipient may:

(1)    accept the remedy;

(2)    acknowledge the noncompliance, but propose an alternative remedy; or

(3)    dispute the noncompliance.

To dispute the noncompliance, the Recipient must include in its response documentation or other information supporting the Recipient's compliance.

18 of 34

(c) The USDOT may make a final determination of noncompliance only:

    (1)    after considering the Recipient's response under section 16.1(b); or

    (2)    if the Recipient fails to respond under section 16.1(b), after the time for that response has passed.

(d) To make a final determination of noncompliance, the USDOT must provide to the Recipient a notice that states the bases for that determination.

**16.2 Remedies.**

(a) If the USDOT makes a final determination of noncompliance under section 16.1, the USDOT may impose a remedy, including:

    (1)    additional conditions on the award;

    (2)    any remedy permitted under 2 C.F.R. 200.339–200.340, including withholding of payments; disallowance of previously reimbursed costs, requiring refunds from the Recipient to the USDOT; suspension or termination of the award; or suspension and disbarment under 2 C.F.R. part 180; or

    (3)    any other remedy legally available.

(b) To impose a remedy, the USDOT must provide to the Recipient a notice that describes the remedy, but the USDOT may make the remedy effective before the Recipient receives that notice.

(c) If the USDOT determines that it is in the public interest, the USDOT may impose a remedy, including all remedies described in section 16.2(a), before making a final determination of noncompliance under section 16.1. If it does so, then the notice provided under section 16.1(d) must also state whether the remedy imposed will continue, be rescinded, or modified.

(d) In imposing a remedy under this section 16.2 or making a public interest determination under section 16.2(c), the USDOT may elect to consider the interests of only the USDOT.

(e) The Recipient acknowledges that amounts that the USDOT requires the Recipient to refund to the USDOT due to a remedy under this section 16.2 constitute a debt to the Federal Government that the USDOT may collect under 2 C.F.R. 200.346 and the Federal Claims Collection Standards (31 C.F.R. parts 900–999).

**16.3 Other Oversight Entities.** Nothing in this article 16 limits any party's authority to report activity under this agreement to the United States Department of Transportation Inspector General or other appropriate oversight entities.

**ARTICLE 17**
**AGREEMENT TERMINATION**

**17.1    USDOT Termination.**

(a) The USDOT may terminate this agreement and all of its obligations under this agreement if any of the following occurs:

  (1)    the Recipient fails to timely obtain or timely provide any non-RAISE Grant contribution or alternatives approved by the USDOT as provided in this agreement and consistent with schedule D;

  (2)    a completion date for the Project or a component of the Project is listed in section 2 of schedule C and the Recipient fails to meet that milestone by six months after the date listed in section 2 of schedule C;

  (3)    the Recipient fails to meet a milestone listed in section 3 of schedule C by the deadline date listed in that section for that milestone;

  (4)    the Recipient fails to comply with the terms and conditions of this agreement, including a material failure to comply with the project schedule in schedule C even if it is beyond the reasonable control of the Recipient;

  (5)    circumstances cause changes to the Project that the USDOT determines are inconsistent with the USDOT's basis for selecting the Project to receive a RAISE Grant; or

  (6)    the USDOT determines that termination of this agreement is in the public interest.

(b) In terminating this agreement under this section, the USDOT may elect to consider only the interests of the USDOT.

(c) This section 17.1 does not limit the USDOT's ability to terminate this agreement as a remedy under section 16.2.

(d) The Recipient may request that the USDOT terminate the agreement under this section 17.1.

**17.2    Closeout Termination.**

(a) This agreement terminates on Project Closeout.

(b) In this agreement, "**Project Closeout**" means the date that the USDOT informs the Recipient that the award is closed out. Under 2 C.F.R. 200.344, Project Closeout should occur no later than one year after the end of the period of performance.

**17.3    Post-Termination Adjustments.** The Recipient acknowledges that under 2 C.F.R. 200.345–200.346, termination of the agreement does not extinguish the USDOT's

authority to disallow costs, including costs that the USDOT reimbursed before termination, and recover funds from the Recipient.

**17.4    Non-Terminating Events.**

(a) The end of the budget period described under section 28.4 does not terminate this agreement or the Recipient's obligations under this agreement.

(b) The end of the period of performance described under section 28.5 does not terminate this agreement or the Recipient's obligations under this agreement.

