**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STATE OF NEW JERSEY and STATE OF NEW YORK, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN DUFFY, in his official capacity as Secretary of Transportation; FEDERAL RAILROAD ADMINISTRATION; DAVID FINK, in his official capacity as Administrator of the Federal Railroad Administration; FEDERAL TRANSIT ADMINISTRATION; MARCUS J. MOLINARO, in his official capacity as Administrator of the Federal Transit Administration; BUILD AMERICA BUREAU; and DR. MORTEZA FARAJIAN, in his official capacity as Executive Director of the Build America Bureau, <br><br> Defendants. | No. 26 Civ. 939 (JAV) |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR AN INJUNCTION AND IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.:    (212) 637-2695
*Attorney for Defendants*


TARA SCHWARTZ
C. NNEKA NZEKWU
Assistant United States Attorneys
      - Of Counsel -

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................................... 1

BACKGROUND ...................................................................................................................... 3

    I.    The Contracts ................................................................................................................ 3

    II.    The Court of Federal Claims Action............................................................................. 3

    III.   The Instant Action ....................................................................................................... 5

LEGAL STANDARD .............................................................................................................. 6

    I.    Legal Standard Governing Motions to Dismiss........................................................... 6

ARGUMENT ........................................................................................................................... 7

    I.    The Tucker Act Precludes This Court from Exercising Jurisdiction Over the States'
       Claims ......................................................................................................................... 7

          A.      The Court of Federal Claims Has Exclusive Jurisdiction Over Breach of
                Contract Claims Against the Government ................................................. 7

              i.    *California* and *NIH* Control ....................................................................8

              ii.    The Source of the States' Rights............................................................10

              iii.   The States' Requested Remedies ..........................................................12

          B.      Whether the States Could Bring an Action in the Court of Federal Claims
                is Irrelevant to this Court's Jurisdiction. .................................................. 14

    II.    The APA Precludes Review of the Suspension of Monetary Disbursements ................... 23

    III.   The Suspension of Disbursements Was Not Contrary to Law, Arbitrary, or Capricious .. 25

CONCLUSION........................................................................................................................ 26

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Labs. v. Gard,*
   387 U.S. 136 (1967) ................................................................................................. 25

*American Association of Physics Teachers, Inc. v. National Science Foundation,*
   804 F. Supp. 3d 45 (D.D.C. 2025) .......................................................................... 10

*Atterbury v. U.S. Marshals Serv.,*
   805 F.3d 398 (2d Cir. 2015) ...................................................................................... 8

*Badawy v. First Reliance Standard Life Ins. Co.,*
   581 F. Supp. 2d 594 (S.D.N.Y. 2008) .................................................................... 27

*Bennett v. Spear,*
   520 U.S. 154 (1997) ................................................................................................. 25

*Block v. Community Nutrition Inst.,*
   467 U.S. 340 (1994) .............................................................................. 16, 17, 23, 24

*California v. Dep't of Educ.,*
   769 F. Supp. 3d 72 (D. Mass. 2025) ......................................................................... 8

*Camp v. Pitts,*
   411 U.S. 138 (1973) ................................................................................................. 27

*Climate United Fund v. Citibank, N.A.,*
   154 F.4th 809 (D.C. Cir. 2025) ............................................................................... 12

*Community Legal Servs. v. HHS,*
   137 F.4th 939 (9th Cir. 2025) ............................................................................ 20, 21

*Community Legal Servs. v.,HHS,*
   155 F.4th 1104 (9th Cir. 2025) ............................................................................... 21

*County of Westchester v. HUD,*
   116 F. Supp. 3d 280 (S.D.N.Y. 2015) .................................................................... 28

*Dep't of the Army v. Blue Fox, Inc.,*
   525 U.S. 255 (1999) ................................................................................................... 7

*Dep't of Educ. v. California,*
   604 U.S. 650 (2025) .......................................................................................... passim

*Elgin v. Dep't of Treasury,*
  567 U.S. 1 (2012) ................................................................................................. 16, 17

*FCC v. Fox TV Stations, Inc.,*
  556 U.S. 517 (2009) ..................................................................................................... 26

*Giammatteo v. Newton,*
  452 F. App'x. 24, 27 (2d Cir. 2011) ............................................................................. 7

*Henke v. Dep't of Commerce,*
  83 F.3d 1445 (D.C. Cir. 1996) ..................................................................................... 9

*Ingersoll-Rand Co. v. United States,*
  780 F.2d 74 (D.C. Cir. 1985) ............................................................................. 7, 12, 13

*Judulang v. Holder,*
  565 U.S. 42 (2011) ....................................................................................................... 27

*Kamen v. American Tel. & Tel. Co.,*
  791 F.2d 1006 (2d Cir. 1986) ........................................................................................ 7

*Lane v. Pena,*
  518 U.S. 187 (1996) ....................................................................................................... 7

*Lunney v. United States,*
  319 F.3d 558 (2d Cir. 2003) ........................................................................................ 25

*Makarova v. United States,*
  201 F.3d 110 (2d Cir. 2000) .......................................................................................... 7

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,*
  567 U.S. 215 (2012) ................................................................................................. 17, 23

*MediNatura, Inc. v. Food & Drug Admin.,*
  998 F.3d 931 (D.C. Cir. 2021) ..................................................................................... 26

*Megapulse, Inc. v. Lewis,*
  672 F.2d 959 (D.C. Cir. 1982) ............................................................................... 7, 8, 9

*Motor Vehicle Manufacturers Ass'n v. State Farm,*
  463 U.S. 29 (1983) ....................................................................................................... 25

*NIH v. APHA,*
  145 S. Ct. 2658 (2025) .......................................................................................... passim

*New York v. Yellen,*
  15 F.4th 569 (2d Cir. 2021) ......................................................................................... 24

*N.Y. Institute of Dietetics, Inc. v. Riley*,
   966 F. Supp. 1300 (S.D.N.Y. 2011)...................................................................... 27

*Perry Capital LLC v. Mnuchin*,
   864 F.3d 591 (D.C. Cir. 2017)............................................................................... 7

*Presidential Gardens Assocs. v. U.S. ex rel. Secretary of Housing and Urban Dev.*,
   175 F.3d 132 (2d Cir. 1999) ................................................................................ 13

*Riverkeeper, Inc. v. EPA*,
   358 F.3d 174 (2d Cir. 2004) ................................................................................ 27

*South Carolina v. Regan*,
   465 U.S. 367 (1984) ............................................................................................ 24

*Spectrum Leasing Corp.*,
   764 F.2d 891 (D.C. Cir. 1985).............................................................................11

*State of Montana v. United States*,
   124 F.3d 1269 (Fed. Cir. 1997) .......................................................................... 16

*Sustainability Institute v. Trump*,
   165 F.4th 817 (4th Cir. 2026)..............................................................................11

*Thakur v. Trump*,
   163 F.4th 1198 (9th Cir. 2025) ..................................................................... passim

*Thakur v. Trump*,
   148 F.4th 1096 (9th Cir. 2025) ........................................................................... 19

