**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STATE OF NEW JERSEY and STATE OF NEW
YORK,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION, *et. al*,

Defendants.

No. 26 Civ. 939 (JAV)

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.:    (212) 637-2695
*Attorney for Defendants*


TARA SCHWARTZ
C. NNEKA NZEKWU
Assistant United States Attorneys
    - Of Counsel -

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT...................................................................................................................... 2

    I.    The Tucker Act Precludes This Court from Exercising Jurisdiction Over the States' Claims ..................................................................................................................... 2

        A.       The Only Source of Plaintiffs' Rights Is the Contracts with GDC and Thus Their Claims are Barred by the Tucker Act ............................................... 2

        B.       The States' Ability to Pursue a Claim in the Court of Federal Claims is Irrelevant to this Court's Jurisdiction............................................................ 6

    II.   DOT's Suspension of Disbursements Was Not A Final Agency Action ............................ 8

    III.  The Suspension of Disbursements Was Not Arbitrary, Capricious, or Contrary to Law.... 9

CONCLUSION.................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bennett v. Spear*,
520 U.S. 154 (1997)......................................................................................................... 8, 9

*Camp v. Pitts*,
411 U.S. 138 (1973)............................................................................................................. 9

*Community Legal Servs. v. HHS*,
137 F.4th 939 (9th Cir. 2025)........................................................................................... 6, 7

*Dep't of Educ. v. California,*
604 U.S. 650 (2025)............................................................................................................. 1

*Ingersoll-Rand Co. v. United States,*
780 F.2d 74 (D.C. Cir. 1985).............................................................................................. 3

*Judulang v. Holder*,
565 U.S. 42 (2011) ............................................................................................................ 10

 *Lunney v. United States,*
319 F.3d 558 (2d Cir. 2003)............................................................................................... 9

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
567 U.S. 215 (2012)......................................................................................................... 7, 8

*MediNatura, Inc. v. Food & Drug Admin.*,
998 F.3d 931 (D.C. Cir. 2021)............................................................................................ 9

*Megapulse, Inc. v. Lewis*,
672 F.2d 959 (D.C. Cir. 1982)............................................................................................ 8

*New York v. Yellen*,
15 F.4th 569 (2d Cir. 2021) ............................................................................................... 7

*NIH v. APHA*,
145 S. Ct. 2658 (2025).......................................................................................... 1, 4, 5, 6

*Spectrum Leasing Corp.*,
764 F.2d 891 (D.C. Cir. 1985)......................................................................................... 2, 3

*Sustainability Institute v. Trump*,
165 F.4th 817 (4th Cir. 2026)............................................................................................. 2

*Thakur v. Trump,*
    163 F.4th 1198 (9th Cir. 2025) ......................................................................................... 1, 6, 7

**INTRODUCTION**

Despite their arguments to the contrary, the States' claims challenging the suspension of funding under the Contracts presents a contract dispute that can and already has been brought in the Court of Federal Claims, not district court.[1] That conclusion comports with recent rulings from the Supreme Court—which has now twice made clear, in *California* and *NIH*—that challenges to the government's decisions about funding grants may not be brought pursuant to the APA. The States provide no sound basis for distinguishing those controlling authorities.

The States' response to such controlling authority is to complain that if they cannot sue in the Court of Federal Claims and cannot sue under the APA, they will have no forum to challenge the government's actions and will be left with no remedy for their Article III harms. That exact argument was recently presented to the Ninth Circuit in *Thakur v. Trump*, 163 F.4th 1198 (9th Cir. 2025). The Ninth Circuit found that argument unpersuasive: it held that the Tucker Act precluded the nonsignatory plaintiffs' APA claims notwithstanding the fact that the plaintiffs in that case would be unable to sue elsewhere as had been conceded by both parties.

