

*State of New Jersey*
OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
OFFICE OF THE SOLICITOR GENERAL
PO BOX 080
TRENTON, NJ  08625-0080

MIKIE SHERRILL
*Governor*

DR. DALE G. CALDWELL
*Lt. Governor*

JENNIFER DAVENPORT
*Attorney General*

JEREMY M. FEIGENBAUM
*Solicitor General*

May 6, 2026

**<u>Via ECF</u>**

Honorable Jeanette A. Vargas
United States District Judge
Southern District of New York
500 Pearl Street, New York, NY 10007

Dear Judge Vargas:

This letter responds to the Court's request for supplemental briefing on three questions with respect to the DOT's suspension of disbursements under the RRIF loans, ECF No. 74. In implementing the September 30 Suspension, DOT arbitrarily and capriciously suspended disbursement under the RRIF loans in violation of the APA, 5 U.S.C. § 706(2)(A). The States do not argue the suspension of loan payments violates 2 C.F.R. §§ 200.339 and 200.342, which the States agree apply to the grants only. *See* ECF No. 12 at 14-15 ("DOT's final decision to indefinitely suspend payments under *three Project grants* pending a regulatory review is contrary to law, 5 U.S.C. § 706(2)(A), and 'without observance of procedure required by law," *id.* § 706(2)(D)." (emphasis added)); ECF No. 71 at 24 (explaining that the regulations "limit whether and when a federal agency may freeze grant payments"). The States' contrary to law claims under § 706(2)(A) are thus tied to the Project grants, not the RRIF loans. Rather, the APA's substantive prohibition on arbitrary and capricious agency action is the source of law for the States' claims pertaining to the RRIF loans. And at the very least, the source of law for its loans-related challenge is certainly not GDC's contract.

The APA—not a contractual provision—provides the "source of the right" asserted by the States as to the loans. As an initial matter, binding case law makes clear that the APA can provide a substantive source of authority for a challenger's theories. The APA "directs that agency actions be set aside if they are arbitrary or capricious." *Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1, 16 (2020) (cleaned up); *see* 5 U.S.C. § 706(2)(A). This imposes a substantive constraint on agency action, requiring not just that an agency undertake certain procedural steps, but that its actions reflect a "rational connection between the facts found and the choice made," in light of the "relevant factors" that Congress "intended it to consider," *Motor Vehicle Manus.' Ass'n v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 42-43 (1983) (cleaned up); that agency



decisions must assign appropriate weight to "serious reliance interests," including considering alternatives "within the ambit of the existing policy," *Regents*, 591 U.S. at 30 (cleaned up); and that agency decisions cannot be premised on a "pretextual rationale," *Dep't of Comm. v. New York*, 588 U.S. 752, 766, 785 (2019). Indeed, if the APA could not provide a substantive source of rights, it is entirely unclear how the Supreme Court could have invalidated the rescission of DACA in *Regents* or the additional of a citizenship question on the Census in *Commerce*, given that both were A&C claims. Instead, those cases and countless others confirm that substantive arbitrary-and-capricious review protects the interests of parties subject to government action from unreasoned and pretextual actions.

The States' claims here fit hand-in-glove with that substantive arbitrary-and-capricious set of requirements. For one, the record is abundantly clear that the reasons for withholding funds set forth in the September 30 letter—that it was necessary to do so pending a compliance review—were pretextual. Multiple contemporaneous statements from DOT, OMB, and the President made clear that the funds were withheld as a raw act of political retribution. *See* ECF No. 12 at 5-6, 22-23. DOT's subsequent conduct has only confirmed this. Despite completing its review six months ago and securing unqualified commitments from GDC about its compliance efforts, *id.* at 21-22, DOT still has not withdrawn its funding freeze. For another, DOT did all this without regard for the immense reliance interests at stake—for the States, their residents, workers, and the regional economy—in bringing to a halt one of the Nation's largest and most vital infrastructure projects. And still more, its reasons never withstood muster even on their face—because they gave no reason why funding had to be frozen so it could engage in a review of compliance with an interim final rule. This is the kind of arbitrary government action that the APA's substantive constraints protect against, regardless of whether such conduct is also barred by any contractual agreements.

