

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

May 13, 2026

**By ECF**
The Honorable Jeannette A. Vargas
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:    *State of New Jersey, et al., v. United States Department of Transportation, et al.*,
> No. 26 Civ. 939 (JAV)

Dear Judge Vargas:

This Office represents the defendants (the "government" or "DOT") in the above-referenced action.  The government respectfully submits this letter in response to the plaintiff states' New York and New Jersey (the "States") May 6, 2026 brief, ECF No. 77, pursuant to the Court's April 29, 2026 order directing the parties to provide supplemental briefing on certain jurisdictional issues, ECF No. 74.

## ARGUMENT

The States' supplemental letter confirms, rather than dispels, the jurisdictional defect in their APA claims concerning the RRIF loans.  The States concede that their APA "contrary to law" argument does not apply to the claims regarding their RRIF loans.  In other words, the States' concede that, other than the APA, they can point to no source of law regarding the DOT's actions with respect to the RRIF loans.

Stripped of labels, what the States seek is an order forcing DOT to resume reimbursements under the RRIF loan agreements with GDC.  That is a contract claim within the exclusive jurisdiction of the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1941(a)(1), and the APA's waiver of sovereign immunity does not reach it.  5 U.S.C. § 702; *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 375 (2d Cir. 1999).  Several points warrant emphasis.

> **1.  The APA does not supply a freestanding "source of right" where the relief sought is the continued performance of a federal contract.**

The States' opening premise—that § 706(2)(A) is itself a "substantive source of rights" sufficient to evade *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)—collides with binding Second Circuit precedent.  The Second Circuit has held that "the APA is not itself a free-standing source of rights." *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 408 (2d Cir. 2015); *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 377 (2d Cir. 1999)).  That principle does not vanish whenever a plaintiff attaches the words "arbitrary and capricious" to a complaint: otherwise, *Up State* and *Atterbury* would be dead letters, and every disappointed contractor could

litigate in district court simply by pleading that the agency's contract decision was unreasoned. The point of *Megapulse* and its progeny is precisely to prevent plaintiffs from converting what is fundamentally a contract dispute into an APA case simply by alleging "arbitrary and capricious" process, "pretext," or "failure of integrity." *Up State*, 198 F.3d at 375.

The States' invocation of *Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1 (2020) and *Department of Commerce v. New York,* 588 U.S. 752 (2019) proves nothing to the contrary. Those cases involved quintessential exercises of regulatory or programmatic authority, not administration of bilateral funding contracts. *Regents*, 591 U.S. 16 (challenge to DACA); *Dep't of Commerce*, 588 U.S. 1 (challenge to inclusion of question regarding citizenship status in census). And, those cases addressed whether challenged agency actions survived arbitrary-and-capricious review on the merits—not whether the APA furnishes a substantive right independent of some other source of law. In those cases, the Supreme Court did not confront, much less relax, the *Megapulse*/Tucker Act line, and the cases say nothing about whether APA review can be used as an alternative vehicle to compel the government to continue making payments under negotiated financial instruments.

The "source of right" inquiry under *Megapulse* asks where the entitlement to the *relief sought* originates. Here, the only source of any entitlement to disbursement of RRIF funds is the loan agreements themselves. Without those agreements, neither GDC nor the States would have any conceivable claim to the money. The same would be true even if 2 C.F.R. §§ 200.339, 200.342 applied. *See, e.g.*, ECF No. 69 at 11-12 ("Courts have repeatedly rejected the argument that asserting violations of OMB regulations concerning the termination of grants is something other than a contract claim."). But it is even more plainly true when the OMB regulations do not apply, and the States concede that those regulations "apply to the grants only." ECF No. 77 at 1.

### 2. The relief the States seek is contractual in substance, however it is labeled.

The States insist they "are not asking for an order that compels payments or the performance of any other contractual duty," but only "to set aside an irrational, unexplained agency decision going forward." ECF No. 77 at 4. That is a distinction without a difference. The September 30 Suspension is nothing more than DOT's decision to withhold disbursements *under the RRIF loan agreements*. Vacating that decision necessarily restores the flow of contract payments—precisely the relief the Fourth Circuit identified as quintessentially contractual in *Sustainability Institute v. Trump*, 165 F.4th 817, 828 (4th Cir. 2026), and that the D.C. Circuit identified in *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985), and *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 79–80 (D.C. Cir. 1985).

The Second Circuit's analysis in *Up State* is directly on point. There, as here, plaintiffs reframed a contract dispute as an APA challenge to alleged "failure of integrity and regularity of process," but the court looked past the pleading to the substance of the relief and held the claim was contractual. 198 F.3d at 375–77. The States do the same here: they try to get around Tucker Act exclusivity by claiming that the APA prevents the unreasoned, pretextual actions that DOT allegedly took here. But the prospective vacatur the States seek is functionally identical to specific performance of the loan agreements.

