**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STATE OF NEW JERSEY and STATE OF NEW YORK, <br><br>        Plaintiffs, <br><br>       v. <br><br> U.S. DEPARTMENT OF TRANSPORTATION, *et al.*, <br><br>       Defendants. | Civil Action No. 26-cv-939 |

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**NOTICE OF SUPPLEMENTAL AUTHORITY**

---

*Thakur v. Trump*, No. 25-4249, 2026 WL 1466303 (9th Cir. May 26, 2026), does not change the outcome here for two independent reasons. First, *Thakur* does not impact the States' arguments that their claims are non-contractual under both aspects of *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). Second, *Thakur* is unpersuasive as to the separate question of whether a non-contracting party's claim is subject to the exclusive jurisdiction of the Claims Court. In light of the substantive nature of Defendants' notice, the States substantively but briefly respond on both.

1. Nothing in *Thakur* changes the fact that the States' claims in this case are not "founded … upon" a contract, 28 U.S.C. § 1491(a)(1), under either part of the *Megapulse* analysis. See *MTA v. Duffy*, No. 25-cv-1413, 2026 WL 588117, at *29 (S.D.N.Y. Mar. 3, 2026) (noting "both" *Megapulse* factors are "necessary to find that jurisdiction [is only] appropriate in the Court of Claims"). In *Thakur*, the plaintiffs were specifically challenging the mass termination of specific grants and

sought "reinstatement of the terminated grants." 2026 WL 1466303, at *7; *see also id.* (explaining the plaintiffs sought "to enforce an[] obligation to pay money pursuant to [the] grants," just as in *NIH v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2658 (2025)). Here, the States have always been clear that they do not seek an order specifically requiring money to flow. *See* ECF No. 11; ECF No. 71 at 19-22. This action is akin to cases such as *New York v. Trump*, 171 F.4th 1 (1st Cir. 2026); *New York v. ACF*, No. 26-cv-172, 2026 WL 673848 (S.D.N.Y. Mar. 10, 2026); and *President & Fellows of Harvard College v. HHS*, 798 F. Supp. 3d 77 (D. Mass. 2025), rather than *Thakur*.

The States also rely on different sources of rights than the plaintiffs in *Thakur* in multiple respects. The *Thakur* plaintiffs did not raise any contrary-to-law claims. *Compare* ECF No. 12 at 14-18; ECF No. 71 at 16-19, 24 (asserting suspension of grant funds was contrary to law in violation of 2 C.F.R. § 200.339). And while both sets of plaintiffs bring arbitrary and capricious claims, the States here rely on multiple substantive theories that were nowhere in *Thakur*—including, in particular, a theory that DOT had offered pretextual reasoning for suspending Project funds. *Compare* ECF No. 12 at 22-23; ECF No. 71 at 25; ECF No. 77 at 2 (discussing *DHS v. Regents of the Univ. of Calif.*, 591 U.S. 1 (2020); *Dep't of Comm. v. New York*, 588 U.S. 752 (2019)).

2. *Thakur*'s independent holding that a non-contracting party's claim can be subject to the exclusive jurisdiction of the Court of Federal Claims is also unpersuasive. 2026 WL 1466303, at *6-7. The per curiam opinion—the only one that commanded a majority of that particular panel— relies on its view that "the plaintiffs in *NIH* also included non-parties to the grant agreements, and the Supreme Court's reasoning did not turn on whether the plaintiffs were parties to the contracts at issue." *Id.* at *7. But the panel cited nothing for the proposition that the Court in *NIH* understood its analysis to apply to party plaintiffs in the same way as it did to non-parties, and did not address

2

the language in the controlling concurrence in *NIH* that understood the plaintiffs as able to proceed in another appropriate forum. *Compare id. with NIH*, 145 S. Ct. at 2662 n.1 (Barrett, J. concurring).

*Thakur* also mischaracterizes the "core holding" of *Community Legal Services* as predicated exclusively on the finding "that the plaintiffs' claim was not contractual" because the plaintiffs sought to enforce a statutory, rather than contractual, obligation of the government. 2026 WL 1466303, at *7 n.4. But the *CLS* court expressly held that the Federal Government's argument was "unlikely to succeed for two reasons": those plaintiffs did not bring contract claims, and they had no right to bring contract suits as noncontracting parties. *CLS v. HHS*, 137 F.4th 932, 937-39 (9th Cir. 2025); *see also CLS II*, 155 F.4th 1099, 1106 (9th Cir. 2025) (Fletcher and Koh, JJ., concurring in denial of rehearing en banc) (panel majority reiterating that the Tucker Act does not apply to nonparties, which the *Thakur* per curiam ignores). *Thakur* does not address any of this.

The *Thakur* concurrence is no more persuasive. It argues that the identity of the plaintiff is irrelevant to whether its claim is contractual in nature, claiming that it "accords with the relevant statutory scheme" that the Tucker Act could displace the APA even where it does not confer jurisdiction. 2026 WL 1466303, at *14 (Christen, J., concurring). But that result—that two waivers of sovereign immunity would somehow cancel out and leave no jurisdiction where the APA would otherwise grant it—cannot be squared with the structure of the two statutes. Indeed, *Thakur* fails to address the D.C. Circuit's decades-old contrary holding in *Tootle v. Secretary of the Navy*, 446 F.3d 167 (D.C. Cir. 2006), that there can be no exclusive jurisdiction under the Tucker Act where there is no jurisdiction—a proposition that multiple courts in this district have recently reiterated. *See ACF*, 2026 WL 673848, at *11; *Duffy*, 2026 WL 588117, at *27. Nor does *Thakur* address the Supreme Court's holding that just because a scheme places limits on claims by certain parties does not impliedly forbid a different party from bringing its own APA claim to redress its own Article

3

III injuries. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209 (2012).


Date: June 2, 2026

Respectfully Submitted,

**JENNIFER DAVENPORT**
ATTORNEY GENERAL OF NEW JERSEY

Jeremy M. Feigenbaum
*Solicitor General*
By */s/ Shankar Duraiswamy*
Shankar Duraiswamy
*Deputy Solicitor General*
Janine S. Balekdjian
Jake Mazeitis
*Deputy Attorneys General*

Office of the Attorney General
25 Market Street
Trenton, NJ 08625
(862) 350-5800
Shankar.Duraiswamy@njoag.gov

*Counsel for the State of New Jersey*

**LETITIA JAMES**
ATTORNEY GENERAL OF NEW YORK

By */s/ Rabia Muqaddam*
Rabia Muqaddam
*Chief Counsel for Federal Initiatives*
Jessica Ranucci
*Special Counsel*
Stephen Thompson
*Special Counsel*

New York Office of the Attorney General
28 Liberty St.
New York, NY 10005
rabia.muqaddam@ag.ny.gov
(212) 617-8883

*Counsel for the State of New York*

4