(c) The cancellation of funds under section 19.2 does not terminate this agreement or the Recipient's obligations under this agreement.

**17.5    Other Remedies.** The termination authority under this article 17 supplements and does not limit the USDOT's remedial authority under article 16 or 2 C.F.R. part 200, including 2 C.F.R. 200.339–200.340.

**ARTICLE 18
COSTS, PAYMENTS, AND UNEXPENDED FUNDS**

**18.1    Limitation of Federal Award Amount.** Under this award, the USDOT shall not provide funding greater than the amount obligated under section 4.3. The Recipient acknowledges that the USDOT is not liable for payments exceeding that amount, and the Recipient shall not request reimbursement of costs exceeding that amount.

**18.2    Projects Costs.** This award is subject to the cost principles at 2 C.F.R. 200 subpart E, including provisions on determining allocable costs and determining allowable costs.

**18.3    Timing of Project Costs.**

(a) The Recipient shall not charge to this award costs that are incurred after the budget period.

(b) The Recipient shall not charge to this award costs that were incurred before the date of this agreement unless those costs are identified in section 5 of schedule D and would have been allowable if incurred during the budget period. This limitation applies to pre-award costs under 2 C.F.R. 200.458. This agreement hereby terminates and supersedes any previous USDOT approval for the Recipient to incur costs under this award for the Project. Section 5 of schedule D is the exclusive USDOT approval of costs incurred before the date of this agreement.

**18.4    Recipient Recovery of Federal Funds.** The Recipient shall make all reasonable efforts, including initiating litigation, if necessary, to recover Federal funds if the USDOT determines, after consultation with the Recipient, that those funds have been spent fraudulently, wastefully, or in violation of Federal laws, or misused in any manner under

this award. The Recipient shall not enter a settlement or other final position, in court or otherwise, involving the recovery of funds under the award unless approved in advance in writing by the USDOT.

18.5    **Unexpended Federal Funds.** Any Federal funds that are awarded at section 4.1 but not expended on allocable, allowable costs remain the property of the United States.

18.6    **Timing of Payments to the Recipient.**

(a) Reimbursement is the payment method for the RAISE Program.

(b) The Recipient shall not request reimbursement of a cost before the Recipient has entered into an obligation for that cost.

18.7    **Payment Method.**

(a) If the USDOT Payment System identified in section 6 of schedule A is "ECHO," then the Recipient shall use the Electronic Clearing House Operation ("**ECHO**") to request reimbursement.

(b) The USDOT may deny a payment request that is not submitted using the method identified in this section 18.7.

18.8    **Information Supporting Expenditures.**

(a) If the USDOT Payment System identified in section 6 of schedule A is "ECHO," then when requesting reimbursement of costs incurred or credit for cost share incurred, the Recipient shall retain documentary evidence supporting details of all costs incurred, including the Federal share and the Recipient's share of costs, proof of payment of an invoice, and information demonstrating that the costs are allocable to the Project and allowable under this agreement.

(b) If the Recipient submits a request for reimbursement that the USDOT determines does not include or is not supported by sufficient detail, the USDOT may deny the request or withhold processing the request until the Recipient provides sufficient detail.

18.9    **Reimbursement Request Timing Frequency.** If the USDOT Payment System identified in section 6 of schedule A is "ECHO," the Recipient shall request reimbursement as needed to maintain cash flow sufficient to timely complete the Project.

**ARTICLE 19**
**LIQUIDATION, ADJUSTMENTS, AND FUNDS AVAILABILITY**

**19.1    Liquidation of Recipient Obligations.**

(a) The Recipient shall liquidate all obligations of award funds under this agreement not later than the earlier of (1) 120 days after the end of the period of performance or (2) the statutory funds cancellation date identified in section 19.2.

(b) Liquidation of obligations and adjustment of costs under this agreement follow the requirements of 2 C.F.R. 200.344–200.346.

**19.2    Funds Cancellation.**

(a) RAISE Program funding that was appropriated in division J of the Infrastructure Investment and Jobs Act, Pub. L. No. 117-58 (Nov. 15, 2021), is canceled by statute after September 30, 2032, and then unavailable for any purpose, including adjustments.

(b) RAISE Program funding that was appropriated in the Consolidated Appropriations Act, 2023, Pub. L. No. 117-328 (Dec. 29, 2022) remains available until expended.

(c) Section 4.2 identifies the specific source or sources of funding for this award.