*Tootle v. Sec'y of Navy*,
   446 F.3d 167 (D.C. Cir. 2006)........................................................................ 20,

*Trump v. Boyle*,
   145 S. Ct. 2653 (2025)........................................................................................... 8

*Tucson Airport Authority v. General Dynamics Corp.*,
   136 F.3d 641 (9th Cir. 1998).................................................................................11

*U.S. Conf. of Catholic Bishops v. Dep't of State*,
   770 F. Supp. 3d 155 (D.D.C. Mar. 11, 2025) ..................................................... 15

*United States v. Fausto*,
   484 U.S. 439 (1988)....................................................................................... 16, 17

**Statutes and Regulations**

28 U.S.C. § 1491................................................................................................... 7, 9

5 U.S.C. § 702.................................................................................................................7

5 U.S.C. § 704.................................................................................................................25

5 U.S.C. § 706(2)(A).......................................................................................................27

26 U.S.C. § 7421(a) ........................................................................................................24

2 C.F.R. § 200.339 ..........................................................................................................12

Defendants the United States Department of Transportation, Sean P. Duffy in his official capacity as Secretary of Transportation, the Federal Railroad Administration, David A. Fink, in his official capacity as Administrator of the Federal Railroad Administration, the Federal Transit Administration, Marcus J. Molinaro, in his official capacity as Administrator of the Federal Transit Administration, the Build America Bureau, and Dr. Morteza Farajian in his official capacity as Executive Director of the Build America Bureau (collectively, the "Government") submit this memorandum of law in support of their motion to dismiss the Complaint (ECF No. 1 ("Complaint" or "Compl.")) filed by plaintiffs the State of New Jersey and State of New York (the "States") pursuant to Federal Rule of Civil Procedure 12(b)(1) and in opposition to the States' motion for a preliminary injunction and adjudication on the merits (*see* ECF Nos. 11, 12 ("TRO Motion"), 64).

## PRELIMINARY STATEMENT

The States sued the Government under the Administrative Procedure Act ("APA"), challenging the U.S. Department of Transportation's ("DOT") September 30, 2025, suspension of funding to the Gateway Development Commission ("GDC").  GDC is a public authority created by the States for the purpose of developing the Hudson Tunnel Project.  The States do not point to any statute requiring DOT to fund that project or to disburse funds on any particular schedule, nor do they claim themselves to be parties to any contract with the Government.  Rather, their complaint asserts DOT violated the APA by failing to honor its contractual obligations—*i.e.*, DOT acted arbitrarily and capriciously or contrary to law by suspending funding allegedly due to GDC under its contracts with the Government.  The remedy the States seek is an order compelling the Government to comply with its contractual obligations to make payments to GDC.

As the Supreme Court has repeatedly explained, however, claims of this kind cannot be brought under the APA.  *NIH v. APHA*, 145 S. Ct. 2658 (2025); *Dep't of Educ. v. California*, 604

U.S. 650 (2025). The APA's "limited waiver of sovereign immunity does not provide the District Court with jurisdiction to adjudicate claims based on [contractual] grants or to order relief designed to enforce any obligation to pay money pursuant to those grants." *NIH*, 145 S. Ct. at 2659. It does not matter that the States disguise their claims in terms of reasoned agency decision-making, or that they frame their remedy as a request to set aside a funding suspension: an "order vacating the government's decision to terminate grants under the APA is in every meaningful sense an order requiring the government to pay those grants." *NIH*, 145 S. Ct. at 2664 (Gorsuch, J., concurring in part and dissenting in part).

The States assert that these principles are inapplicable because they are not parties to the contracts; but as the Ninth Circuit recently recognized, that cuts *against* allowing APA review. *Thakur v. Trump*, 163 F.4th 1198, 1204 (9th Cir. 2025). It would make no sense to allow indirect recipients of grant funding to bring APA claims challenging grant terminations and obtain equitable relief while barring direct recipients of the grants from bringing those same claims and obtaining anything other than money damages. This case belongs in the Court of Federal Claims.

Indeed, at the same time the States filed this action, GDC filed a breach-of-contract action in the Court of Federal Claims against the United States. *GDC v. United States*, No. 26 Civ. 176 (Ct. Fed. Cl.) ("GDC Docket"), ECF No. 1 ("GDC Compl."). GDC contends that "[t]his is a straightforward breach of contract case." *Id.* ¶ 1. That is correct, and it is why the Court lacks jurisdiction over this action under the Tucker Act.

Even if this Court determines the APA to be the appropriate vehicle for the States' claims, this action still fails because DOT has not issued a final agency decision. Furthermore, the decision to suspend funding to the GDC was not arbitrary or capricious.

2

**BACKGROUND**

### I.    The Contracts

GDC is a corporation created by the States through statutes for those states' benefit. Compl. ¶ 6, Ex. 24. In 2023, the States, Amtrak, and GDC entered into a Project Development Agreement tasking GDC with development, design, and construction of the Hudson Tunnel Project. *Id*. ¶ 6. The States and Amtrak committed to contributing one-third of GDC's operating budget. *Id*.

In 2024 the Government entered into several grant and loan agreements (the "Contracts") with GDC providing over $14 billion in funding to support the Hudson Tunnel Project. ECF No. 43 ("Hawkins Decl.") ¶¶ 2(a)-(d). Each of the Contracts is executed between DOT, or a component thereof, and GDC. *Id*. Exs. A-G. The terms of each of the Contracts govern breaches or defaults; the circumstances in which DOT may withhold funding from GDC or suspend GDC's drawdown of funds; and attendant procedural requirements. *See* Hawkins Decl. ¶ 4.

On September 30, 2025, DOT notified GDC that it was reviewing the projects it funds to ensure nondiscrimination in its financial assistance programs, and that this review applied to the Hudson Tunnel Project. Compl., Ex. 1. DOT informed GDC it would temporarily pause reimbursements for the project during this administrative review. *Id*.

### II.    The Court of Federal Claims Action

On February 2, 2026, one day before this action was filed in District Court, GDC filed a breach-of-contract action in the Court of Federal Claims. GDC alleged that the Contracts require payment of a request for reimbursement of eligible costs within 30 days; allow for withholding of payments from GDC only in narrow circumstances; and allow for withholding of payments from GDC only after providing GDC notice and an opportunity to cure the alleged breach or noncompliance. GDC Compl. ¶ 12.

According to GDC, DOT's suspension of payments is a breach of the express terms of the Contracts. *Id*. ¶ 16. GDC claims DOT did not state in the September 30, 2025, letter that it had determined GDC was in breach or had failed to comply with any law or terms of the Contracts, nor did DOT afford GDC the contractually required notice and opportunity to cure before suspending payment. *Id*. ¶ 150. GDC thus claims DOT's withholdings lack any contractual basis. *Id*. ¶ 173.

GDC requests, among other things, $205,275,358 in damages for DOT's failure to make required payments and disbursements; and additional damages for the costs of the resulting work suspension. *Id*. Prayer for Relief.