As *Thakur* demonstrates, not every potential plaintiff is entitled to a forum to sue the government with respect to decisions about funding government contracts. That proposition is not controversial. Congress routinely limits who may sue for what relief and in what court, and courts uphold those limits even if a particular party ends up without a forum for its grievances. That is a consequence of sovereign immunity. The absence of a cause of action for a particular plaintiff does not authorize a different court to assume jurisdiction over claims Congress has directed elsewhere. If a claim is channeled by Congress to a particular forum, the identity of the party attempting to assert it does not matter. And the States' argument about their lack of a forum rings hollow given

---

[1]     The government incorporates the defined terms contained in its opening brief, ECF No. 69 ("Gov't Br.").

1

that the entity that undoubtedly can sue and has sued in the Court of Federal Claims—the Gateway Development Commission—was created by the States and is largely funded by them. The Tucker Act requires that actions like this one, seeking to require the government to pay out on a contractual agreement, cannot proceed as APA actions.

Even if this Court determines the APA to be the appropriate vehicle for the States' claims, this action still fails because DOT has not issued a final agency decision. Furthermore, the decision to suspend funding to the GDC was not arbitrary or capricious.

## ARGUMENT

**I.    The Tucker Act Precludes This Court from Exercising Jurisdiction Over the States' Claims**

      **A.    The Only Source of Plaintiffs' Rights Is the Contracts with GDC and Thus Their Claims are Barred by the Tucker Act**

Under the Tucker Act, Congress has vested the Court of Federal Claims with exclusive jurisdiction over claims of the sort asserted here: that the government has wrongfully suspended funding allegedly owed under various contracts. In particular, when a party seeks to require the government to continue to perform its obligations under a contract, the APA does not provide a cause of action. *See Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100, at *1 (4th Cir. June 5, 2025).

Where the nature of a party's claim arises from the government's obligations pursuant to a contract, the party's claim is contractual, even if the party alleges only that the government's actions violated statutes or regulations. In *Spectrum Leasing Corp. v. United States*, a government contractor encountered difficulties performing the contract; the government invoked a liquidated damages provision and, as a result, withheld payments under the contract. 764 F.2d 891, 892 (D.C. Cir. 1985). The contractor sued, claiming that government violated statutory procedures in withholding the payments. *Id*. The D.C. Circuit held that the action belonged in the Court of

2

Federal Claims under the Tucker Act, explaining that the asserted "substantive right" to monetary payments was "created in the first instance by the contract," not by the relevant statute, which "confer[red] no such right in the absence of the contract itself." *Id*. at 894. The contractor's demand for payments presented a "contract dispute" because the contractor sought to enforce a right that "arose only upon creation and satisfaction of its contract with the government; in no sense did it exist independently of that contract." *Id*.

In *Ingersoll-Rand Co. v. United States*, the government terminated a contract for convenience pursuant to a regulation incorporated into the contract. 780 F.2d 74, 75 (D.C. Cir. 1985). The plaintiff challenged that termination as arbitrary, capricious, and contrary to multiple regulations. *See id*. The D.C. Circuit determined that, notwithstanding those statutory and regulatory allegations, "the essential rights at stake . . . [were] contractual." *Id*. at 77. The Court explained that "it [was] possible to conceive of [the] dispute as entirely contained within the terms of the contract." *Id*. at 78. The fact that "the termination also arguably violate[d] certain other regulations" and that plaintiff "allege[d] only a violation of the regulations" did not "change the essential character of the action." *Id*. And the plaintiff's request for "an order reinstating the original award of the contract" similarly sounded in contract. *Id*. at 79-80.

*Spectrum* and *Ingersoll-Rand* teach that the States' claims are essentially contractual, even if dressed up in regulatory garb. As in *Spectrum*, the only possible source of the GDC's purported right to payments from the government are the grant agreements themselves. The fact that the States seek to enforce contracts to which they are not parties is of no moment. As in *Ingersoll-Rand*, the "essential rights at stake here are contractual" despite the States' "efforts to cast its complaint otherwise." 780 F.2d at 77. Thus, the States' attempt to argue that their "claims are based on statutory and regulatory violations, not contractual ones," ECF No. 71 ("Opp.") at 16, is

3

foreclosed by well-established law. In sum, the dispute sounds in contract, because the Contracts created the asserted right to payment in the first instance and any obligation to continue making payments would have to come from the Contracts' own terms.