By contrast, nothing about the States' claims as to the RRIF loans relies on contract rights or terms. It is the APA, not the loan agreements, that prohibits the Federal Government from, for example, acting pretextually, *see Dep't of Comm.*, 588 U.S. at 783-85—professing to have concerns regarding race- and sex-based contracting while actually seeking leverage over and to punish New York federal officials in budget negotiations. Adjudicating whether DOT acted arbitrarily and capriciously in imposing the September 30 Suspension requires assessing the reasonableness or veracity of the reasons for the agency action; it does not require referring to the contracts at all. Put differently, whether the September 30 Suspension violated the RRIF loan agreements is irrelevant to the question of whether it violated the APA's requirements. That is unsurprising, given that the States are not contracting parties, and thus have no contractual rights. As the Ninth Circuit recently held, the source of a plaintiff's asserted rights cannot plausibly be contractual where "no contract exists between [the] plaintiff[] and the [Federal] Government." *Community Legal Servs. in East Palo Alto v. U.S. Dep't of Health & Human Servs.*, 137 F.4th 932, 937 (9th Cir. 2025).

The Supreme Court and multiple other courts have recently confirmed that the APA's prohibition on arbitrary and capricious agency action can provide a statutory basis for suits against the Federal Government independent from any contract. Most significantly, Justice Barrett's controlling concurrence in *National Institutes of Health v. American Public Health Ass'n* squarely held that arbitrary-and-capricious challenge to agency guidance "belong[s] in district court." 145 S. Ct. 2658, 2662 (2025) (Barret, J., concurring); *see id.* at 2661 ("[T]he District Court was likely correct to conclude that it had jurisdiction to entertain an APA challenge to the guidance, and it would be confusing for our disposition of this application to suggest that the CFC is the right forum for that claim."). In so holding, Justice Barrett noted that "[p]laintiffs frequently seek vacatur of internal agency guidance on arbitrary-and-capricious grounds in district court" and that the subject

2

matter of the guidance does not transform the claim to one "founded … upon" a contract. *Id.* In allowing the plaintiffs' arbitrary-and-capricious claims to proceed, her concurrence necessarily recognized that the APA itself can provide the source of rights distinct from any separate contract rights—a conclusion that straightforwardly applies here. Were the APA's prohibition on arbitrary-and-capricious decision-making not available as a source of law, she could hardly have reached this result.

DOT's response misses the point. DOT tries to cabin *NIH* to challenges to "freestanding" agency actions or policies, ECF No. 73 at 4, but that distinction can be found nowhere in the actual opinion. Indeed, to the contrary, Justice Barrett recognized that the underlying guidance and grant terminations were "linked." *But see NIH*, 145 S. Ct. at 2661. In other words, just because a policy decision governs how an agency will then administer a particular funding agreement does not mean that any challenge to the policy is contractual. And regardless, even a global policy could not be challenged on arbitrary-and-capricious grounds were the APA's substantive APA requirement not itself an available source of rights. In that world, the *NIH* plaintiffs would not have been able to proceed on a arbitrary-and-capricious claims against even the guidance in district court.

Other courts have followed the Court's lead, including in funding freeze cases like this one. In *New York v. Trump*, the First Circuit affirmed a district court's grant of an injunction against an OMB funding freeze policy *solely* on arbitrary and capricious grounds—again showing the APA's prohibition on arbitrary and capricious agency action is an independent source of rights separate and apart from any funding agreement that is the subject of the agency's action. 171 F.4th 1, 20-24 (1st Cir. 2026); *see id.* at 20 (noting the court did not need to address the plaintiffs' contrary to law claims, because they were likely to succeed on their arbitrary and capricious claims). Similarly, the district court in *President & Fellows of Harvard College v. U.S. Department of Health & Human Services* applied *NIH* directly to hold that it, not the Court of Federal Claims, "has jurisdiction over Plaintiffs' arbitrary and capricious claims that challenge the Freeze Orders," noting that the claims were "substantially similar" to the arbitrary and capricious claims in *NIH*. 798 F. Supp. 3d 77, 105 (D. Mass. 2025). And a court in this District recently set aside yet another unlawful funding freeze as arbitrary and capricious in *New York v. Administration for Children & Families*, finding the plaintiffs' APA claims were not barred by the Tucker Act. No. 26-cv-172, 2026 WL 673848, at *17-20 (S.D.N.Y. Mar. 10, 2026).[1] All of these cases demonstrate that APA arbitrary-and-capricious claims can be separate and distinct from contractual ones.