The States' suggestion that they are not contracting parties and thus "have no contractual rights" cannot conjure jurisdiction where none exists. As a threshold matter, the States are not true non-parties, as they created the GDC for the specific purpose of contracting with the Government, and the GDC has been simultaneously pursuing contract claims in the Court of Federal Claims for the same alleged government conduct. Moreover, the *Megapulse* inquiry asks whether the government's obligation arises from, and is defined by, contract—not whether the plaintiff's name appears on the signature block. If the States can be viewed as true non-parties with no contractual rights, they should not be permitted to seize greater rights than GDC, the actual borrower, would have. GDC's recourse for an alleged wrongful withholding of loan disbursements lies in the Court of Federal Claims. The States cannot manufacture district court jurisdiction simply by showing up in District Court as purported third parties with downstream interests in GDC's contracts.

### 3. The *NIH* concurrence and the recent funding-freeze cases are inapposite.

The States lean heavily on Justice Barrett's concurrence in *NIH v. American Public Health Ass'n*, 145 S. Ct. 2658 (2025), but they read into it far more than it can bear. In addition to grant terminations, *NIH* concerned a challenge to *agency guidance*—a generally applicable policy document that, like the OMB memorandum at issue in *New York v. Trump*, 171 F.4th 1 (1st Cir. 2026), and the funding-pause directive in *New York v. Administration for Children & Families*, 2026 WL 673848 (S.D.N.Y. Mar. 10, 2026), operated independently of any particular contract. Justice Barrett's concurrence carefully preserved the principle that "claims founded upon" contracts must proceed in the Court of Federal Claims; she concluded only that an APA challenge to *guidance itself* is not such a claim. 145 S. Ct. at 2661–62.

This case is different. There is no cross-cutting policy, no agency-wide guidance document, and no rule of general applicability before the Court. The September 30 letter was a project-specific communication addressed to a single borrower regarding a single set of bargained-for loan and grant agreements with fixed terms of performance. The challenge here is, in form and substance, a challenge to DOT's administration of those particular contracts—exactly what *Up State* forecloses.

Thus, the States' reliance on *NIH* is misplaced. Justice Barrett's point was narrow: an APA arbitrary and capricious challenge to freestanding guidance belongs in district court and is not automatically transformed into a contract claim merely because the guidance touches on grant administration. She did not suggest that when the *only* real question is whether the government must continue disbursements under specific agreements, the APA can be used to bypass the Tucker Act.

The *Harvard College* and *ACF* decisions are likewise distinguishable. *President & Fellows of Harvard College v. U.S. Department of Health & Human Services*, 798 F. Supp. 3d 77 (D. Mass. 2025); *New York v. Administration for Children & Families*, No. 26 Civ. 172 (VSB), — F. Supp. 3d —, 2026 WL 673848 (S.D.N.Y. Mar. 10, 2026). In each, the plaintiffs identified independent constitutional, statutory, and regulatory sources of rights—Title VI, the First Amendment, the appropriations statutes—that constrained the agency apart from any contract. *See Harvard College*, 798 F. Supp. 3d at 105; *ACF*, 2026 WL 673848, at *13. The States here concede that APA aside, there is no other source of their right for their RRIF claims. ECF No. 77 at 1.

They thus stand in a posture quite different from the *Harvard* and *ACF* plaintiffs: they have nothing left except the bare APA and the loan agreements themselves. [1]  Under controlling Second Circuit law, that is not enough.

### 4.   The merits arguments confirm the contractual character of the claim.

Even on the merits, the States' theories—that DOT failed to weigh "reliance interests," acted "pretextually," or gave inadequate reasons for "freezing" funds—depend on assumptions about DOT's continuing obligations under the RRIF agreements.  Whether DOT must continue disbursing funds, on what schedule, and subject to what conditions are all questions answered by the loan documents. A court cannot meaningfully assess "reasoned decisionmaking" about disbursement decisions without looking to the very contract terms that govern those disbursements. That entanglement is the surest sign that the claim is contractual at its core. *Cf. Tucson Airport Auth. v. General Dynamics Corp.*, 136 F.3d 641, 646–48 (9th Cir. 1998) (district court lacked jurisdiction over APA and constitutional claims premised on notion that government had some contractual obligation that it failed to satisfy).

\* \* \*

The States' loan-related claim is, in essence and effect, a demand for performance of the RRIF loan agreements.  The Tucker Act channels such claims to the Court of Federal Claims, and no rebranding under § 706(2)(A) can change that result.  The Court should dismiss the States' RRIF-loan claim for lack of subject matter jurisdiction.  And for the reasons discussed in the government's previous filings, the Court should also dismiss the States' grant claims for lack of subject matter jurisdiction.

We thank the Court for its consideration of this letter.

---

[1]   Furthermore, in *ACF* there was no contract that governed the conduct at issue; the agency suspended Congressional funding over fraud concerns.  Given as much, the government did not make a Tucker Act argument; the Court raised the specter of Tucker Act exclusivity *sua sponte*, in considering its own jurisdiction. *See id*. at \*11–13.

Respectfully,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By:    */s/ Tara Schwartz*
TARA SCHWARTZ
C. NNEKA NZEKWU
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, NY 10007
Tel: (212) 637-2633/2737
Email:  tara.schwartz@usdoj.gov
            chibogu.nzekwu@usdoj.gov

cc: Counsel for Plaintiffs (by electronic filing)