**ARTICLE 20**
**AGREEMENT MODIFICATIONS**

**20.1    Bilateral Modifications.** The parties may amend, modify, or supplement this agreement by mutual agreement in writing signed by the USDOT and the Recipient. Either party may request to amend, modify, or supplement this agreement by notice to the other party.

**20.2    Unilateral Contact Modifications.**

(a) The Recipient may update the contacts who are listed in section 3 of schedule A by notice to USDOT.

(b) The USDOT may update the contacts who are listed in section 5 of schedule A and section 2.2 by notice to the Recipient.

**20.3    USDOT Unilateral Modifications.**

(a) The USDOT may unilaterally modify this agreement to comply with Federal law, including the Program Statute.

(b) To unilaterally modify this agreement under this section 20.3, the USDOT must provide to the Recipient a notice that includes a description of the modification and state the date that the modification is effective.

**20.4**  **Other Modifications.** The parties shall not amend, modify, or supplement this agreement except as permitted under sections 20.1, 20.2, or 20.3. If an amendment, modification, or supplement is not permitted under section 20.1, not permitted under section 20.2, and not permitted under section 20.3, it is void.

## ARTICLE 21
## FEDERAL FINANCIAL ASSISTANCE, ADMINISTRATIVE, AND NATIONAL POLICY REQUIREMENTS

**21.1**  **Uniform Administrative Requirements for Federal Awards.** The Recipient shall comply with the obligations on non-Federal entities under 2 C.F.R. parts 200 and 1201.

**21.2**  **Federal Law and Public Policy Requirements.**

(a) The Recipient shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination.

(b) The failure of this agreement to expressly identify Federal law applicable to the Recipient or activities under this agreement does not make that law inapplicable.

**21.3**  **Federal Freedom of Information Act.**

(a) The USDOT is subject to the Freedom of Information Act, 5 U.S.C. 552.

(b) The Recipient acknowledges that the Technical Application and materials submitted to the USDOT by the Recipient related to this agreement may become USDOT records subject to public release under 5 U.S.C. 552.

**21.4**  **History of Performance.** Under 2 C.F.R 200.206, any Federal awarding agency may consider the Recipient's performance under this agreement, when evaluating the risks of making a future Federal financial assistance award to the Recipient.

**21.5**  **Whistleblower Protection.**

(a) The Recipient acknowledges that it is a "grantee" within the scope of 41 U.S.C. 4712, which prohibits the Recipient from taking certain actions against an employee for certain disclosures of information that the employee reasonably believes are evidence of gross mismanagement of this award, gross waste of Federal funds, or a violation of Federal law related this this award.

(b) The Recipient shall inform its employees in writing of the rights and remedies provided under 41 U.S.C. 4712, in the predominant native language of the workforce.

**21.6    External Award Terms and Obligations.**

(a) In addition to this document and the contents described in article 29, this agreement includes the following additional terms as integral parts:

   (1)    Appendix A to 2 C.F.R. part 25: System for Award Management and Universal Identifier Requirements;

   (2)    Appendix A to 2 C.F.R. part 170: Reporting Subawards and Executive Compensation;

   (3)    2 C.F.R. 175.15(b): Trafficking in Persons; and

   (4)    Appendix XII to 2 C.F.R. part 200: Award Term and Condition for Recipient Integrity and Performance Matters.

(b) The Recipient shall comply with:

   (1)    49 C.F.R. part 20: New Restrictions on Lobbying;

   (2)    49 C.F.R. part 21: Nondiscrimination in Federally-Assisted Programs of the Department of Transportation—Effectuation of Title VI of the Civil Rights Act of 1964;

   (3)    49 C.F.R. part 27: Nondiscrimination on the Basis of Disability in Programs or Activities Receiving Federal Financial Assistance; and

   (4)    Subpart B of 49 C.F.R. part 32: Governmentwide Requirements for Drug-free Workplace (Financial Assistance).

**21.7    Incorporated Certifications.** The Recipient makes the statements in the following certifications, which are incorporated by reference:

   (1)    Appendix A to 49 CFR part 20 (Certification Regarding Lobbying).

**ARTICLE 22**
**MONITORING, FINANCIAL MANAGEMENT, CONTROLS, AND RECORDS**

**22.1    Recipient Monitoring and Record Retention.**

(a) The Recipient shall monitor activities under this award, including activities under subawards and contracts, to ensure:

   (1)    that those activities comply with this agreement; and

   (2)    that funds provided under this award are not expended on costs that are not allowable under this award or not allocable to this award.