At the same time it filed its complaint, GDC moved to expedite adjudication of its claims. GDC Docket, ECF No. 2. The Court granted that request. GDC Docket, ECF No. 21. On February 27, 2026, the United States opposed the GDC's motion for summary judgment and also moved to dismiss the counts of the GDC's complaint that sought the past due $205 million, which the Government had already paid to GDC by that time in compliance with the TRO issued by the Court on February 6, 2026. GDC Docket, ECF No. 27. The United States argued: (i) that the GDC's claims with respect to the $205 million are moot and, therefore, do not present a live controversy within the Court's jurisdiction; (ii) that, even if the claims are not moot, DOT's payment of the full amount sought by GDC is an affirmative defense to a contract breach, and that the complaint therefore no longer states claims on which relief can be granted; and (iii) that DOT's suspension was not a breach of contract. *See id*.

On March 12, 2026, the Court granted the United States' motion and denied the GDC's partial motion for summary judgment. GDC Docket, ECF No. 47. In a written opinion issued the same day, the Court of Federal Claims explained that: (i) the release by DOT of the full amount of

4

the withheld funds, even under the legal compunction of the TRO, mooted GDC's claims and deprived the Court of jurisdiction; and (ii) even if GDC's claim for the withheld funds were not moot, the payment of the full amount sought serves as a complete affirmative defense to GDC's claim for damages.  GDC Docket, ECF No. 49.

### III.    The Instant Action

The States filed their two-count APA complaint in this matter on February 3, 2026.  *See* Compl.  Count I asserts that DOT violated the APA by suspending funding under the Contracts without observing procedures required by OMB and DOT regulations.  Compl. ¶¶ 120-29.  Count II alleges the suspension of funding was arbitrary and capricious because DOT did not offer a reasoned explanation for its decision; DOT had an improper motive for suspending funding disbursements; and DOT provided no evidence of a considered basis for terminating or suspending funding.  *Id*. ¶¶ 130-41.  The Complaint requests a declaration that the September 30 Suspension and its implementation are unlawful, an order vacating it and setting it aside, and a permanent injunction prohibiting the Government from "enforcing the September 30 suspension and its implementation."  *Id*. Prayer for Relief.

The same day the States filed their complaint they also sought a temporary restraining order.  ECF No. 11.  The Government responded on Friday, February 6, 2026 (ECF Nos. 41, 43), and the Court held a hearing that day.  In an order issued around 7:00 p.m. that day, the Court enjoined the Government from implementing the September 30, 2025, suspension of federal disbursements.  ECF No. 45 ("TRO Order") 6.  The Court recognized the Tucker Act applies to all claims based "upon any express or implied contract with the United States."  *Id*. at 7-8.  However, the Court reasoned that because the APA establishes a "basic presumption of judicial review" of agency action, and the States would not be able to sue in the Court of Federal Claims

as nonsignatories to the Contracts, there must be jurisdiction in the District Court over the States' APA claims.  *Id*. at 8.  The Court also ruled that the States would suffer irreparable harm absent injunctive relief.  *Id*. at 9.

On February 9, 2026, the Government moved for a stay of the TRO before both this Court and the Second Circuit.  ECF No. 47; *State of New Jersey v. U.S. Department of Transportation*, No. 26-282 (2d Cir.) ("2d Cir. Docket"), ECF No. 9.  That same day, this Ccourt entered an administrative stay of the TRO until February 12, 2026, at 5:00 p.m.  ECF No. 49.

On March 2, 2026, the Court consolidated the States' motion for a preliminary injunction with an adjudication on the merits, pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure and scheduled a hearing for April 16, 2026.  ECF No. 64.

On March 11, 2026, the Second Circuit denied the Government's motion for a stay of the TRO pending appeal.  2d Cir. Docket, ECF No. 28.  The Second Circuit reasoned that the Government failed to show it would be irreparably harmed absent a stay of the TRO.  *See id*.  The Second Circuit did not determine whether the Government was likely to succeed on the merits of its appeal.  *See id.*

## LEGAL STANDARD

### I.    Legal Standard Governing Motions to Dismiss

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  On a Rule 12(b)(1) motion, a district court "may refer to evidence outside the pleadings."  *Id.* (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).  The plaintiff "has the burden of proving by a preponderance of the evidence that jurisdiction exists."  *Giammatteo v. Newton*, 452 F. App'x. 24, 27 (2d Cir. 2011).

6

**ARGUMENT**

**I.    The Tucker Act Precludes This Court from Exercising Jurisdiction Over the States' Claims**

    **A.    The Court of Federal Claims Has Exclusive Jurisdiction Over Breach of Contract Claims Against the Government**

The government is subject to suit only when it has explicitly waived sovereign immunity. *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999). Waivers of sovereign immunity must be strictly construed in favor of the government. *Lane v. Pena*, 518 U.S. 187, 192 (1996).

In the APA, Congress provided a limited waiver of sovereign immunity for claims against the United States by persons "adversely affected . . . by agency action" who "seek[] relief other than money damages." 5 U.S.C. § 702. That waiver of sovereign immunity does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.*

For contract claims against the government, the Tucker Act establishes review in the Court of Federal Claims. 28 U.S.C. § 1491. When it applies, Tucker Act jurisdiction precludes jurisdiction in district courts. *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985).

A litigant whose claim is essentially contractual cannot "avoid the jurisdictional (and hence remedial) restrictions of the Tucker Act" by simply asking for injunctive relief in district court. *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982); *see Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017) (district court lacks jurisdiction if claim "is in 'its essence' contractual."). The Tucker Act thus forbids an APA action seeking injunctive and declaratory relief if that action is a disguised breach-of-contract claim. *See NIH*, 145 S. Ct. at 2658; *California*, 604 U.S. at 650.

7

"Whether a claim is in essence a contract claim over which the Court of Federal Claims has exclusive jurisdiction depends on a two-pronged analysis: a court must examine both 'the source of the rights upon which the plaintiff bases [his] claims, and . . . the type of relief sought.'" *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 406 (2d Cir. 2015) (quoting *Megapulse*, 672 F.2d at 968).  This jurisdictional inquiry does not turn on a plaintiff's preferred characterization of its claim.

i.  *California* and *NIH* Control

The Supreme Court's orders in *California* and *NIH* foreclose the States' attempt to bring APA challenges seeking the resumption of funding under the Contracts.  *See Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025) (Supreme Court's "interim orders . . . inform how a court should exercise its equitable discretion in like cases"); *NIH,* 145 S. Ct. at 2664 (Gorsuch, J., concurring part and dissenting in part) ("reasoning" of Supreme Court decisions regarding interim relief "binds lower courts as a matter of vertical *stare decisis*").

In *California*, the plaintiffs challenged, under the APA, the Department of Education's termination of education-related grants.  604 U.S. at 650.  They sought a temporary restraining order against terminating the grants and requiring payment of past-due and ongoing obligations. *Id*.  The district court found plaintiffs were likely to succeed on the merits of their claim.  *California v. Dep't of Educ.*, 769 F. Supp. 3d 72, 76-78 (D. Mass. 2025).  The district court held the Tucker Act did not preclude jurisdiction because the plaintiffs invoked federal statutes and regulations and did not style their action as one for money damages.  *Id*. at 76, 80.