The States' attempt to fit this case into the area carved out by Justice Barrett for APA claims in *NIH*, *see* Opp. at 17-18, is unpersuasive. In *NIH*, Justice Barrett distinguished between (1) challenges to the government's termination of grant agreements, which belong in the Court of Federal Claims; and (2) challenges to "internal guidance documents describing [agency] priorities," which could proceed under the APA. 145 S. Ct. at 2661 (Barrett, J., concurring). That distinction offers the States no help here. Unlike in *NIH*, the States do not challenge any freestanding agency action or policy that is separable and distinct from DOT's alleged decision to suspend funding under the Contracts. After all, the "decision" the States want this Court to set aside is a decision made only with reference to particular contracts. The States do not allege the existence of any "distinct agency actions" that could independently be set aside in district court. *Id.*

Further, while the States argue that "adjudication of the [their] claims does not require reference to the contract terms or principles," Opp. at 18, the Contracts contain provisions that govern the suspension of funding at issue. *See* ECF No. 43, Declaration of Matthew Hawkins ¶ 4. The GDC asserted claims based on those provisions in the Court of Federal Claims action, and the Court applied those provisions in assessing whether the DOT properly suspended funding. *See* GDC Docket, ECF No. 49 at 4 ("Each individual grant and loan agreement separately spells out when DOT may withhold disbursements and specifies procedural steps DOT must take when it seeks to withhold funds."). Indeed, the Court of Federal Claims concluded that:

> The six grant and loan agreements imposed a structured set of
> sequential obligations on DOT – including notice, an opportunity to

> cure, and a determination of noncompliance – prior to any suspension of funding. The undisputed evidence in the record demonstrates that DOT ignored these required procedural steps, opting instead for an immediate suspension of funding concurrently with the decision to review GDC's compliance with a new regulation, and not affording GDC the contractually mandated procedural protections to which DOT had consented through the contracts.

*Id*. at 19.

Finally, the States' argue that the type of relief sought is equitable, rather than contractual, because they seek only to vacate the government's decision to suspend funding, rather than an order requiring the government to pay a sum certain. *See* Opp. at 19-21. But this argument was rejected by the Supreme Court in *NIH*. *See* 145 S. Ct. at 2664 (Gorsuch, J. concurring) ("An order vacating the government's decision to terminate grants under the APA is in every meaningful sense an order requiring the government to pay those grants.") . Of course, Justice Gorsuch's statement from *NIH* bore out directly here: the Court's order temporarily restraining the government's decision to suspend funding the Contracts under the APA led directly to the government paying monies under those Contracts. The result of the payments was to short circuit the Court of Federal Claims' adjudication of the merits of the contract dispute: that court found that it lacked jurisdiction because the GDC's breach of contract claims had been mooted by the payments that the government had made as a result of this litigation. *See* GDC Docket, ECF No. 49 at 3. ("The subsequent release by DOT of the full amount of the withheld funds, even under the legal compunction of the TRO, moots GDC's claims and deprives the court of jurisdiction."). Given those practical realities, regardless of the labels the States attach to their claims, they are in essence contractual.

Accordingly, the States have made no persuasive argument that their claims are anything other than contract claims that the Tucker Act directs to the Court of Federal Claims. Thus, this court lacks jurisdiction over their claims.

### B.  The States' Ability to Pursue a Claim in the Court of Federal Claims is Irrelevant to this Court's Jurisdiction.

To escape the consequences of their claims being barred by the Tucker Act, the States argue that this Court must have jurisdiction, because otherwise no other court will hear their claims. This very argument was implicitly rejected by *NIH* and was expressly made to the Ninth Circuit in *Thakur*, which flatly rejected it. And for good reason: it would be counterintuitive for Congress to have allowed parties to government contracts to sue exclusively in the Court of Federal Claims, where they can obtain money damages but not equitable relief such as an order reinstating a contract, but to allow nonparties, who are further removed from the contract, to evade those limitations by filing suit in federal district court.