By contrast, in all of the cases on which DOT relies, the plaintiffs asserted a right to the performance of a contractual duty, like reinstatement of a terminated grant or payment of monies, rather than the right to be free from arbitrary and capricious agency action going forward. *See Sustainability Institute v. Trump*, 165 F.4th 817, 827 (4th Cir. 2026) ("source of the rights" is contractual because "Plaintiffs identify no source of law, besides their grant agreements, guaranteeing them the relief they seek: continued payments on those grants"); *Tucson Airport Authority v. General Dynamics Corp*, 136 F.3d 641, 647 (9th Cir. 1998) ("substantive duty" to indemnify plaintiffs "derive[d] from the contract"); *Spectrum Leasing Corp v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985) (source of the right was contractual because "Spectrum seeks an injunction requiring the government to pay monies owed for computer hardware" and "[t]he right to these payments is created in the first instance by the contract"); *Ingersoll-Rand v. United States*, 780

---

[1] Although the *ACF* court cited other "statutes and regulations" as a source of law when conducting the *Megapulse* analysis, *id.* at *13, it then granted relief on the plaintiffs' arbitrary-and-capricious claims wholly separate from statutory or contrary-to-law claims. *See id.* at *17-20.

F.2d 74, 80 (D. C. Cir 1985) (Plaintiffs "requested an order reinstating the original award of the contract," which "may amount to a request for specific performance").[2] Here, by contrast, the States are not asking for an order that compels payments or the performance of any other contractual duty. Instead, they are simply seeking to set aside an irrational, unexplained agency decision going forward, much like the plaintiffs in *NIH* and *ACF*. The APA gives the States that right.

For the same reasons, *NIH* and the other recent funding freeze cases are not inconsistent with the Second Circuit's rulings in *Up State Federal Credit Union v. Walker*, 198 F.3d 372 (2d Cir. 1999) and *Atterbury v. U.S. Marshals Service*, 805 F.3d 398 (2d Cir. 2015). In *Up State*, the plaintiffs were attempting to enforce a contract clause with the Army requiring it to take title to a building. *See* 198 F.3d at 374. The court held that the plaintiffs' attempt to style their claim as one under the APA generally alleging "failure of integrity and regularity of process" did not change the fact that the right to the relief they sought—the Army taking title to a building and entering into a lease agreement with them—required the performance of a contractual duty. *Id.* at 375-77. Since the entire purpose of the *Megapulse* doctrine is to distinguish "disguised" breach of contract claims, *see id.* at 376, it is unsurprising some arbitrary-and-capricious claims fall on the other side. And in *Atterbury*, the Second Circuit distinguished *Up State* by quoting the observation that "the APA is not itself a free-standing source of rights"—which is, of course, true to the extent a plaintiff asserts a right to performance of a contractual duty. 805 F.3d at 408. But *Atterbury* did not need to assess the extent to which the arbitrary-and-capricious requirements could otherwise provide a source of rights for a true arbitrary-and-capricious claim because it found the Due Process Clause offered a source of rights there. *Id.* Moreover, neither involved the kind of arbitrary-and-capricious claim at issue here, where an agency's action is unlawful because of the failure to give weight to reliance or the pretextual nature of its decision, *cf. Up State*, 198 F.3d at 375 (asserting a vague "failure of integrity and regularity of process"); *Atterbury*, 805 F.3d at 21 (arbitrary-and-capricious claim based solely on failure to explain decision)—theories endorsed in *Regents* and *Commerce*.

As *NIH*, *New York v. Trump*, *Harvard College*, and *ACF* show, the APA's prohibition on arbitrary and capricious agency action can be the source of rights in a non-contractual claim to set aside unlawful action. Indeed, this statutory constraint on agency action is meant to protect parties from exactly the kind of unreasoned, pretextual, and injurious action that DOT has taken here.

## CONCLUSION

This Court should grant the States relief on their claim that the September 30 Suspension violated 5 U.S.C. § 706(2)(A)'s prohibition on arbitrary and capricious agency action.

*/s/ Shankar Duraiswamy*
Shankar Duraiswamy
*Deputy Solicitor General*

cc: All counsel (via ECF)

---

[2] The D.C. Circuit's decision in *Climate United Fund v. Citibank* was vacated and is being reheard en banc, but there too, the panel made clear that the "source of the right" was contractual because the plaintiffs asserted a right to the performance of a contractual duty: "[T]he source of the grantees' right to the relief they seek is their agreements … Each grantee's right to the funds arises only upon creation and satisfaction of its contract with the government; in no sense does it exist independently of that contract." 154 F.4th 809, 820-21 (D.C. Cir. 2025), *vacated by* 2025 WL 3663661 (D.C. Cir. Dec. 17, 2025) (cleaned up).