25 of 34

(b) If the Recipient makes a subaward under this award, the Recipient shall monitor the activities of the subrecipient in compliance with 2 C.F.R. 200.332(d).

(c) The Recipient shall retain records relevant to the award as required under 2 C.F.R. 200.334.

**22.2    Financial Records and Audits.**

(a) The Recipient shall keep all project accounts and records that fully disclose the amount and disposition by the Recipient of the award funds, the total cost of the Project, and the amount or nature of that portion of the cost of the Project supplied by other sources, and any other financial records related to the project.

(b) The Recipient shall keep accounts and records described under section 22.2(a) in accordance with a financial management system that meets the requirements of 2 C.F.R. 200.301–200.303 and 2 C.F.R. 200 subpart F and will facilitate an effective audit in accordance with 31 U.S.C. 7501–7506.

(c) The Recipient shall separately identify expenditures under the fiscal year 2023 RAISE Program in financial records required for audits under 31 U.S.C. 7501–7506. Specifically, the Recipient shall:

  (1)    list expenditures under that program separately on the schedule of expenditures of Federal awards required under 2 C.F.R. 200 subpart F, including "FY 2023" in the program name; and

  (2)    list expenditures under that program on a separate row under Part II, Item 1 ("Federal Awards Expended During Fiscal Period") of Form SF-SAC, including "FY 2023" in column c ("Additional Award Identification").

**22.3    Internal Controls.** The Recipient shall establish and maintain internal controls as required under 2 C.F.R. 200.303.

**22.4    USDOT Record Access.** The USDOT may access Recipient records related to this award under 2 C.F.R. 200.337.

**ARTICLE 23**
**NOTICES**

**23.1    Form of Notice.**

(a) For a notice under this agreement to be valid, it must be in writing.

(b) For a notice to USDOT under this agreement to be valid, it must be signed and dated by an individual with authority to act on behalf of the Recipient.

**23.2    Method of Notice to USDOT.**

(a) For a notice to USDOT under this agreement to be valid, it must be sent by one or more of the following: (1) email; (2) a national transportation company with all fees prepaid and receipt of delivery; or (3) by registered or certified mail with return receipt requested and postage prepaid.

(b) For a notice to USDOT under this agreement to be valid, it must be addressed to all of the USDOT contacts who are listed in section 5 of schedule A and section 2.2.

(c) Except as specified in section 23.2(d), a valid notice to USDOT under this agreement will be deemed to have been received on the earliest of (1) when the email is received by USDOT, as recorded by USDOT's email systems, and (2) when indicated on the receipt of delivery by national transportation company or mail.

(d) If a valid notice or other communication to USDOT under this agreement is received after 5:00 p.m. on a business day, or on a day that is not a business day, then the notice will be deemed received at 9:00 a.m. on the next business day.

**23.3    Method of Notice to Recipient.**

(a) Except as specified in section 23.3(d), for a notice to the Recipient under this agreement to be valid, it must be sent by one or more of the following: (1) email; (2) a national transportation company with all fees prepaid and receipt of delivery; or (3) registered or certified mail with return receipt requested and postage prepaid.

(b) For a notice to the Recipient under this agreement to be valid, it must be addressed to all of the Recipient contacts who are listed in section 3 of schedule A.

(c) A valid notice to the Recipient under this agreement is effective when received by the Recipient. It will be deemed to have been received:

   (1)    for email, on receipt; and, for other delivery, when indicated on the receipt of delivery by national transportation company or mail; or

   (2)    if the Recipient rejects or otherwise refuses to accept it, or if it cannot be delivered because of a change in address or representatives for which no notice was given, then on that rejection, refusal, or inability to deliver.

(d) For a notice to the Recipient under article 16 to be valid, it must be sent by one or more of the following: (1) a national transportation company with all fees prepaid and receipt of delivery or (2) registered or certified mail with return receipt requested and postage prepaid.

**23.4    Recipient Contacts for Notice.** If a Recipient contact who is listed in section 3 of schedule A is unable to receive notices under this agreement on behalf of the Recipient, then the Recipient shall promptly identify one or more replacement contacts under section 20.2(a).