The Supreme Court stayed the district court's order.  604 U.S. 650.  As the Court explained, the district court had "enjoin[ed] the Government from terminating" grants and "require[d] the Government to pay out past-due grant obligations and to continue paying grant obligations as they accrue."  *Id*.  But the district court likely lacked jurisdiction because the APA's waiver of sovereign

8

immunity "does not extend to orders to enforce a contractual obligation to pay money along the lines of what the District Court ordered." *Id.* at 651 (quotation marks omitted). Instead, such suits must be brought in the Court of Federal Claims, in which Congress vested "jurisdiction over suits based on 'any express or implied contract with the United States.'" *Id.* (quoting 28 U.S.C. § 1491(a)(1)). That decision reflects the longstanding principle that a disguised breach-of-contract claim belongs in the Court of Federal Claims.

The Supreme Court reiterated its holding in *NIH*. There, the government changed its funding to align with policy priorities mandated by several executive orders and terminated numerous grants. 145 S. Ct. at 2660-61 (Barrett, J., concurring in part). The district court concluded that the government's decision was arbitrary and capricious under the APA. 791 F. Supp. 3d 119, 179 (D. Mass. 2025). In affirming, the First Circuit reasoned the case could proceed because the district court provided "declaratory relief that is unavailable in the Court of Federal Claims" and the case does not "depend on the terms or conditions of any contract." 145 F.4th 39, 43-44, 47, 50 (1st Cir. 2025). The First Circuit distinguished *California*, reasoning it was limited to an order "to pay out past-due grant obligations." *Id.* at 50-51.

The Supreme Court disagreed and stayed the district court's judgment vacating the government's termination of the individual grants. *NIH*, 145 S. Ct. at 2660. The Supreme Court held the APA's "limited waiver of sovereign immunity does not provide the District Court with jurisdiction to adjudicate claims based on the research-related grants or to order relief designed to enforce any obligation to pay money pursuant to those grants." *Id.* at 2660 (cleaned up).

In light of the Supreme Court's orders in *California* and *NIH*, courts have ruled APA claims, brought by grantees or beneficiaries of government grants, are barred by the Tucker Act. *E.g., Thakur*, 163 F.4th at 1204 (court likely lacked jurisdiction over APA claim that the government's

9

grant termination was arbitrary and capricious because it was designed to enforce obligation to pay money); *American Association of Physics Teachers, Inc. v. National Science Foundation*, 804 F. Supp. 3d 45 (D.D.C. 2025) (court likely lacked jurisdiction over claims brought by grantees who sought declaratory and injunctive relief on the grounds that the termination of their grants and the change in priorities violated the APA).  Because the claims at issue here are in essence contractual, the District Court lacks jurisdiction.

### ii.    The Source of the States' Rights

Even though the States, like the plaintiffs in *California* and *NIH*, style their claims as APA challenges, the essence of the States' complaint is that the Government should not have suspended funding to GDC under the Contracts and should be ordered to resume doing so.  *E.g.*, Compl. ¶ 7 ("the Federal Government pledged billions of dollars to the Project through a series of grant and loan agreements. But on September 30, 2025, without warning, the [DOT] announced a decision to indefinitely suspend payment of all Project funds"); ECF No. 58 (the States' letter to the Court complaining that the Government had yet to make payments to the GDC despite the TRO).  That is contract enforcement to pay money.

The States cite no freestanding constitutional, statutory, or regulatory obligation requiring the Government to provide funding to the Hudson Tunnel Project, and there is none.  Indeed, in the absence of the Contracts, the States would have no cause of action at all.  Therefore, regardless of the labels the States attach to their claims, they are in essence contractual.  *See Spectrum Leasing Corp.*, 764 F.2d 891, 894 (D.C. Cir. 1985)  (holding that claims were contractual because the "right to the [desired] payments arose only upon creation and satisfaction of its contract with the government; in no sense did it exist independently of that contract"); *Sustainability Institute v. Trump*, 165 F.4th 817, 827 (4th Cir. 2026) ("alleged statutory and constitutional violations do not alter the essentially contractual nature of Plaintiffs' APA claims before us on appeal"); *Tucson*

*Airport Authority v. General Dynamics Corp.*, 136 F.3d 641, 647 (9th Cir. 1998) ("[b]ecause the United States's obligation is in the first instance dependent on the contract, these [due process] claims are contractually-based" and "the district court lacks jurisdiction under the Tucker Act").

Indeed, the suspension of funding the States challenge is actionable only by reference to the Contracts' terms, conditions, and performance requirements. It is possible to conceive of this dispute entirely contained within the terms of the Contracts; and it is not possible to conceive of it absent the Contracts. Because no cause of action would exist without the Contracts, the States' APA claims are necessarily "'based on' the ... grants," *NIH*, 145 S. Ct. at 2658 (quoting *California*, 604 U.S. at 651). To conclude otherwise, and determine the States have some independent extra-contractual basis to bring an APA claim, would mean that any beneficiary affected by a federal contract could bypass the Court of Federal Claims, obtain equitable relief in district court, and force continued performance of federal contracts through the APA. Of course, those in privity with the government could not bring such APA claims in district court, nor obtain specific performance. Thus, accepting the States' theory would gut the Tucker Act's exclusivity and subvert Congress's deliberate channeling of contract disputes with the United States to that forum.

The States assert that their claims are not precluded by Tucker Act jurisdiction because they allege that the Government failed to follow binding government-wide regulations, not terms that DOT and GDC signed. But the OMB regulations to which the States cite, 2 C.F.R. § 200.339, are relevant *only* because the Government and GDC entered into contracts, which obligate the Government to pay certain monies to GDC. Without the Contracts, the OMB regulations have no relevance to the GDC, and, therefore, the States. Courts have repeatedly rejected the argument that asserting violations of OMB regulations concerning the termination of the grants is something

11

other than a contract claim. *See, e.g., Climate United Fund v. Citibank, N.A.*, 154 F.4th 809 (D.C. Cir. 2025) ("the fact that the government's termination of a contract also arguably violates certain other regulations does not transform the action into one based solely on those regulations"), *reh'g en banc granted, opinion vacated*, No. 25-5122, 2025 WL 3663661 (D.C. Cir. Dec. 17, 2025); *Ingersoll-Rand Co. v. United States,* 780 F.2d at 75 ("the termination also arguably violate[d] certain other regulations" and that plaintiff "allege[d] only a violation of the regulations [does not] change the essential character of the action").

The States' other argument—that the Government's suspension was without reasoned decision—is similarly unavailing. The Supreme Court has now twice rejected the argument that APA claims challenging the government's termination or suspension of grant funding as contrary to law or arbitrary and capricious are something other than contract claims. *California*, 640 U.S. at 651; *NIH*, 145 S. Ct. at 2660. The States' attempt to frame the claim as one of agency error does not avoid the Tucker Act because, as *Megapulse* observed, "[i]t is hard to conceive of a claim falling no matter how squarely within the Tucker Act which could not be urged to involve as well agency error subject to review under the APA." 672 F.2d at 967 n.34 (quotation omitted).