The States rely on *Community Legal Services*, to argue that "if a plaintiff with standing to challenge an unlawful agency action cannot bring an action in the Claims Court, it can sue in district court on its necessarily non-contractual action." Opp. at 7 (citing *Cmty Legal Servs. v. HHS*, 137 F.4th 932 (9th Cir. 2025) ("*CLS*")). But to the extent that is in fact a holding from *CLS*, it was overruled by the same court in a later decision issued in *Thakur v. Trump*, 163 F.4th 1198 (9th Cir. 2025). During the oral argument in *Thakur*, the court expressly questioned the government about whether its argument meant that despite *CLS*, it was taking the position that no court had jurisdiction over the plaintiffs' APA claims. *See* Oral Argument, *Thakur v. Trump*, No. 25-4249 (9th Cir. Nov. 14, 2025), https://www.ca9.uscourts.gov/media/audio/?20251114/25-4249/. The government made clear:

> No court has jurisdiction over these plaintiffs' claims because these plaintiffs' claims are actually disguised breach of contract claims,

> that's the rationale of *NIH*, and Tucker Act limits both who can sue
> for those claims, where they can sue and the relief that they can get.

*Id*. at minute 4:00.

Thus, to the extent that the Ninth Circuit's decision in *CLS* could be read to stand for the proposition that the district court must have jurisdiction over claims that could not be heard by the Court of Federal Claims, that holding is not good law even in the Ninth Circuit. The *Thakur* plaintiffs advanced the exact argument the States make here: that *CLS* meant the district court must have jurisdiction over their claims, *see id*. at minute 31 (plaintiffs' arguing: "[T]his issue was resolved by the panel in [*CLS*] . . . . the Ninth Circuit said explicitly that the Tucker Act precludes jurisdiction only where the Court of Federal Claims would have jurisdiction. If the Court of Federal Claims has no jurisdiction, then there is no preclusion in district court."), and the Ninth Circuit rejected it in concluding that the Tucker Act barred the *Thakur* plaintiffs' APA claims challenging grant terminations. 163 F.4th at 1204.

In order to distract from this holding, the States rely on case law from cases discussing "analogous" specialized review schemes. *See* Opp. at 9. But the cases they cite are not apt analogies to Tucker Act implied preclusion, nor do they support the States' argument. As explained in the government's opening brief, the Second Circuit's interpretation of the Anti-Injunction Act's implied preclusion in *New York v. Yellen*, 15 F.4th 569 (2d Cir. 2021), turned on a judicially created exception to such preclusion. *See* Gov't Br. at 23.

The States' reliance on *Patchak* fares no better. In *Patchak*, the Court held that the Quiet Title Act, which authorized certain quiet title claims against the government, did not impliedly bar APA claims brought by other plaintiffs who were not seeking to assert their own title. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 220 (2012). The Court's reasoning in *Patchak* was based on an analysis of the Quiet Title Act, which by its terms

7

applied only to "quiet title" actions. *Id*. Because the plaintiff's claim was not one to quiet title, the *only* type of claim to which the Quiet Title Act applied, the Quiet Title Act did not impliedly preclude other types of claims. *Id*. at 216. On the other hand, the *Patchak* court explained that "when Congress has dealt in particularity with a claim and [has] intended a specified remedy— including its exceptions—to be exclusive, that is the end of the matter; the APA does not undo the judgment." *Id*. (internal quotation marks omitted). The conclusion of *Patchak* is that implied preclusion under the Quiet Title Act depends on the nature of the claim asserted. The import is that implied preclusion under the Tucker Act depends on the nature of the claim asserted. *See Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). Here, that cuts against the States' argument because, as explained above, they are seeking to assert contract claims.