**23.5    Additional Mandatory Notices to USDOT.** The Recipient shall notify the USDOT if any one of the following conditions is satisfied, not later than 5 business days after that condition is satisfied:

(1)    the Recipient receives a communication related to this award or this agreement from the United States Comptroller General, a Federal Inspector General, or any other oversight entity; or

(2)    the Recipient becomes aware of waste, fraud, abuse, or potentially criminal activity related to this agreement.

**23.6    Scope of Notice Requirements.** The form and method requirements of this article 23, including sections 23.1, 23.2, and 23.3, apply only to communications for which this agreement expressly uses one or more of the following words: "notice"; "notification"; "notify"; or "notifying." This article 23 does not control or limit other communication between the parties about the Project or this agreement.

### ARTICLE 24
### INFORMATION REQUESTS

**24.1    USDOT Information Requests.**

(a) By notice, the USDOT may request from the Recipient any information that the USDOT determines is necessary to fulfill its oversight responsibilities under the Program Statute or other Federal law.

(b) If the USDOT requests information from the Recipient under section 24.1(a), the Recipient shall respond in the form and at the time detailed in the notice requesting information.

(c) This section 24.1 does not limit the Recipient's obligations under section 22.4 or 2 C.F.R. 200.337 to provide access to Recipient records.

### ARTICLE 25
### ASSIGNMENT

**25.1    Assignment Prohibited.** The Recipient shall not transfer to any other entity any discretion granted under this agreement, any right to satisfy a condition under this agreement, any remedy under this agreement, or any obligation imposed under this agreement.

## ARTICLE 26
## WAIVER

**26.1    Waivers.**

(a) A waiver of a term of this agreement granted by the USDOT will not be effective unless it is in writing and signed by an authorized representative of the USDOT.

(b) A waiver of a term of this agreement granted by the USDOT on one occasion will not operate as a waiver on other occasions.

(c) If the USDOT fails to require strict performance of a term of this agreement, fails to exercise a remedy for a breach of this agreement, or fails to reject a payment during a breach of this agreement, that failure does not constitute a waiver of that term or breach.

## ARTICLE 27
## ADDITIONAL TERMS AND CONDITIONS

**27.1    Disclaimer of Federal Liability.** The USDOT shall not be responsible or liable for any damage to property or any injury to persons that may arise from, or be incident to, performance or compliance with this agreement.

**27.2    Relocation and Real Property Acquisition.**

(a) To the greatest extent practicable under State law, the Recipient shall comply with the land acquisition policies in 49 C.F.R. 24 subpart B and shall pay or reimburse property owners for necessary expenses as specified in that subpart.

(b) The Recipient shall provide a relocation assistance program offering the services described in 49 C.F.R. 24 subpart C and shall provide reasonable relocation payments and assistance to displaced persons as required in 49 C.F.R. 24 subparts D–E.

(c) The Recipient shall make available to displaced persons, within a reasonable period of time prior to displacement, comparable replacement dwellings in accordance with 49 C.F.R. 24 subpart E.

**27.3    Equipment Disposition.**

(a) In accordance with 2 C.F.R. 200.313 and 1201.313, if the Recipient or a subrecipient acquires equipment under this award, then when that equipment is no longer needed for the Project:

  (1)    if the entity that acquired the equipment is a State or a subrecipient of a State, that entity shall dispose of that equipment in accordance with State laws and procedures; and

(2)    if the entity that acquired the equipment is neither a State nor a subrecipient of a State, that entity shall request disposition instructions from the Administering Operating Administration.

(b) In accordance with 2 C.F.R. 200.443(d), the distribution of the proceeds from the disposition of equipment must be made in accordance with 2 C.F.R. 200.313–200.316 and 2 C.F.R. 1201.313.

(c) The Recipient shall ensure compliance with this section 27.3 for all tiers of subawards under this award.

**27.4   Environmental Review.**

(a) In this section, "**Environmental Review Entity**" means:

(1)    if the Project is located in a State that has assumed responsibilities for environmental review activities under 23 U.S.C. 327 and the Project is within the scope of the assumed responsibilities, the State; and

(2)    for all other cases, the FTA.

(b) Except as authorized under section 27.4(c), the Recipient shall not begin final design; acquire real property, construction materials, or equipment; begin construction; or take other actions that represent an irretrievable commitment of resources for the Project unless and until:

(1)    the Environmental Review Entity complies with the National Environmental Policy Act, 42 U.S.C. 4321 to 4370m-12, and any other applicable environmental laws and regulations; and

(2)    if the Environmental Review Entity is not the Recipient, the Environmental Review Entity provides the Recipient with written communication stating that the environmental review process is complete.