### iii.   The States' Requested Remedies

The relief the States seek is likewise contractual in nature. While the States' requested relief sounds nominally in terms of agency action, the practical realities of setting aside the Government's September 30 suspension, was a direction to perform under the Contracts, i.e., the contractual remedy of specific performance to pay money under the agreements.

But such classic contractual remedies are generally unavailable against the government. *Ingersoll-Rand*, 780 F.2d at 79-80 (order "reinstating the original award of [a] contract . . . amount[ed] to a request for specific performance"). A plaintiff may not use the APA to compel the United States to perform contractual obligations, regardless of whether the relief is characterized

as equitable or non-monetary.  *Presidential Gardens Assocs. v. U.S. ex rel. Secretary of Housing and Urban Dev.*, 175 F.3d 132, 143 (2d Cir. 1999) ("Actions seeking specific performance of a contract, brought in order to avoid the Tucker Act's limitation on money judgments, are not allowed to be brought against the United States."); *see NIH*, 145 S. Ct. at 2664 (Gorsuch J., concurring part and dissenting in part) ("An order vacating the government's decision to terminate grants under the APA is in every meaningful sense an order requiring the government to pay those grants.").

It is of no moment that the States sought only declaratory and injunctive relief to "set aside" the September 30 Suspension.  Compl., Prayer for Relief (b).  That elevates form over substance: the effect of the TRO has been requiring the Government to pay.  The States' focus since the Court's entry of the TRO has been to obtain specific performance: the Government's payment of funds to GDC.[1]

---

[1]    On the Sunday following the Friday night entry of the TRO, the States accused the Government of violating the TRO because the GDC had not received wire transfers from the Government over the weekend.  *See* Declaration of Tara Schwartz, Ex. 1.  Government counsel gave assurances that DOT was "lifting all suspensions in their electronic reimbursement systems and [] proceeding to implementing payment in the ordinary course of business as though the September 30 suspension had not occurred." *Id*. at 3.  Despite that, the States responded that "If you cannot even provide us with information on when your clients will comply with the TRO, we are considering going to the Court." *Id*. at 2. The States assertion that the Government was not complying with the TRO at that time underscores their position that the TRO required payment by the Government, rather than just the invalidation of the suspension.

Several days later, and less than 24 hours after the District Court's stay of the TRO expired, the States again accused the Government of non-compliance with the TRO because the GDC had not yet received wires of $205 million.  *See* ECF No. 58 ("Plaintiffs believe that the funds should have been disbursed immediately after the stay expired.  Yet more than 20 hours later, Defendants have not done so. . . .  It is now well into business hours today, February 13, and there is no sign of a wire transfer of any money.").  The Court held a conference the same day, February 13, 2026. ECF No. 59.  During the conference, the Court noted that, at the TRO hearing, the States had represented that the only relief they were seeking was the invalidation of the September 30 suspension; yet now, they had requested a conference because the GDC had yet to receive wire transfers of $205 million.  *See* 2d Cir. Docket, ECF No. 23, Ex. 1 at 7-10.  The Court did not award

Like the States, the *NIH* plaintiff similarly "invoked the APA only to vacate the government's decision to terminate" grants rather than seeking past-due sums, and the Supreme Court's stay order affirms that such cases must be heard in the Court of Federal Claims. *NIH*, 145 S. Ct. at 2664.[2]  If plaintiffs could evade the Tucker Act just by requesting declaratory relief, virtually any contract suit could be transmuted into an APA claim. *See U.S. Conf. of Catholic Bishops v. Dep't of State*, 770 F. Supp. 3d 155, 165 (D.D.C. 2025) ("[T]he [plaintiff] seeks to set aside agency action.  But the agency action that it asks the Court to reverse is the Government's decision to cease a financial relationship with the [plaintiff].  This is not standard injunctive fare.").

When the States claim is "[s]tripped of its equitable flair," the "requested relief seeks one thing: [T]he Court to order the Government to stop withholding the money due" under the Contracts. *Id.* at 163.  "In even plainer English: [they] want[] the Government to keep paying up." *Id.*  Such a claim for "the classic contractual remedy of specific performance," and one that GDC has already sought in its parallel action, "must be resolved by the Claims Court." *Id.*

**B.    Whether the States Could Bring an Action in the Court of Federal Claims is Irrelevant to this Court's Jurisdiction.**

The States argue that the Tucker Act does not bar this Court's jurisdiction over their APA claims because they are not signatories to the Contracts and could, therefore, not themselves bring an action in the Court of Federal Claims. ECF No. 12 at 12 n.3.  This Court must have jurisdiction, they assert, because otherwise, they would be left without a forum to bring their claims and a

---

the States any relief, but directed the Government to provide the Court with a status update on the payments by February 17, 2026. *See id*. at 13.

[2]    In *NIH*, the plaintiffs challenged not just the termination of discrete grants but also the government's forward-looking guidance and directives which prohibited funding of research related projects on DEI objectives, gender identity, and COVID-19.  145 S. Ct. at 2661.  The Court held that the plaintiffs' challenge to the forward looking policy was properly before the district court.  *See id*.  Here, the States challenge no such generally applicable agency policy: their challenge is limited to actions that the Government has taken with respect to payment of the Contracts.

remedy for their Article III harms. That is wrong: the only question is whether Congress's creation of Tucker Act review for contract claims impliedly precludes APA review, even if that leaves the States themselves without a remedy or forum for their claims.

Congress has made its choice: under the Tucker Act, an action to enforce contractual obligations against the government cannot proceed under the APA, but must be brought in the Court of Federal Claims by a proper party.[3] Congressionally designed channeling schemes routinely limit who may pursue a particular cause of action and where it may be heard. *See, e.g.*, *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11-13 (2012) (pursuant to the Civil Service Reform Act ("CSRA"), former federal employees' claims against the government must be heard first by Merits System Protection Board, with appellate review vested in Federal Circuit, even if plaintiff raises constitutional claims); *Block v. Community Nutrition Inst.*, 467 U.S. 340, 345-46 (1994) (claims to challenge orders of Secretary of Agriculture could be brought by dairy handlers but not consumer of dairy); *United States v. Fausto*, 484 U.S. 439, 447 (1988) (CSRA excluded certain categories of federal employees from judicial review of certain types of personnel action). And when such a statutory arrangement excludes a class of plaintiffs or claims from its scope, that may "display[] a clear congressional intent to deny the excluded [persons] the protections" of the review system altogether, "including judicial review." *Fausto*, 484 U.S. at 447. In a particular context, Congress may "desire that some persons be able to obtain judicial review" of a specified

---

[3] The States assert that they would not be able to bring their action in the Court of Federal Claims. But it has not actually been established that is the case. Intended third party beneficiaries of contracts with the government can sue on an implied breach of contract. *See State of Montana v. United States*, 124 F.3d 1269, 1274 (Fed. Cir. 1997) ("To determine whether Montana is an intended third-party beneficiary, therefore, this court must ask if Montana could have reasonably relied on [a federal agency's] promise to pay off superior claims as manifesting rights in Montana."). The States have not tried to litigate their status as third party beneficiaries in the Court of Federal Claims.

agency action, but other classes of claimants are "precluded" from doing so. *Block*, 467 U.S. at 346-47. "Allowing [those Congress has excluded] to sue the [agency] would severely disrupt th[e] complex and delicate" review system Congress created, in particular permitting those whose claims are channeled to a specified forum to evade that limitation. *Id.* at 348. That would "nullify Congress' intent." *Id.* In short, "at least when a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded." *Id.* at 345-46.