## II.    DOT's Suspension of Disbursements Was Not A Final Agency Action

Even if this Court determines that jurisdiction lies with the district court rather than the Court of Federal Claims, the States' claims still fail because DOT's decision to suspend monetary disbursements to the GDC was not a final agency action. While DOT temporarily suspended funding to the GDC, that suspension did not "mark the consummation of the agency's decision making process." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

Despite the States' characterization, the suspension of disbursements was an initial step in a review process. *See* ECF No. 13, Affirmation of Stephen C. Thompson ("Thompson Decl."), Ex. 11. The States allege that DOT's failure to suggest there was any "ongoing consideration regarding whether to suspend funds" or "internal appeals process," classifies the suspension of monetary disbursements as a final agency action, Opp. at 22-23, but this allegation is contrary to the documented communication between GDC and DOT. *See e.g.*, Thompson Decl., Ex. 19. Throughout the letters, GDC and DOT discuss steps taken or steps to be taken to ensure nondiscrimination in DOT's financial assistance programs. *See id*., Exs. 16 (GDC acknowledging

8

the review and its intention to cooperate), 17 (DOT requesting additional information regarding contracts), 19 (DOT following up with GDC). At one point DOT suggests actions GDC may take in order to "resume any further funding." *Id*., Ex. 19 at 2.  Such discussions and suggestions would not occur if the suspension was a final decision that GDC had no recourse to challenge or change.

Viewing the plain, expressed language in the letters issued by DOT, the intention of the suspension was to be temporary pending the outcome of GDC and DOT discussions and the final determination of the DOT review. In the absence of a final agency decision, the court lacks subject matter jurisdiction under the APA. *See Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003); *MediNatura, Inc. v. Food & Drug Admin.*, 998 F.3d 931, 938-39 (D.C. Cir. 2021) (holding both *Bennett* prongs must be met, and that even where the second prong was met but agency procedures were still ongoing, there was no final agency action).

### III.    The Suspension of Disbursements Was Not Arbitrary, Capricious, or Contrary to Law

If this Court reaches the merits, DOT's suspension should not be set aside. The States allege DOT acted arbitrarily and capriciously or contrary to law by suspending funding allegedly due to GDC under the Contracts. The States allege they are not challenging the government's decision to review the projects but rather the decision to suspend funding pending of said review as arbitrary and capricious. But the States are unable to explain how suspending the disbursement of millions of dollars—that could not be subsequently recouped—to ensure nondiscrimination in its financial assistance programs is arbitrary and capricious. Especially, given DOT provided a clear explanation for the suspension, as well as remaining in communication with GDC regarding the status of review and the procedures necessary to complete the review process and reinstate funding. *See* Thompson Decl., Ex. 11; *see also Camp v. Pitts*, 411 U.S. 138, 143 (1973) (finding that an explanation may be "curt" so long as it "indicate[s] the determinative reason for the final action

9

taken" and is "sustainable on the administrative record made."). Without further reasoning, the States' allegations of unlawful, arbitrary, or capricious decision making is without merit. *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (In reviewing agency action, a court may not "substitute its judgment for that of the agency.") (citation omitted).

## CONCLUSION

For the foregoing reasons and the ones in the government's opening brief, the Court should deny the States' motion for equitable and declaratory relief and dismiss the States' complaint for lack of jurisdiction.

Dated: New York, New York
April 7, 2026

Respectfully,

JAY CLAYTON
United States Attorney

By: /s/ Tara Schwartz
TARA SCHWARTZ
C. NNEKA NZEKWU
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2633/2737
Email: tara.schwartz@usdoj.gov
chibogu.nzekwu@usdoj.gov

*Counsel for Defendants*

10

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that this memorandum complies with the word-count limitation of Rule 7.1(c) of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 3,105 words.

*/s/ Tara Schwartz*
Assistant United States Attorney

11