(c) If the Recipient is using procedures for acquisition of real property under 23 C.F.R. 771.118(c)(6), hardship and protective acquisitions of real property under 23 C.F.R. 771.118(d)(3), early acquisition of right-of way under 49 U.S.C. 5323(q) and FTA guidance, or rolling stock under 49 U.S.C. 5309(l)(6), then the Recipient shall comply with 23 C.F.R. 771.113(d)(1)–(3).

(d) The Recipient acknowledges that:

(1)    the Environmental Review Entity's actions under section 27.4(a) depend on the Recipient conducting necessary environmental analyses and submitting necessary documents to the Environmental Review Entity; and

(2)    applicable environmental statutes and regulation may require the Recipient to prepare and submit documents to other Federal, State, and local agencies.

(e) Consistent with 23 C.F.R. 771.105(a), to the extent practicable and consistent with Federal law, the Recipient shall coordinate all environmental investigations, reviews, and consultations as a single process.

(f) The activities described in schedule B and other information described in this agreement may inform environmental decision-making processes, but the parties do not intend this agreement to document the alternatives under consideration under those processes. If a build alternative is selected that does not align with schedule B or other information in this agreement, then:

    (1)    the parties may amend this agreement under section 20.1 for consistency with the selected build alternative; or

    (2)    if the USDOT determines that the condition at section 17.1(a)(5) is satisfied, the USDOT may terminate this agreement under section 17.1(a)(5).

(g) The Recipient shall complete any mitigation activities described in the environmental document or documents for the Project, including the terms and conditions contained in the required permits and authorizations for the Project.

**27.5**    **Federal Transit Program Requirements.**

(a) If, at any time before or during the period of performance, the Project is also funded with Federal transit assistance under chapter 53 of title 49, United States Code, all relevant FTA program requirements apply in addition to the terms and conditions of this agreement.

(b) The Recipient shall comply with the following requirements as if this award were Federal transit assistance for a major capital project under chapter 53 of title 49:

    (1)    49 U.S.C 5331 and implementing regulations at 49 C.F.R. part 655, "Prevention of Alcohol Misuse and Prohibited Drug Use in Transit Operations";

    (2)    49 U.S.C. 5333(b), implementing regulations at 29 C.F.R. part 215, "Guidelines, Section 5333(b), Federal Transit Law," and the terms and conditions of any certification or special warranty provided by the United States Department of Labor;

    (3)    49 U.S.C. 5323(m) and implementing regulations at 49 C.F.R. part 663, "Pre-Award and Post-Delivery Audits of Rolling Stock Purchases";

    (4)    49 C.F.R. part 633, "Project Management Oversight";

    (5)    FTA Circular 5800.1, "Safety and Security Management Guidance for Major Capital Projects";

(6) 49 U.S.C. 5329(e) and implementing regulations at 49 C.F.R. part 659, "Rail Fixed Guideway Systems; State Safety Oversight," and 49 C.F.R. part 674, "State Safety Oversight";

(7) 49 U.S.C. 5323(u), "Limitation on Certain Rolling Stock Procurements"; and

(8) 49 U.S.C. 5323(v), "Cybersecurity Certification for Rail Rolling Stock and Operations."

(c) If the Project is not also funded with Federal transit assistance under chapter 53 of title 49, then, except as otherwise provided in articles 1–30, the Federal Transit Administration Master Agreement is not incorporated in this agreement.

### ARTICLE 28
### MANDATORY AWARD INFORMATION

**28.1** **Information Contained in a Federal Award.** For 2 C.F.R. 200.211:

(1) the "Federal Award Date" is the date of this agreement, as defined under section 30.2;

(2) the "Assistance Listings Number" is 20.933 and the "Assistance Listings Title" is "National Infrastructure Investments"; and

(3) this award is not for research and development.

**28.2** **Federal Award Identification Number.** The Federal Award Identification Number is listed in section 8 of schedule A.

**28.3** **Recipient's Unique Entity Identifier.** The Recipient's Unique Entity Identifier, as defined at 2 C.F.R. 25.415, is listed in section 2 of schedule A.