Given that Congress has established the Court of Federal Claims as the specific channel for resolving contract claims, the fact that a particular plaintiff may not be allowed to proceed in that Court does not authorize an end run around Congress's chosen jurisdictional structure. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (plaintiffs may not "exploit[] the APA's waiver [of sovereign immunity] to evade limitations on suit contained in other statutes"). The purpose of designating a forum for such claims is not to guarantee a forum for every affected party, but to ensure that disputes arising from the covered subject matter are resolved in the tribunal Congress selected. *Id.* ("When Congress has dealt in particularity with a claim and has intended a specified remedy—including its exceptions—to be exclusive, that is the end of the matter; the APA does not undo the judgment." (internal quotations omitted)).

This case illustrates several reasons why forum designations are made. Here, the contracting party, GDC, has already invoked the Court of Federal Claims' jurisdiction and seeks relief based on the same alleged entitlement to continued disbursements.[4] Allowing the States to

---

[4]    GDC is not only the proper party to the contract action, but as an entity the States created by statute it is both capable and motivated to defend the States' interest in the Court of Federal Claims. Indeed, the GDC secured an expedited motion schedule and obtained a ruling on its motion for summary judgment within six weeks of filing its complaint. It is clear from the court's

16

proceed in District Court has created parallel litigation over the same funding obligations and risks inconsistent rulings from different tribunals on the Government's duties under the Contracts.[5] Endorsing the States' position would effectively permit any non-signatory beneficiary or stakeholder affected by a federal funding agreement to bypass the Court of Federal Claims by recasting a contract dispute as an APA challenge. Moreover, it would permit parties, who would not be permitted to assert claims in the Court of Federal Claims to pursue the same claims in a different court. Even worse, it would allow them to pursue remedies not permitted under the Tucker Act, such as an injunction compelling specific performance like the one the States ask for here.[6] That approach would erode the Tucker Act's function and undermine Congress's deliberate allocation of authority between district courts and the Court of Federal Claims.

The Ninth Circuit recently rejected the precise argument raised by the States here. *See Thakur*, 163 F.4th at 1204. In *Thakur*, the plaintiffs were researchers who were impacted by the government's termination of grant funding to the University of California. *See id*.; *see also Thakur v. Trump*, No. 25-4249 (9th Cir.) ("*Thakur* Docket"), ECF No. 61 at 3. The district court entered

---

opinion in that case, that the only reason it was not affording relief to the GDC was because the GDC already obtained its money through this action.

[5] Consider a situation where a government contract says that it can be terminated if it snows in DC on April 16, 2026. If it snows on April 16, the government may permissibly terminate the contract pursuant to its express terms. The government's counter-party to the contract would lose a breach of contract suit in the Court of Federal Claims. But under the States' theory, some third party impacted by the termination of the contract could still bring an action in district court under the APA, alleging that the contract termination based on it snowing on this date is arbitrary and capricious and violates the same general OMB regulations that the States' cite here. The district court might agree that the government's decision to terminate a contract as a result of weather on a particular date is arbitrary and capricious and vacate the government's contract termination. That a third party could obtain injunctive relief requiring the government to honor obligations under a contract, which are themselves not required by the contract, is nonsensical.

[6] As a result of the TRO, the Government was obligated to pay $205 million on or around February 13, 2026, before the Court of Federal Claims made any finding that the Government had actually breached its obligations under the Contract and mooting the GDC's relevant breach of contract claims.

17

a preliminary injunction ordering the government to reinstate the grants. The government moved for a stay of the preliminary injunction before the Ninth Circuit and, originally, the panel denied the government's stay motion. *See Thakur v. Trump*, 148 F.4th 1096 (9th Cir. 2025).

However, after the Supreme Court decided *NIH*, the Ninth Circuit changed course. The plaintiffs in *NIH* had included researchers who were not parties to the grant agreements but rather indirect recipients of grant funding. 145 F.4th at 44. The *NIH* plaintiffs argued they could not bring their claims in the Court of Federal Claims, *see NIH v. APHA,* No. 25A103 (Sup. Ct.), APHA Plaintiffs' Stay Opposition at 28-29. Yet the Court stayed the district court's order as to *all* plaintiffs without distinguishing between parties and nonparties to the grant agreements. *NIH*, 145 S. Ct. at 2659 ("The application is granted as to the District Court's judgments vacating the Government's termination of various research related grants.").

On the government's motion for reconsideration, in light of *NIH*, the principal issue in contention before the Ninth Circuit was whether the district court had jurisdiction over the plaintiffs' APA claims since they, as non-signatories, could not have brought a claim against the government in the Court of Federal Claims. *See Thakur* Docket, ECF No. 61 at 10-11 (plaintiffs arguing that it "makes all the difference" that they are not parties to the relevant grant agreements because that means no court would have jurisdiction to hear their claims, which conflicts with the APA's strong presumption of judicial review). The government argued, relying on the newly issued *NIH* order, that plaintiffs' status as non-signatories to the contract was of no moment to the jurisdictional question, just as the Supreme Court in *NIH*, had not found it relevant that certain of the plaintiffs there were similarly non-signatories to the grant agreements. *Thakur* Docket, ECF No. 51 at 8-14. The plaintiffs tried to argue that *NIH* does not "suggest that the Court interpreted the Tucker Act to deprive an injured plaintiff of *any forum* in which to be heard." *Thakur* Docket,

18

ECF No. 61 at 12 (emphasis in original).  They also argued that the Ninth Circuit's decision in *Community Legal Services* had made explicit that the Tucker Act does not apply where the Court of Federal Claims lacks jurisdiction.  *Id*. at 9-10 (citing *Community Legal Servs. v. HHS*, 137 F.4th 932, 939 (9th Cir. 2025)).  Yet the court still concluded it was "bound by *NIH*" and thus the government was "likely to establish that the district court lacks jurisdiction" due to the Tucker Act's jurisdictional proscription.[7]  163 F.4th at 1204.