**28.4** **Budget Period.** The budget period for this award begins on the date of this agreement and ends on the budget period end date that is listed in section 1 of schedule C. In this agreement, "budget period" is used as defined at 2 C.F.R. 200.1.

**28.5** **Period of Performance.** The period of performance for this award begins on the date of this agreement and ends on the period of performance end date that is listed in section 1 of schedule C. In this agreement, "period of performance" is used as defined at 2 C.F.R. 200.1.

### ARTICLE 29
### CONSTRUCTION AND DEFINITIONS

**29.1** **Schedules.** This agreement includes the following schedules as integral parts:

|           |                                                   |
|-----------|---------------------------------------------------|
| Schedule A | Administrative Information                        |
| Schedule B | Project Activities                                |
| Schedule C | Award Dates and Project Schedule                  |
| Schedule D | Award and Project Financial Information           |
| Schedule E | Changes from Application                          |
| Schedule F | RAISE Program Designations                        |
| Schedule G | RAISE Performance Measurement Information          |
| Schedule H | Climate Change and Environmental Justice Impacts  |
| Schedule I | Racial Equity and Barriers to Opportunity         |
| Schedule J | Labor and Work                                    |
| Schedule K | Civil Rights and Title VI                         |

29.2    **Exhibits.** The following exhibits, which are located in the document titled "Exhibits to FTA Grant Agreements Under the Fiscal Year 2023 RAISE Program," dated June 23, 2023, and available at https://www.transportation.gov/policy-initiatives/raise/raise-grant-agreements, are part of this agreement.

|          |                                                                 |
|----------|-----------------------------------------------------------------|
| Exhibit A | Applicable Federal Laws and Regulations                         |
| Exhibit B | Additional Standard Terms                                       |
| Exhibit C | Quarterly Project Progress Reports and Recertifications: Format and Content |

29.3    **Construction.**

(a) In these General Terms and Conditions:

    (1)    unless expressly specified, a reference to a section or article refers to that section or article in these General Terms and Conditions;

    (2)    a reference to a section or other subdivision of a schedule listed in section 29.1 will expressly identify the relevant schedule; and

    (3)    there are no references to articles or sections in project-specific portions of the agreement that are not contained in schedules listed in section 29.1.

(b) If a provision in these General Terms and Conditions or the exhibits conflicts with a provision in the project-specific portion of the agreement, then the project-specific portion of the agreement prevails. If a provision in the exhibits conflicts with a provision in these General Terms and Conditions, then the provision in these General Terms and Conditions prevails.

29.4    **Integration.** This agreement constitutes the entire agreement of the parties relating to the RAISE Program and awards under that program and supersedes any previous agreements, oral or written, relating to the RAISE Program and awards under that program.

29.5    **Definitions.** In this agreement, the following definitions apply:

"**General Terms and Conditions**" means this document, including articles 1–30.

"**Program Statute**" means the collective statutory text:

(1)    at 49 U.S.C. 6702;

(2)    under the heading "Department of Transportation—Office of the Secretary—National Infrastructure Investments" in title VIII of division J of the Infrastructure Investment and Jobs Act, Pub. L. No. 117-58 (Nov. 15, 2021), and all other provisions of that act that apply to amounts appropriated under that heading; and

(3)    under the heading "Department of Transportation—Office of the Secretary—National Infrastructure Investments" in title I of division L of the Consolidated Appropriations Act, 2023 Pub. L. No. 117-328 (Dec. 29, 2022), and all other provisions of that act that apply to amounts appropriated under that heading.

"**Project**" means the project proposed in the Technical Application, as modified by the negotiated provisions of this agreement, including schedules A–J.

"**RAISE Grant**" means an award of funds that were made available under the NOFO.

"**Technical Application**" means the application identified in section 1 of schedule A, including Standard Form 424 and all information and attachments submitted with that form through Grants.gov.

29.6    **References to Times of Day.** All references to times of day in this agreement are deemed references to that time at the prevailing local time in Washington, DC.

## ARTICLE 30
## AGREEMENT EXECUTION AND EFFECTIVE DATE

30.1    **Counterparts.** This agreement may be executed in counterparts, which constitute one document. The parties intend each countersigned original to have identical legal effect.

30.2    **Effective Date.** The agreement will become effective when all parties have signed it. The date of this agreement will be the date this agreement is signed by the last party to sign it. This instrument constitutes a RAISE Grant when the USDOT's authorized representative signs it.