The cases that the States cited at the TRO hearing and that the Court's TRO decision relies on were decided before the Supreme Court's stay order in *NIH*.  TRO Order 8 (citing *Tootle v. Sec'y of Navy*, 446 F.3d 167, 176-77 (D.C. Cir. 2006); *Community Legal Servs.*, 137 F.4th at 939).  They are also distinguishable.  The issue in *Community Legal Services* was whether the plaintiff's claims were contractual, and thus whether the Tucker Act applied at all.  Because the court concluded the claims arose from a statute and regulation rather than any contract, it held the Tucker Act did not apply.  137 F.4th at 938 ("Here, plaintiffs seek to enforce compliance with statutes and regulations, not any government contract."); *see Community Legal Servs. v. HHS*, 155 F.4th 1099, 1104 (9th Cir. 2025) (denying rehearing *en banc* because the plaintiffs' claims were "grounded in the Government's statutory and regulatory obligations," and noting "[t]he non contractual source of Plaintiffs' rights is dispositive").  While the court also noted the subcontractors in that case would "not have standing to sue the government under the Tucker Act," the case did not turn on

---

[7]    After the *Thakur* court's amended order, the plaintiffs moved for reconsideration, arguing again that: (1) the panel's amended order would mean that no court would have jurisdiction to hear the plaintiffs' claims under the APA; (2) the panel's amended order conflicts with the Ninth Circuit's ruling in *Community Legal Services*; and (3) the complete preclusion of jurisdiction for plaintiff's claims under the APA is inconsistent with Ninth Circuit precedent and raises an issue of exceptional importance.  *See Thakur* Docket, ECF No. 74.  The panel unanimously denied the motion for reconsideration and no judge on the Ninth Circuit requested a vote on the motion for reconsideration en banc.  *Thakur* Docket, ECF No. 81.

that point.    137 F.4th at 939.    The court's decision was premised on its conclusion that the plaintiffs' claims were statutory or regulatory rather than contractual, and thus the Tucker Act was not implicated.    *Id*. at 938-39.    Further, in *Thakur* the Ninth Circuit made clear that, in light of *NIH*, the *dicta* that the States rely upon from *Community Legal Services* is not the law.

The other case cited by the States and relied upon in the Court's TRO Order, *Tootle* was entirely different from the recent cases concerning the Tucker Act, and is distinguishable from the issue before this Court.    *Tootle v. Secretary of Navy*, 446 F.3d 167 (D.C. Cir. 2006).    *Tootle* concerned a *pro se* serviceman who sought judicial review of the finding of a physical evaluation board that he was "fit for duty" and therefore, not eligible for medical retirement.    *Id*. at 168.    Prior to filing any action in the district court, Tootle first brought his claim in the Court of Federal Claims alleging that he was entitled to disability retirement backpay as a result of the Navy arbitrarily denying his medical retirement.    *Id*. at 170.    Tootle's complaint asserted that the question before the Court was whether Tootle had met the service requirements for a medical retirement. *Id*.

The government moved to dismiss the case before the Court of Federal Claims for lack of jurisdiction, arguing that Tootle's claim was equitable because in order for him to receive back pay, the court would have to find him unfit for duty and retroactively retire him from the Navy. *Id*. at 171.    The Court of Federal Claims dismissed Tootle's action.    *Id*.    Tootle then brought his case in district court alleging that the physical evaluation board's finding that he was fit for duty was arbitrary and capricious and contrary to law in violation of the APA.    *Id*.    The complaint did not seek monetary relief but asked for a declaration that the results of the physical evaluation board were invalid and an order reinstating the findings from a prior physical evaluation and correcting his service record to reflect that he had been permanently disabled as of several years earlier.    *Id*.

20

The government moved to dismiss Tootle's district court action, arguing that even though Tootle's complaint did not include an express demand for monetary relief, the essence of his claim was a demand for disability retirement pay. *Id*. The district court granted the government's motion concluding that the substance of Tootle's claim sought monetary relief in the form of disability benefits. *Id*. at 172. On appeal, the D.C. Circuit concluded that Tootle's claim was not "in essence" a claim for monetary relief that is channeled to the Court of Federal Claims pursuant to the Tucker Act because Tootle's requested relief—a determination that he is unfit for duty and eligible for retirement—had significant non-monetary value. *Id*. at 174-75.

It is in this context that the *Tootle* court rejected the government's contention that Tootle's claim was outside the jurisdiction of the district court because it was within the exclusive jurisdiction of the Court of Federal Claims. The government could not have it both ways: in other words, it could not argue that the claim was outside of the jurisdiction of the Court of Federal Claims because it was equitable, and then about-face before and argue that the district court lacked jurisdiction because Tootle's claim was primarily for money damages. Of course, the Government has done no such thing here: the Government concedes that the proper forum for the dispute over the Government's suspension of funding of the Contracts is the Court of Federal Claims.

In contrast, the relevant Supreme Court precedent is *Block*. There, a statute authorized an agency to set minimum prices dairy handlers must pay. 467 U.S. at 341-42. Congress provided "a mechanism by which dairy handlers could obtain review of the Secretary's market orders" in court. *Id*. at 346. Consumers—rather than dairy handlers—tried to bring an APA action challenging a market order. The court of appeals—echoing the States' argument and the Court's holding here—concluded the APA claims were not precluded because of "the presumption favoring judicial review" and because preclusion would "leave consumers without a judicial

21

remedy." *Id*. at 348-49.  The Supreme Court reversed.  "[W]hen a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons," the Supreme Court explained, "judicial review of those issues at the behest of other persons may be found to be impliedly precluded."  *Id*. at 349.  The States attempt to distinguish *Block* on the grounds that the statutory review scheme there applied to particular kinds of agency actions, while the Tucker Act provides a jurisdiction channeling scheme for specific types of claims.  *See* 2d Cir. Docket, ECF No. 10 (Plaintiffs' Opposition to the Government's Stay Motion) at 19.  But that distinction is meaningless: the point of *Block* is that when Congress channels certain types of challenges to specified forums, such jurisdictional determinations must be respected.

That is the case here.  Congress created a review scheme for direct recipients of grant funding.  It would not be logical to allow indirect recipients to bring APA claims challenging the government's grant terminations while barring direct recipients of the grants from bringing those same claims.  *See Patchak*, 567 U.S. at 215 (APA's preclusion-carveout provision "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes").  As the Supreme Court has long recognized, when Congress establishes a remedial scheme with limitations on the parties who can seek relief and where they can seek relief, the proper inference is not that other parties can seek relief without regard to the remedial scheme's limitations, but rather that other parties cannot seek relief at all.  *Block*, 467 U.S. at 345-49.  Allowing suit by nonparties to contracts, outside the review scheme established by the Tucker Act, would frustrate Congress's intent to channel contract claims to the Court of Federal Claims.

The States argue that the jurisdictional issue in this case should be analyzed in the same way that the Second Circuit analyzed the district court's jurisdiction over a tax dispute in light of the Anti-Injunction Act ("AIA") in *New York v. Yellen*, 15 F.4th 569 (2d Cir. 2021).  *See* Plaintiffs'

22

Opposition to the Government's Stay Motion at 18-19.  But the Second Circuit's analysis in *Yellen*, and other cases interpreting the AIA, are of no import to the jurisdictional issue in this case, which arises as a result of the APA and Tucker Act.

In *Yellen*, the government argued that the district court lacked jurisdiction over New York's challenge to the government's cap on the SALT deduction because "the AIA provides that 'no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.'" 15 F.4th at 577 (quoting 26 U.S.C. § 7421(a)).  The Second Circuit rejected the government's argument that it lacked jurisdiction over New York's challenge to this tax policy in reliance on binding law created by the Supreme Court in *South Carolina v. Regan*, 465 U.S. 367 (1984).  In *Regan*, the Supreme Court held that the AIA did not preclude South Carolina, a sovereign entity, from bringing an action to challenge the government's tax policy because it could not file a refund suit and could not be required to find a taxpayer to do so.  *See id*. at 373.  This was a judicially created exception to the AIA based upon an analysis of the statute itself.  *Id*. ("the circumstances of the [AIA's] enactment strongly suggest that Congress intended the Act to bar a suit only in situations in which Congress had provided the aggrieved party with an alternative legal avenue by which to contest the legality of a particular tax" . . . "the Act's purpose and the circumstances of its enactment indicate that Congress did not intend the Act to apply to actions brought by aggrieved parties for whom it has not provided an alternatively remedy").  The Supreme Court has not created an exception to the Tucker Act's channeling and its decision in *NIH* reflects an unwillingness to do so.

## II.    The APA Precludes Review of the Suspension of Monetary Disbursements

In the alternative, even if this Court has jurisdiction, the APA precludes judicial review of DOT's suspension of monetary disbursements to the GDC because the suspension is not the result

23

of a final agency action.  Rather, as indicated in the September 30, 2025 letter, the suspension of disbursements is an initial step in a review process.  *See* Compl, Ex. 11.  Since DOT has not issued a final decision regarding GDC's compliance with the Contracts, any claims under the APA must be dismissed.

Although the APA "embodies a 'basic presumption of judicial review,'" *Lunney v. United States*, 319 F.3d 550, 558 (2d Cir. 2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967)), actions not made explicitly reviewable by statute are only reviewable when "final," *see* 5 U.S.C. § 704.  An agency action is final if two conditions are met: (1) "the action must mark the 'consummation' of the agency's decision making process it must not be of a merely tentative or interlocutory nature," and (2) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"  *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation omitted).  In the absence of a final agency decision, the court lacks subject matter jurisdiction under the APA.  *See Lunney*, 319 F.3d at 554; *MediNatura, Inc. v. Food & Drug Admin.*, 998 F.3d 931, 938-39 (D.C. Cir. 2021) (holding both *Bennett* prongs must be met, and that even where the second prong was met but agency procedures were still ongoing, there was no final agency action).

Here, DOT has not completed its administrative review and stated such in its correspondence with GDC.  *See* Compl., Ex 11.  As noted in the September 30 letter, DOT advised GDC that it was beginning a review of GDC's compliance with applicable Disadvantaged Business Enterprise ("DBE") requirements.  *Id*.  Subsequent correspondence is further indicative of an ongoing review.  *See* Comp., Exs. 16 (GDC acknowledging the review and its intention to cooperate); 17 (DOT requesting additional information regarding contracts); 19 (DOT following up with GDC).  Nowhere in the relevant correspondence does DOT confirm that it has completed

its review.  Viewing the plain, expressed language in the letters issued by DOT, it is clear that the intention of the suspension was to be temporary pending the final determination.  As such, the APA precludes judicial review and the matter must be dismissed.

## III.    The Suspension of Disbursements Was Not Contrary to Law, Arbitrary, or Capricious

Count II of the States' complaint alleges that the DOT's suspension of funding pending its review is contrary to law as well as arbitrary and capricious in violation of the APA.  *See* Compl. ¶¶130-141.  However, because the agency's reasons for imposing the challenged suspension was "entirely rational," the States' claims fail.  *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 517 (2009).

If the Court finds DOT's suspension was a final agency action, the APA permits a court to "compel agency action unlawfully withheld" and set aside an agency's determination if said determination is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  "The arbitrary and capricious standard of review is considered the least demanding form of judicial review of administrative action."  *Badawy v. First Reliance Standard Life Ins. Co.*, 581 F. Supp. 2d 594, 601 (S.D.N.Y. 2008) (quotation marks omitted).  Arbitrary and capricious review "is narrow, limited to examining the administrative record to determine whether the agency decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  *Riverkeeper, Inc. v. EPA*, 358 F.3d 174, 184 (2d Cir. 2004) (quotation marks omitted).  Agency action must be upheld if it is "rational, based on consideration of the relevant factors and within the scope of the authority delegated to the agency by the statute."  *Motor Vehicle Manufacturers Ass'n v. State Farm*, 463 U.S. 29, 42-43 (1983).  DOT's decision to suspend funding easily survives arbitrary and capricious review.  An agency's decision need only "be adequately explained in the administrative record to allow judicial review."  *N.Y. Institute of Dietetics, Inc. v. Riley*, 966 F. Supp. 1300, 1311 (S.D.N.Y. 2011).  An

explanation may be "curt" so long as it "indicate[s] the determinative reason for the final action taken" and is "sustainable on the administrative record made." *Camp v. Pitts*, 411 U.S. 138, 143 (1973). In reviewing agency action, a court may not "substitute its judgment for that of the agency." *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (citation omitted).

In October 2025, DOT revised its regulations for the DBE program requirements to remove race- and sex-based presumptions of social and economic disadvantage that violate the Constitution. In an effort to ensure compliance with the revised regulation, DOT began a review of its projects. This decision to start its project review with one of its largest infrastructure initiatives was not arbitrary or capricious. *See* Compl., Ex. 13 ("The Department is focusing on these projects because they are arguably the largest infrastructure initiatives in the Western Hemisphere … ."). As indicated in its letter, DOT's review is to ensure that disbursements for the project are consistent with the Equal Protection principles of the U.S. Constitution, Federal nondiscrimination requirements under civil rights law, including Title VI of the Civil Rights Act, and Executive Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*. *See* Compl. Ex. 11. Since DOT provided an explanation that "indicate[s] the determinative reason" for the decision to suspend funding pending its review, its decision was not arbitrary capricious. *See e.g., County of Westchester v. HUD*, 116 F. Supp. 3d 251, 280 (S.D.N.Y. 2015) (finding no arbitrary and capriciousness where an agency offered explanations for its decision and suggestions for correction).

## CONCLUSION

For the foregoing reasons, the Court should deny the States' motion for equitable and declaratory relief and dismiss the States' complaint for lack of jurisdiction.

Dated: New York, New York
       March 17, 2026

                                  Respectfully,

                                  JAY CLAYTON
                                  United States Attorney

                           By:    */s/ Tara Schwartz*
                                  TARA SCHWARTZ
                                  C. NNEKA NZEKWU
                                  Assistant United States Attorney
                                  86 Chambers Street, Third Floor
                                  New York, New York 10007
                                  Telephone: (212) 637-2633/2737
                                  Email: tara.schwartz@usdoj.gov
                                         chibogu.nzekwu@usdoj.gov

                                  *Counsel for Defendants*

27

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that this memorandum complies with the word-count limitation of Rule 7.1(c) of this Court's Local Civil Rules, as modified by the Court's March 17, 2026 order, ECF No. 67, granting the Government's request for an enlargement of the word count up to 9,100 words. As measured by the word processing system used to prepare it, this memorandum contains 9,040 words.

*/s/ Tara Schwartz*
Assistant United States Attorney